### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**MARK ENSMINGER**, *on behalf of himself and those similarly situated*,

                         Plaintiff,

v.

**CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN L.L.C., d/b/a CREDIT LAW CENTER**, *et al.*

                         Defendants.

**Case No.:** 2:19-cv-2147-JWL-JPO

**JURY TRIAL DEMAND**

---

**RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(1) AND 12(b)(6) MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
OR ALTERNATIVELY FOR LEAVE TO AMEND**

Now comes Plaintiff, in opposition to Defendants,' Credit Law Center, LLC and Thomas Addleman (collectively "CLC"), motion for dismissal.

### I.    NATURE OF MATTER BEFORE THE COURT

This case arises from CLC's violation of the Credit Repair Organization Act, 15 U.S.C. § 1679b(b) ("CROA"), by systemically charging individuals for services when CLC is prohibited from charging for services before they are performed. This deprived Plaintiff of the use of his money. Moreover, because CLC's agreement violated CROA in additional ways, Plaintiff did not owe the $300.00 *at all* because the entire agreement with CLC was void. CROA 1679f ("**CONTRACTS NOT IN COMPLIANCE**…shall be treated as void"). Additionally, CLC deprived Plaintiff of information that Congress deemed so important it enacted provisions within CROA requiring it. These provisions mandate what information must be provided, when and how the information must be disclosed. Plaintiff has alleged three violations of CROA's requirements by CLC:

(1) **Pre-Charge Prohibition**. CROA § 1679b(b) prohibits charging or receiving any money until after the service is "fully performed." ECF 1 ("Complaint") at ¶¶ 41-47.

(2) **Separate Statement Requirement**. CROA § 1679c(b) requires that the required written disclosures informing consumers of their rights under CROA be provided "separately from any written contract or other agreement…" Complaint at ¶¶ 48-56.

(3) **Cancellation Notice Requirement**. CROA § 1679d(b)(4) requires a conspicuous "notice of cancellation…" Complaint at ¶¶ 57-68.

Because of CLC's violations, Plaintiff (and the putative class) suffered the very harms Congress intended to prevent when enacting CROA. Namely, Plaintiff suffered financial loss (the $300.00 pre-charge he did not owe), and was deprived access to important congressionally mandated information. *Id.* at ¶¶ 45, 54-55, 61 and 66-67. Plaintiff has also advanced a pendant state law claim for breach of fiduciary duty stemming from CLC's CROA violations, seeking damages as a result of, *inter alia,* accepting payment before fully performing credit repair services, and disguising the pre-payment as a retainer to his clients. *See id.* at ¶¶ 69-76.

In addition, Plaintiff adequately states several claims under CROA. As set forth herein, contrary to CLC's contention, the exhibits attached to Plaintiff's well-plead Complaint demonstrate CLC's CROA violations. CLC's attempt to redefine the plain requirements of CROA through creative semantics is without merit, and not grounds for a Fed. R. 12(b)(6) dismissal.

For these reasons, as set forth in following Memorandum of Law, CLC's motion for dismissal under Fed. R. 12(b)(1) and 12(b)(6) should be denied. Alternatively, if the Court finds Plaintiff's pleadings deficient, Plaintiff respectfully moves the Court for leave to amend to address any deficiencies.

## II.    TIMELINE & APPLICATION OF RELEVANT FACTS

- On February 27, 2015, Plaintiff entered into an Engagement Agreement and Limited Designation of Agency ("Engagement Agreement") with Defendants. Complaint at ¶ 24; also *see* ECF 1-1 (a copy of the Engagement Agreement).

- The Engagement Agreement was comprised of eight (8) documents, presented in

electronic format in the following order:

1.   Credit Law Center letter

2.   Client Information Sheet

3.   Limited Scope Representation Agreement

4.   CROA Sec. 405 Disclosure

5.   Power of Attorney

6.   HIPAA Release of Information Authorization Form

7.   Notice of Cancellation

8.   Notice of Cancellation

*Id.* at ¶ 25.

- Although CROA required CLC to provide Plaintiff written disclosures of his CROA rights  before *any* other documents and before signing any document (*i.e.* before having Plaintiff agree to anything), CLC did not do so. CROA § 1679c(a). It only provided the mandatory CROA disclosures **after three of eight other** documents, one of which requires Plaintiff's signature (*see* ECF 1-1 at 6), on page 7 of a **single/combined document** (DocuSign Envelope ID: B2C24984-D017-4FA0-9745-85BD892F363C).

CROA § 1679c(b) requires a "Separate statement," providing:

> The written statement required under this section shall be provided as a document which is **separate** from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer.

(a) Disclosure required

Any credit repair organization shall provide any consumer with the following written statement **before** any contract or agreement between the consumer and the credit repair organization is executed:

"Consumer Credit File Rights Under State and Federal Law

"You have a right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report. The credit bureau must remove accurate, negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.

"You have a right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud.

"You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.

"You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.

"Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur.

"You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

"If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues about you.

"The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:

"The Public Reference Branch

"Federal Trade Commission

"Washington, D.C. 20580"

- The Notice of Cancellation in CLC's agreement reads as follows:

   "You may cancel this contract, without any penalty or obligation, at any time before midnight of the 3rd day which begins after the date the contract is signed by you."

   ECF 1-1 at 6. This is different than the specific Notice of Cancellation set forth under

   CROA § 1679d(b)(4), requiring *in quotes*:

   a conspicuous statement in ***bold face type***, in immediate proximity to the space reserved for the consumer's signature on the contract, ***which reads as follows***:

   "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.".

   *Id.*

- CLC admits that Defendants are each a credit repair organization under the CROA. ECF 19 ("MTD") at 2. This is consistent with the allegations. *See* Complaint at ¶ 23.

- Within seven (7) days of entering the Engagement Agreement, on or before March 4, 2015, Plaintiff paid the $300.00 pre-charge that CLC required. Complaint at ¶ 33, 38.

- CLC's services under its agreement with Plaintiff included investigation and dispute of credit reporting errors or omissions. *Id.* at ¶ 31.

- The $300.00 pre-charge to CLC was paid before the completion of services. *Id.* at ¶ 41.

### III.    STATEMENT OF QUESTIONS PRESENTED

1. Whether Plaintiff has Article III standing to bring his claims; specifically, whether he suffered an injury as result of being charged $300.00 he did not owe, and being deprived of Congressionally-mandated disclosures.

2. Whether Plaintiff has asserted a *prima facie* claim under CROA and his pendant breach of fiduciary duty claim where CLC charged him for services he did now owe.

## IV.    ARGUMENT

### A.    CROA – HISTORY AND PURPOSE

Plaintiff alleged that CLC's violations conflict with the statutory purposes of CROA. *See* Complaint at ¶¶ 3-5. As part of the CROA, Congress codified its findings. CROA § 1679(a). The findings state:

> (1) Consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing in order to obtain and use credit. As a result, consumers who have experienced credit problems may seek assistance from credit repair organizations which offer to improve the credit standing of such consumers.
>
> (2) Certain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters.

*Id.* The purposes of the CROA are:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and
>
> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

CROA § 1679(b). In addition to the codified findings and purposes contained in § 1679, the House Report also sheds light on Congress' purpose and intent, providing:

> The credit repair business involves the marketing of credit repair services to consumers whose consumer reports contain adverse information that interferes with their ability to obtain credit. According to the FTC, these businesses, through advertisements and oral representations, lead consumers to believe that adverse information in their consumer reports can be deleted or modified regardless of its accuracy…Such representations by credit repair clinics are often misleading, and consumers, mostly low-and moderate-income individuals, are cheated out of the money they paid for services.

H.R. Rep. No. 103-486 at 57 (1994). The Report further states that credit repair companies often "inundat[e] consumer reporting agencies with so many challenges to consumer reports that the

reinvestigation system breaks down, and the adverse, but accurate, information is deleted." *Id.* The

Report cites testimony from the Federal Trade Commission stating:

> fraudulent companies that lead consumers to believe that the companies can 'repair' bad credit histories have bilked consumers of millions of dollars in the past several years, have caused consumer reporting agencies to waste time and money reinvestigating spurious disputes, and have been the focus of numerous enforcement actions by the FTC.

*Id.* at § K. Congress itself found:

> economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this title to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against unfair and inaccurate credit billing and credit card practices.

15 U.S.C. § 1601(a). In enacting the CCPA, of which the CROA is a part, Congress intended for courts

to broadly construe its provisions in accordance with its remedial purpose. *Brothers v. First Leasing*, 724

F.2d 789, 793 (9th Cir. 1984). Moreover, courts should construe consumer protection statutes

"liberally [] in favor of" consumers. *Bizier v. Globe Fin. Serv., I*nc., 654 F.2d 1, 3 (1st Cir. 1981). It is in

this context which this Court must rule on Defendants' Motions to Dismiss and the questions raised

therein. *Parker v. 1-800 Bar None, A Fin. Corp.*, Case No. 01 C 4488, 2002 U.S. Dist. LEXIS 2139, at

*6-7 (N.D. Ill. Feb. 11, 2002).

###    B.    PLAINTIFF SUFFERED A CONCRETE HARM AS A RESULT OF EACH OF DEFENDANTS' VIOLATIONS OF CROA

Plaintiff suffered concrete harm in the form of a pecuniary injury when CLC pre-charged him

$300.00 that he did not owe, in violation of CROA. CROA also confers rights to important

information, and CLC's failure to comply with these CROA requirements causes Plaintiff additional

harm, giving rise to Article III standing in this case.

Standing requires that plaintiffs have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). CLC contests only whether Plaintiff incurred an injury in fact.[1]

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (internal quotation marks and citation omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (*quoting* Black's Law Dictionary 479 (9th ed. 2009)). "[W]here a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015). CROA "creates such a cognizable right." *Id.* at 1252.

An injury is "concrete" if it is real or *de facto*, *i.e.*, not abstract. *Spokeo*, 136 S.Ct. at 1548. This includes both tangible harms and intangible harms. *Spokeo*, 136 S.Ct. at 1549 ("we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."), and, *e.g.*, *Friends of the Earth*, 528 U.S. at 183 (alleged reduction in the "aesthetic" and "recreational" value of a river is an injury in fact). A "risk of real harm" can be enough. *Spokeo*, 136 S. Ct. at 1549.[2]

Indeed, an "identifiable trifle" is enough. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009), *citing United States v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 689, fn.14 (1973). As the Supreme Court explains:

---

[1] While CLC does not challenge traceability and redressability, Plaintiff has met his burden of establishing each. Specifically, CLC's act of pre-charging its clients, and its failure to provide mandatory information in the manner mandated by CROA, establish traceability to CLC. These harms can be redressed on behalf of Plaintiff and the putative class by a favorable outcome.

[2] The words "actual or imminent" are also used to describe the required injury, but *Spokeo* does not draw a distinction between an injury that is "concrete," *i.e.*, real, and one that is "actual."

"Injury in fact" reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to distinguish a person with a direct stake in the outcome of a litigation -- even though small -- from a person with a mere interest in the problem. We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, see *Baker v. Carr*, 369 U.S. 186 …. As Professor Davis has put it: "The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."

*Students*, 412 U.S. at 689, n.14 (citations omitted); and *see, e.g., Palm Beach Golf Ctr.-Boca v. John G. Sarris*, 781 F.3d 1245, 1251 (11th Cir. 2015) (fax line tied up for "one minute"); *Common Cause*, 554 F.3d at 1351 (having to show a photo ID).

Finally, *Spokeo* confirms the violation of a statute, by itself, also can be a concrete harm. *Id.* at 1544. Under these standards, Plaintiff suffered multiple concrete injuries.

Here, Plaintiff suffered several concrete harms. First, and most obviously, CLC imposed a pre-charge of $300.00 that he did not owe. Complaint at ¶ 33. CROA prohibited CLC from charging Plaintiff anything before completion of services. Plaintiff's payment of money he did not owe is a form of actual damages. *Sultan v. M&T Bank,* 2017 U.S. Dist. LEXIS 53773 (ND Ill.). ("the simplest of all possible actual damages – being charged additional money not owed…").

Second, Plaintiff suffered additional non-pecuniary harm when CLC violated his right to information CROA requires consumers be given specific information to enable them to make an informed choice before agreeing to hire a credit repair company like CLC. The deprivation of this critical information is one of the very harms Congress enacted the CROA to prevent. CROA § 1679b (a "purpose[] of the CROA [is]...to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services"). Specifically:

(1) be protected from a pre-charge before service is "fully performed." CROA § 1679b(b);

(2) receive a separate written disclosure of consumers' rights under CROA. CROA § 1679c(b);

(3) receive a conspicuous notice of cancellation rights. CROA § 1679d(b)(4).

These rights are critical to the very purpose of CROA, and were enacted by Congress to ensure consumers receive the necessary information to make an informed decision, and to protect against unfair and deceptive advertising and business practices by credit repair organizations. *See* CROA § 1679(b)(1)-(2). Moreover, each of these injuries are directly traceable to CLC, constituting an injury in fact establishing Article III standing.

### 1. Plaintiff Suffered Pecuniary Loss Causes by CLC's $300 Pre-Charge

It is indisputable that the $300 charge constitutes a concrete harm. CLC charged Plaintiff $300 before the credit repair services were performed, in violation of CROA, thus voiding any contract. Thus, Plaintiff did not owe any money. Being charged money one does not owe is actual damage. Furthermore, being deprived of the use of the $300 for a period of time is an injury. *See Santangelo v. Comcast Corp.*, No. 15-cv-0293, 2015 U.S. Dist. LEXIS 69167, at *6-7 (N.D. Ill. May 28, 2015) ("even if the $50.00 deposit were fully refundable, Santangelo still has standing based on the lost time-value of the money.); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) (noting that "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time-value of the money" and holding that this was enough to confer standing).) Thus, the $300 charge satisfies the concrete injury requirement in a variety of ways even if it was eventually owed, which it was not.

### 2. Plaintiff Suffered Additional Concrete Harm when CLC Deprived him of Information Mandated by CROA

Claims II and III are based on CROA's provisions specifically requiring consumers' are provided a separate written disclosure of their rights under CROA, and also are provided a conspicuous notice of their right to cancel. *See* CROA § 1679c(b) and § 1679d(b)(4). CLC's failure to provide a separate written disclosure or a conspicuous notice of cancellation rights runs afoul of the very right Congress conferred under CRAO.

The CROA requires a credit repair organization to provide prescribed disclosures to consumers. 15 U.S.C. § 1679c (a), (b). Before executing a contract or agreement with a consumer, a credit repair organization must provide the consumer a separate written statement of "Consumer Credit File Rights Under State and Federal Law" in a statutorily prescribed form. *Id.*

Furthermore, if a statute creates a substantive right, then a violation of that statutory right cannot be considered merely procedural. *See Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 995 n.2 (11th Cir. 2016) (determining that plaintiff "has not alleged a procedural violation" because "Congress provided [plaintiff] with a substantive right to receive certain disclosures and [plaintiff] has alleged that [defendant] violated that substantive right").

The *Havens Realty* case cited by Justice Thomas in *Spokeo* is particularly instructive. *Spokeo*, 136 S.Ct. at 1551, 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.") *See Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 373–374, 102 S.Ct. 1114, 71 L. Ed. 2d 214 (1982) (recognizing standing for a violation of the Fair Housing Act"). A unanimous Supreme Court ruled the violation of the plaintiff's statutory right not to be lied to when asking about available housing was an "injury in fact," even if the plaintiff had *no* intention of renting a home and interacted with the defendant *fully expecting* it to violate her rights:

> As we have previously recognized, "[the] actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing…'" *Warth v. Seldin, supra*, at 500, quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent *fully expecting* that he would receive false information, and *without any intention* of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).

*Havens Realty Corp.*, 455 U.S. at 373-74 (emphasis added). Suffice to say, one who interacts with a firm, but has no intention of doing business with it and expects it to violate one's rights, suffers no harm beyond the statutory violation. Nevertheless, in the context of substantive rights, the Court ruled nothing more is required to meet Article III. *See id.*

Moreover, similar consumer protection statutes that confer a right to receive important information have found failure to provide it constitutes a concrete injury. And as one court in this district observed the trend "favors finding concrete injury when [Fair Debt Collections Practices Act] Section 1692e violations are alleged . . .[W]hen a debt collector violates Section 1692e by providing false or misleading information, the informational injury that results—i.e. receipt of that false or misleading information—constitutes a concrete harm under *Spokeo*..." (internal quotation marks and citation omitted)). *Cooper v. Stephen Bruce & Assocs.*, No. CIV-18-487-R, 2019 U.S. Dist. LEXIS 1013, at *7-8 (W.D. Okla. Jan. 3, 2019).

In *Macy v. GC Services Ltd. Partnership*, the Sixth Circuit addressed allegations of violation of a notice provision under the FDCPA, which provides consumers specific information regarding their right to dispute a debt. *Id.,* 897 F.3d 747, 751 (6th Cir. 2018). In assessing the defendant's standing challenge, the circuit court concluded "*Spokeo* did not mean to disturb the [Supreme] Court's prior opinions recognizing that a direct violation of a specific statutory interest…, standing alone, may constitute a concrete injury without the need to allege any additional harm." *Id.* at 754. Indeed, "where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient risk of real harm to the underlying interest to establish concrete injury without need to allege any additional harm beyond the one Congress has identified." *Id.* at 755 (internal quotation marks, citations, emphasis, and brackets omitted).

Another example, in the FCRA context, the *Banks v. Cent. Refrigerated Servs.* Court found a

concrete harm exists, conferring standing, where a consumer is deprived of important

Congressionally-mandated information. The *Banks* Court held:

> The court concludes that, by enacting 15 U.S.C. § 1681b(b)(3)(B), Congress created at least two substantive rights on behalf of applicable consumers who suffered an adverse employment action based in whole or in part on a consumer report: *a right to information* and a right to correct inaccurate information.[3]

*Banks v. Cent. Refrigerated Servs.*, No. 2:16-CV-356-DAK, 2017 U.S. Dist. LEXIS 67423, at *8-9, 11-12

(D. Utah May 2, 2017) (Emphasis added) (finding failure to provide information constitute injury in

fact, and denying motion to dismiss). As the *Taylor v. Timepayment Corp.* Court recently held:

> The *Spokeo* court observed that in cases in which "harms may be difficult to prove or measure[,]" *id.* at 1549 (*citing* Restatement (First) of Torts §§ 569 (libel), 570 (slander per se) (1938)), "the violation of a procedural right granted by statute can be sufficient... [and] a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified," *id.* at 1544 (citing *Akins*, 524 U.S. at 20-25). A plaintiff may therefore suffer "a concrete informational injury where [she or] he is **denied access to information required to be disclosed by statute,** and [she or] he 'suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (*quoting Friends of Animals v. Jewell*, 828 F.3d 989, 992, 424 U.S. App. D.C. 167 (D.C. Cir. 2016)). In such a situation, a procedural injury can become constitutionally cognizable when "a person lack[s] access to information to which [she

---

[3] *Citing Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 633 (E.D. Va. 2016) ("Congress emphasized that 'the consumer has a right to know when he is being turned down for credit, insurance, or employment because of adverse information in a credit report and to correct erroneous information in his credit file.'" (*quoting* S. Rep. No. 517, 91st Cong., 1st Sess. 2)); *see also Demmings v. KKW Trucking, Inc.*, Case No. 3:14-CV-494-SI, 2017 U.S. Dist. LEXIS 46455, 2017 WL 1170856, at *9 (D. Or. Mar. 29, 2017) ("KKW assumes that § 1681b(b)(3)(B) has only one purpose: to allow prospective employees to correct inaccurate information in their consumer reports. This interpretation reads too much into *Spokeo's* dicta, and too little into the statutory text."). "[I]t is well-settled that Congress may create a legally cognizable right to information, the deprivation of which will constitute a concrete injury." *Thomas*, 193 F. Supp. 3d at 635; *see also FEC v. Akins*, 524 U.S. 11, 21, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) ("'The 'injury in fact' that [plaintiffs] have suffered consists in their inability to obtain information…that…the statute requires that [defendants] make public."); *Manuel v. Wells Fargo Bank, Nat. Ass'n*, 123 F. Supp. 3d 810, 818 (E.D. Va. 2015) ("It is well-established that a deprivation of information is sufficient to satisfy the injury-in-fact requirement."). Several courts have recognized that multiple sections of the FCRA provide consumers with a right to information. *See, e.g., Syed v. M-I, LLC*, No. 14-17186, 853 F.3d 492, 2017 U.S. App. LEXIS 4954, 2017 WL 1050586, at *4 (9th Cir. Mar. 20, 2017) ("The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process."); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 637 (E.D. Va. 2016) ("Section 1681b(b)(3), like § 1681b(b)(2)(A), provides the consumer with a legally cognizable right to specific information."); *Manuel*, 123 F. Supp. 3d at 818 ("Under the FCRA,…consumers have the right to specific information at specific times.").

or] he is legally entitled *and... the denial of that information creates a 'real' harm with an adverse effect." *Id.* at 345 (*citing Spokeo*, 136 S. Ct. at 1548; *Akins*, 524 U.S. at 21).

Civil Action No. 3:18cv378, 2019 U.S. Dist. LEXIS 55680, at *11-12 (E.D. Va. Mar. 31, 2019)[4] (Emphasis added).

Decisions related to other consumer protection statutes are in accord. *See Meyer v. Fay Servicing, LLC*, No. 2:19-cv-88-FtM-38UAM, 2019 U.S. Dist. LEXIS 76864, at *9-10 (M.D. Fla. May 6, 2019) (finding "Plaintiff's allegation that he was deprived of his statutory right to receive information as a result of Defendants' unlawful conduct is sufficient to show a concrete injury under FCCPA" where he "alleged facts plausibly showing Defendants violated his statutorily-created rights, he "need not allege any additional harm." *Spokeo*, 136 S. Ct. at 1549.); *Barardi v. Select Portfolio Servicing, Inc.*, No. 16-23381-Civ-Scola, 2017 U.S. Dist. LEXIS 160951, at *11-12 (S.D. Fla. Apr. 4, 2017) (finding plaintiff's allegation defendant violated her right to information was sufficient to confer standing under the FCCPA); *see generally Belcher v. Ocwen Loan Servicing, LLC*, No. 8:16-cv-690-T-23AEP, 2018 U.S. Dist. LEXIS 61452, 2018 WL 1701963, at *4 (M.D. Fla. Mar. 9, 2018) (holding plaintiff had standing when he alleged a violation of his rights under the FCCPA and indicated he likely suffered injury as a direct result of the debt collector's actions).

Similarly here, consumers have "a right to information" as well as a right to exercise their rights under CROA § 1679c(b) (requiring provision of CROA § 1679(a) Disclosures),[5] as well as their rights under CROA § 1679d(b)(4) to cancel their agreement. *See Macy v. GC Services Ltd. Partnership*,

---

[4] *Spokeo* favorably discussed several cases that upheld Congressional power to create a legally cognizable right to specific information, the deprivation of which would constitute a concrete injury sufficient to satisfy Article III. Many courts describe this statutory standing as flowing from an "informational injury." *See Spokeo*, 136 S. Ct. at 1544 (*citing Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (upholding the lower court's finding of a concrete injury when defendants did not give plaintiff voters information about candidates as required by federal law)).

[5] *Taylor* recognized "disclosures include, *inter alia,* rights to access and dispute consumer credit information, and notice of the Right to Cancel their agreement with the a credit repair organization." *Id.* at n. 19.

897 F.3d 747, 751 (6th Cir. 2018) (holding failure to provide congressionally-mandated information (discussed in detail *supra*) is a concrete harm).

In this case, CLC's failure to provide this important information in the manner Congress requires (separately and conspicuously), undermines the purpose of ensuring credit repair customers are aware of these important rights CLC unlawfully buries in its agreements.

First, one of the problems with CLC's position is that it looks at each of Plaintiff's CROA claims in a vacuum. As *Hapka v. CareCentrix, Inc.*, observed in denying a similar motion:

> While standing is an individualized inquiry, *DaimlerChrysler Corp.*, 547 U.S. at 352, the allegation that plaintiff is the victim of tax fraud impacts plaintiff's other allegations of injury. The fact that her stolen information has been used once has a direct impact on the plausibility of future harm. The court therefore considers plaintiff's allegations of future harm in light of her allegations that her personal information was used for tax fraud shortly after the data breach.

*Id.,* No. 16-2372-CM, 2016 U.S. Dist. LEXIS 175346, at *6-7 (D. Kan. Dec. 19, 2016). Similarly, in the case at bar, Plaintiff's $300 concrete injury, suffered as a result of CLC's unlawful pre-charge, impacts each of his other claims under CROA. For example if CLC had provided the required information, and Plaintiff had been notified of his statutory rights, he would not have suffered this injury illustrating that this disclosure is material and substantive and not a "mere" procedural right.

Notably, CLC does not cite a single case supporting the proposition that Plaintiff does not have Article III standing to advance his CROA claims.[6] Indeed, the *only* case Plaintiff found addressing this question under CROA flatly rejects Defendants' argument. *Asmar v. Benchmark Literacy Grp., Inc.*, held:

---

[6] In fact, Defendants cite only two cases related to their standing argument: *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) and *Brave Law Firm, LLC v. Truck Accident Lawyers Group, Inc.,* 2018 WL 3122172 (D. Kan. June 26, 2018). Neither involves a CROA claim. And, the *Brave* case allowed amendment of the complaint, which resolved the question of standing. *See Brave Law Firm, LLC v. Truck Accident Lawyers Grp., Inc.*, No. 17-1156-EFM-JPO, 2019 U.S. Dist. LEXIS 79275, at *26 (D. Kan. May 10, 2019).

> Under *Friends of the Earth v. Laidlaw*, Plaintiffs must show that they have suffered a concrete injury, that the injury is fairly traceable to Defendants, and that a favorable result will redress the injury. 528 U.S. at 180-81.
>
> Benchmark pre-charges its customers, including Janet Asmar, for credit repair services. This is prohibited under CROA, and constitutes an injury in fact. Furthermore, it is irrelevant whether Benchmark employs a go-between, myPaySystems.com, to collect payment. The injury is "fairly traceable" to Benchmark. Finally, it is irrelevant whether these funds were later refunded to Asmar. HN12 Standing is determined at the time the litigation is commenced. *Senter v. General Motors Corp.*, 532 F.2d 511, 520 (6th Cir. 1976) ("reforms after-the-fact do not moot questions already presented for review"). Here, Asmar's money was refunded *after* Benchmark received notice of this lawsuit.

*Id.,* No. 04-70711, 2005 U.S. Dist. LEXIS 23197, at *27 (E.D. Mich. Oct. 11, 2005).  Where, as is the case here, a plaintiff suffers a pecuniary loss as a result of the violation alleged, it is not remarkable that few courts have addressed a standing argument thereunder.

### 3. The Breach of Fiduciary Duty is a Pendant Claim Before the Court on the same Operative Facts

CLC claims Plaintiff "identifies no injury" as a result of its breach of fiduciary duty. MTD at 7. Yet, CLC cites to only one half of paragraph 75 of Plaintiff's Complaint, omitting the remaining allegation that CLC breached its fiduciary duty by "accepting payment for credit repair services before such services were fully performed." Complaint at ¶ 75. Reference to CLC's $300.00 unlawful pre-charge is indisputably allegation of an injury in fact.

Moreover, the breach of fiduciary claim arises from the same operative facts as the CROA claims. *See* Complaint at ¶ 75-76. It is long-settled that pendant jurisdiction may be exercised in the Court's discretion where "the federal claim [has] substance sufficient to confer subject matter jurisdiction on the court." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Federal courts may exercise such pendent jurisdiction over state-law claims when "state and federal claims…derive from a common nucleus of operative fact." *Id.* at 725.

### C.   PLAINTIFF'S ALLEGATIONS ARE WELL PLEAD & THE EXHIBITS SHOW EVIDENCE OF CLC'S VIOLATIONS

#### 1.   § 1679b(b) (COUNT I) – Demanding Advance Payment[7]

CROA prohibits charging or receiving any money until after the service is "fully performed." CROA § 1679b(b). 15 U.S. Code § 1679b sets forth "Prohibited practices" under CROA. The relevant provision reads:

**(b) PAYMENT IN ADVANCE**

No credit repair organization may **charge or receive any money** or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed.

*Id.* (Emphasis added) In this case, CLC does not dispute that Plaintiff has properly alleged that CLC, as part of its ordinary practice, pre-charges clients for credit repair services. *See* Complaint at ¶ 45 ("Defendants charged Plaintiff and the putative class money prior to fully performing any credit repair services on their behalf."); *also see* MTD at 9 (same). Rather, CLC inaptly claims the exhibits filed with the Complaint controvert this allegation. *Id.*

CLC concedes the fact that Plaintiff paid CLC $300.00 within seven (7) days of entering the agreement with CLC. Complaint at ¶ 33 ("Defendants demanded, and Plaintiff and paid $300.00 within seven days of entering into the Engagement Agreement."); MTD at 9 (same). Importantly, CLC does not dispute that services under its agreement were *not* fully performed at the time it received this $300.00 payment, nor does (or could) the agreement (executed in advance) suggest otherwise. This allegation is all that is necessary to overcome CLC's R. 12(b)(6) motion.

CLC's misplaced argument that the $300.00 payment was "merely a 'retainer'" is inconsequential to this well-plead CROA violation. Any way CLC may try to describe it, the $300.00

---

[7] CLC is well aware that in addition to the $300 Plaintiff was initially charged, Plaintiff paid them approximately $1,000.00. Plaintiff submits that this additional fact need not be alleged to set forth his claims, but to the extent the Court holds otherwise, respectfully moves for leave to amend as set forth herein.

is *money*. Courts often begin an ordinary meaning analysis by consulting contemporary dictionary definitions. *NCUA Bd. v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246, 1258 (10th Cir. 2013). The primary meaning of "receive" is "to come into possession of: ACQUIRE" *See* Merriam-Webster Online, *s.v.* "receive" (definition 1), at https://www.merriam-webster.com/dictionary/ receive (last accessed June 4, 2019); *See also United States v. Young*, 862 F.2d 815, 821 (10th Cir. 1988) (interpreting words based on plain English definition). *Simmons v. Liberty Mut. Ins. Co.*, Civil Action No. 16-cv-3097-WJM-KLM, 2018 U.S. Dist. LEXIS 34490, at *21 (D. Colo. Mar. 2, 2018) (interpreting "receive" the same way).

Defendant's argument is similar to one rejected by the Central District of California in the case of *Rannis v. Fair Credit Lawyers, Inc.*, 489 F. Supp. 1110 (C.D. Cal. 2007). As here, the attorney-defendants in *Rannis* argued that their services were "within the course and scope of the practice of law and not as a credit repair organization." *Id.* at 1115. The *Rannis* court was unconvinced, holding that "[t]he CROA explicitly regulates the practice of providing any service with the express or implied purpose of improving any consumer's credit record, credit history, or credit rating, or providing advice or assistance related to such services. Although Defendant may have been acting in his capacity as an attorney, he was still providing services with the goal of improving Plaintiff's credit rating." *Id.* It does not matter that CLC styles the $300.00 prepayment as a "retainer," ultimately it is still money that was demanded by CLC (and paid by Plaintiff) for the purpose of improving a consumer credit report. The fact that this amount was demanded and paid before fully completing the credit repair services is all that Plaintiff need plead to defeat CLC's motion. *See Stith v. Thorne*, No. 3:06CV240, 2006 U.S. Dist. LEXIS 80191, at *21 (E.D. Va. Sep. 19, 2006) (denying dismissal and holding Plaintiff set forth "clear allegations" of CROA § 1679b(b) where, like this case, the "Complaint avers that the Plaintiff paid for credit repair services before receiving the service.").

Finally, as previously set forth, the undisputed fact CLC *received* the $300.00 payment satisfies Plaintiff's pleading requirement for this violation of CROA. Thus, CLC's claim that it did not *charge* Plaintiff is bemusing. But in the interest of fully foreclosing CLC's contentions, interpreting "charge" in accord with its plain meaning in this context, is "(1) : to fix or ask as fee or payment [*e.g.*] charges $50 for an office visit" and "(2) : to ask payment of (a person) [*e.g.*] charge a client for expenses." *See* Merriam-Webster Online, *s.v.* "charge" (definition 5b), at https://www.merriam-webster.com/dictionary/ receive (last accessed June 4, 2019).

The fact that CLC describes the money as a *mere retainer* does not change the simple fact that CLC "charge[d] or receive[d] money or other valuable consideration for performance…before [its] services [wa]s fully performed" and this mirrors the statutory prohibition set forth under CROA. CROA § 1679b(b). Similarly, CLC admits "the retainer was *collected*." MTD at 9. (Emphasis added). Stating the $300 was *collected* is simply another ways of saying CLC *received money,* which is a clear violation of CROA's express prohibitions. CLC's cite to no authority drawing a distinction between a "retainer" paid for the purpose of credit repair services, and "money" paid for credit repair services— and the statute itself does not draw such a distinction. The statute is clear: if money is charged or received by a credit repair organization prior to the fully performance of the credit repair services, the statute is violated. Plaintiff adequately pleads these facts and Plaintiff's claim for violation of § 1679b(b) should not be dismissed.

## 2.   § 1679c(b) (COUNT II) – Separate Document Requirement

Section 1679c of CROA set forth mandatory disclosures that credit repair organizations like CLC must provide to consumers. 15 U.S. Code § 1679c(b) provides in relevant part:

**(b) SEPARATE STATEMENT REQUIREMENT**

The written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer.

*Id.* (Emphasis added). The purpose of these disclosures is "to describe the law to consumers in a manner that is concise and comprehensible to the layman." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 102, 132 S. Ct. 665, 671 (2012). To that end, the disclosures required by the statute are set out in "simple, non-technical language." *Alexander v. U.S. Credit Management, Inc.*, 384 F. Supp. 2d 1003, 1015 (N.D. Tex. 2005). Here, as evidenced by ECF 1-1, filed with the Complaint, CLC presents its prospective clients with one large, combined, "comprehensive electronic document…presented in … [a] DocuSign Envelope ID." Complaint at ¶ 25.[8] By virtue of being in a single, "comprehensive" [*Id.*] document – Plaintiff clearly alleges that CLC violated § 1679c's Separate Statement Requirement when CLC:

> provided the § 1679c Disclosures in an E-Doc, which is a **single**, **combined** electronic document comprised of eight distinct agreements, with the mandatory § 1679c Disclosures set forth on ***page 6 of 10***.

Complaint at ¶ 51 (Emphasis added). CLC contorts the Complaint's clear allegations in a misguided attempt to misconstrue the pleadings. After all, the fact that CLC *merged* these important and mandatory CROA disclosures into a single E-Doc is the *very basis of the claim*.

CLC's failure to provide this mandatory CROA disclosure as a "separate" stand alone document undermined the Congressional intent of this provisions, which "Congress deemed… important enough to warrant a dedicated Section of CROA's 10-part Subchapter, entitled: 15 U.S. Code § 1679c. Disclosures." Complaint at ¶ 52. This prevents companies from burying the notice in the middle or end of a multi-page document, as CLC did here.

The Supreme Court has described the requirement that these disclosures be provided to consumers as a "consumer right.". *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 99, 132 S. Ct. 665, 669 (2012). Indeed, "Congress deemed these Disclosure rights important enough to require inclusion of requisite verbatim Disclosure language in every consumer contract providing credit repair services, as

---

[8] In Plaintiff's case, it was as "ID: B2C24984-D017-4FA0-9745-85BD892F363C ('E-Doc')." *Id.*

set forth in CROA § 1679c(a)" Complaint at ¶ 53. And as a result of CLC's "failure to provide Plaintiff and the putative with a separate statement containing their Disclosure rights[, it] deprived them of the information necessary to make an informed decision about the purchase of credit repair services, as intended by Congress." *Id.* at ¶ 54. "Such information, if properly provided, could have helped Plaintiff and the putative class avoid entering this otherwise violative contract with Defendants." *Id.* at ¶ 55.

CLC's argument that it is not required to "mail the CROA disclosures to its prospective customers in a separate package" is beside the point. MTD at 10. CROA explicitly requires "[t]he written statement...be ***provided*** as a document which is ***separate from any written contract or other agreement***..." CROA § 1679c(b) (Emphasis added). Here, as alleged in the Complaint, it was not. It was provided in a combined (*not* "separate") E-Doc, which rendered the disclosure buried in the middle of the documents.

If there is any question whether the fact that CLC buried these mandatory disclosures, which CROA mandates be provided in a stand-alone document, on page 6 of E-Doc comprised of a combinations of multiple agreements violates CROA, this would be a question for the trier of fact, and not properly before the Court on a motion to dismiss.

### 3.   § 1679d(b)(4) (COUNT III) – Right to Cancel Notice

Congress was very specific regarding consumers' rights to information regarding the right to cancel under CROA. CROA § 1679d(b)(4) requires, first "a conspicuous statement in ***bold face type***, in immediate proximity to the space reserved for the consumer's signature on the contract. CLC first fails to provide the mandatory disclosure in "bold face type" as expressly mandated by CROA. *See* ECF 1-1 at 6. This is clearly alleged in the Complaint. *See* Complaint at ¶ 62.

Next, § 1679d(b)(4) requires *verbatim* language. And once again, CLC fails to meet this requirement.

| **CROA Mandated Language**<br><br>CROA § 1679d(b)(4) | **CLC's Language**<br><br>ECF 1-1 at 6 |
|---|---|
| "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right." | "You may cancel this contract, without any penalty or obligation, at any time before midnight of the 3rd day which begins after the date the contract is signed by you." |

CLC's deficient disclosure clearly deviates from the statutorily required verbiage. Indeed, CLC's disclosure omits the entire sentenced directing consumers to "[s]ee the attached notice of cancellation form for an explanation of this right." CROA § 1679d(b)(4). This allegation is set forth in the pleadings. *See* Complaint at ¶ 63. This omission is material as it precludes consumers from finding the more detailed disclosures of their rights. This omission is especially concerning in this case where CLC wrongfully charged $300. If Congress had intended to make inclusion of this language discretionary, it would have said so, and not *required* the quoted language.

The fact that CLC included *some* of the required language does not excuse its failure to comply with the rest. After all, "[t]he language actually chosen by Congress should be given effect because it is plain and clear on its face, and we "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992). Indeed, it demonstrates CLC's awareness of this requirement, and choice to ignore it. By doing so, CLC "deprived Plaintiff and the putative class of their right to information; specifically due notice of their cancellation rights under CROA." Indeed, in addition to not directing consumers to the location of the Notice of Cancellation form, as CROA demands, CLC "buried [it] at the end of ten pages of various documents and agreements, after a Power

of Attorney form, and a HIPAA Release of Information Authorization Form, at pages 9 and 10." Complaint at ¶ 64; *also see* ECF 1-1 at 9-10.

Like the other requirements giving rise to this action, "Congress deemed notice of cancellation rights important enough to mandate inclusion of requisite verbatim language in every consumer contract providing credit repair services." Complaint at ¶ 65. And CLC's "failure to [the] conspicuous notice of the right to cancel deprived [Plaintiff] of the information necessary to make an informed decision about the purchase of credit repair services[, which could have helped Plaintiff and the putative class avoid entering this otherwise violative contract with Defendants." *Id.* at ¶¶ 66-67.

### 4.  CLC Breached its Fiduciary Duty

CLC claims Plaintiff failed to plead the necessary elements of a *prima facie* breach of fiduciary duty claim. First, CLC asserts that based on its contentions as to the CROA violations, this claim must also fail. As set forth herein, CLC's arguments regarding the Plaintiff's CROA claims are inapt. And as set forth in Section IV, *supra,* this claim is sound for the same reasons thereunder.

Next CLC claims that Plaintiff did not identify which duty CLC violated. But, again, CLC ignores the allegations in the Complaint. In addition to reference to the plethora of "acts and omissions" alleged with specificity throughout the Complaint,[9] which CLC cites in its motion [MTD at 13], the Complaint provides:

> Defendants breached its fiduciary duty to Plaintiff and members of the class by engaging in the acts and omissions alleged herein, ***including among other things, accepting payment for credit repair services before such services were fully performed***, in violation of the CROA.

Complaint at ¶ 75 (Emphasis added). Additionally, Plaintiff has pled each of the fiduciary duties that CLC maintains were not named. Complaint ¶ 74 ("[i]nherent within this fiduciary relationship are the

---

[9] If the Court deems it necessary for Plaintiff to expressly re-state the acts and omissions raised in the Complaint within Count IV, he respectfully moves for leave to amend as set out in Section VI of this memorandum.

duties of loyalty, integrity, candor, and good faith."). These duties emanate from the attorney client relationship. *Burton v. Kirk*, No. 86-cv-1277-C, 1989 WL 134944, at *1 (D. Kan. Oct. 31, 1989). As to the damages suffered by Plaintiff and the putative class as a result of CLC's breach of fiduciary duty, this was sufficiently alleged as set out in Section IV, *supra*.

Importantly, in order for CLC to owe a fiduciary duty to Plaintiff, an attorney-client relationship needed to have formed. *Redmond v. Alexander*, No. 88-cv-2516-JWL, 1992 WL 371616, at *3 ( D. Kan. Oct. 28, 1992) ("While an attorney's liability for professional negligence may extend to third parties in certain limited circumstances, a fiduciary duty exists only in an attorney-client relationship."); *Wigton v. Donnelly*, 122 Kan. 796, 253 P. 400, 402 (1927) ("An attorney occupies a fiduciary relation to his client, and confidence is reposed in him, not on account of his financial responsibility, but because he bears the certificate of this court that he is of good moral character and worthy to be intrusted with the interests, business and property of those who require his services."). CLC does not dispute that it acted as an attorney for Plaintiff. Furthermore, Plaintiff has plead that CLC is a law firm, and that CLC acted as an attorney and legal representative for Plaintiff. Complaint ¶ 13; 15–18; 71–73. These facts must be taken as true for purposes of a motion to dismiss. Consequently, there is nothing further that Plaintiff needed to plead in order to state a plausible claim for relief. Count IV should not be dismissed.

## V.    REQUEST FOR LEAVE TO AMEND

If the Court finds that any claims are insufficiently plead in Plaintiff's Class Action Complaint, he respectfully moves for leave to correct any such deficiency. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We reiterate that the district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim."); *Staats v. Cobb,* 455 Fed. Appx. 816, 818 (10th Cir. 2011) ("We have previously explained that a court "should dismiss with leave to amend ... if it is at all possible that the party against whom the dismissal is directed

can correct the defect in the pleading or state a claim for relief.") (unpublished) (*citing Brever v. Rockwell Intern. Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) ("Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.") (*quoting* 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1483, at 587 (2d ed. 1990))).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks the Court to DENY Defendants' motion to dismiss under Fed. R. 12(b)(1) and 12(b)(6). Alternatively, if the Court finds Plaintiff's pleadings deficient, Plaintiff respectfully moves the Court for leave to amend to address any deficiencies.

<div style="margin-left:40%">

Respectfully Submitted,

By: /s/ Matthew S. Robertson
Michael H. Rapp              #25702
A.J. Stecklein              #16330
Matthew S. Robertson        #27254
Stecklein & Rapp Chartered
748 Ann Ave
Kansas City, KS 66101
Telephone:      (913) 371-0727
Facsimile:      (913) 371-0727
Email:  mr@kcconsumerlawyer.com
        aj@kcconsumerlawyer.com
        msr@kcconsumerlawyer.com

By: /s/ Amy L. Wells
Keith J. Keogh (*pro hac vice*)
Amy L. Wells (*pro hac vice*)
Keogh Law, Ltd.
55 West Monroe Street
Suite 3390
Chicago, Illinois 60603
(312) 726-1092
Email:  keith@keoghlaw.com
        awells@keoghlaw.com

*Attorneys for Plaintiff*

</div>

## **CERTIFICATE OF SERVICE**

I certify that on June 7, 2019, I caused a this Motion to be filed with the Clerk of the Court using CM/ECF, which caused all counsel and parties to be served via email.

_/s/_ Matthew S. Robertson
Attorney for Plaintiff