**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MARK ENSMINGER, *on behalf of himself and those similarly situated*,<br><br>                              Plaintiff,<br><br>v.<br><br>CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN LLC, d/b/a CREDIT LAW CENTER, and THOMAS ADDLEMAN a/k/a TOM ADDLEMAN,<br><br>                              Defendants. | Case No. 2:19-cv-2147-JWL-JPO<br><br>Hon. John W. Lungstrum<br><br>Magistrate Judge James P. O'Hara<br><br>Jury Trial Demanded |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT WITH PREJUDICE**

Defendants Credit Law Center, LLC a/k/a Thomas Andrew Addleman, LLC, d/b/a Credit Law Center and Thomas Addleman (together, "CLC") respectfully submit this reply brief in further support of their Rule 12(b)(1) and 12(b)(6) motion to dismiss the Class Action Complaint of Mark Ensminger ("Plaintiff") with prejudice.

**I.    COUNTS I-IV SHOULD BE DISMISSED FOR LACK OF STANDING.**

   **A.    Plaintiff fails to allege a concrete injury in Count I.**

Count I alleges that CLC "charged Plaintiff and the putative class money prior to fully performing any credit repair services on their behalf" in violation of Section 1679b(b) of CROA. (Compl., ¶ 45.) In its Memorandum of Law in Support of its Motion to Dismiss ("Mem."), CLC established that Plaintiff cannot satisfy the "concrete injury" requirement for Article III standing to bring this claim because Plaintiff does not (and cannot) allege that he did not receive the services that he paid for. (Mem. at 4-5.) Plaintiff does not dispute this.

Instead, Plaintiff argues that he suffered a concrete injury because "CLC imposed a pre-charge of $300.00 that he did not owe" because CLC allegedly assessed the charge "in violation of CROA, thus voiding any contract." (Resp. at 9-10.) This *post hoc* effort to rehabilitate Plaintiff's deficient allegations fails for three reasons. First, <u>nowhere</u> in the Complaint does Plaintiff allege that he did not owe the $300.00 that he paid CLC. Plaintiff's Response simply makes that allegation up out of whole cloth. (*Compare* Resp. at 9 (stating "[f]irst, and most obviously, CLC imposed a pre-charge of $300.00 that [Plaintiff] did not owe," and citing to paragraph 33 of the Complaint) *with* Compl., ¶ 33 (alleging only "Defendants demanded, and Plaintiff and [sic] paid $300.00 within seven days of entering into the Engagement Agreement").)

Second, the contention is a meaningless tautology. The reverse engineered concrete injury described in the Response is that Plaintiff paid $300.00 he did not owe because CLC violated the statute by pre-charging him $300.00. (*See* Resp. at 9-10.) Again, there is no allegation that Plaintiff received anything less than what he paid for – the Response simply contends that Plaintiff was injured because the charge (allegedly) violated CROA. (*See id.*) But as CLC noted in its opening brief, this identifies the alleged violation, it does not identify the concrete *injury* that Plaintiff suffered as a result. And "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiff cites to one unreported decision from the Eastern District of Michigan that purports to hold otherwise, (Resp. at 15-16), but it pre-dates *Spokeo* by eleven years, runs directly counter to *Spokeo*'s holding, and is therefore unpersuasive. *Compare Asmar v. Benchmark Literacy Group, Inc.*, No. 04-70711, 2005 WL 2562965, at *9 (E.D. Mich. Oct. 11, 2005) (holding that pre-charging customers is prohibited under CROA and therefore constitutes an injury in fact) *with Spokeo*, 136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a

plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"…some statutory violations "result in no harm").

Finally, as set forth in Section II(A), *infra*, the Engagement Agreement controverts Plaintiff's allegation that he was charged before any service was fully performed. For these reasons and the reasons set forth in CLC's opening brief, because Plaintiff does not (and cannot) identify any concrete harm that he suffered as a result of CLC's alleged violation of Section 1679b(b) of CROA, Plaintiff does not have standing to bring Count I of the Complaint, and it should be dismissed with prejudice. (Mem. at 4-5.)

### B. Plaintiff fails to allege a concrete injury in Counts II and III.

Count II alleges that the Engagement Agreement did not provide Plaintiff with certain CROA-mandated disclosures in a "separate document," as required by the statue. (Compl., ¶¶ 50-51.) In its opening brief, CLC established that Plaintiff does not have standing to bring Count II because Plaintiff does not (and cannot) allege that he suffered any concrete injury as a result of CLC's (alleged) failure to present the disclosure to him in a "separate document." (Mem. at 5-6.) The absence of any allegation of concrete injury is not surprising because the documents attached to the Complaint make plain that Plaintiff <u>did</u> receive the disclosure in a "separate document," and that he acknowledged his receipt of the disclosure by signing it. (Mem. at 10-11; *infra* at 11-12.) Plaintiff does not dispute any of this.

Instead, Plaintiff cites case law purporting to establish that Plaintiff's allegation that CLC did not provide the disclosure "in the manner" required by the statute is sufficient to allege standing. (Resp. at 10-15.) None of these cases support Plaintiff's position, however, because all of them involved claims that a required disclosure actually was not provided, or that the plaintiff

3

was given false or misleading information. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (plaintiff alleged the defendant provided false, misleading, or deceptive information); *Taylor v. Timepayment Corp.*, No. 3:18-CV-378, 2019 WL 1449622, at *7 (E.D. Va. Mar. 31, 2019) (same); *Cooper v. Stephen Bruce & Assocs.*, No. CIV-18-487-R, 2019 WL 97826, at *4 (W.D. Okla. Jan. 3, 2019) (same); *May v. GC Services Ltd. Partnership*, 897 F. 3d 747, 757 (6th Cir. 2018) (same); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 994-95 (11th Cir. 2016) (plaintiff alleged that the defendant failed to provide the required disclosures at all, not simply that the disclosures were provided in the incorrect manner); *Meyer v. Fay Servicing, LLC*, No. 2:19-CV-88-FtM-38UAM, 2019 WL 2009378, at *1, 3 (M.D. Fla. May 7, 2019) (same); *Banks v. Cent. Refrigerated Servs.*, No. 2:16-CV-356-DAK, 2017 WL 1683056, at *4 (D. Utah May 2, 2017) (same); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 634 (E.D. Va. 2016) (same). These cases also are distinguishable because, unlike Plaintiff here, the plaintiffs in those cases sued under consumer protection statutes that provide for the recovery of *statutory* damages, whereas CROA does not and instead requires that the Plaintiff suffer *actual* damages.

Here, the documents attached to the Complaint make plain that Plaintiff <u>did</u> receive the required disclosure. Plaintiff also does not and cannot allege that the information provided to him was false or that he was misled in any way. Alleging a violation of CROA's "stand-alone requirement," *i.e.*, the statute's mandate "that the disclosure appear on its own page," is to allege "nothing more than a bare procedural violation." *See Casillas v. Madison Avenue Associates, Inc.*, No. 17-3162, --- F. 3d ---, 2019 WL 2353211, at *3-4 (7th Cir. June 4, 2019) (citing *Groshek v. Time Warner Cable, Inc.*, 865 F. 3d 884 (7th Cir. 2017). For such alleged violations, Article III standing requires allegations as to the harm caused as a result, such as, for example, an allegation that "the improper format caused [the plaintiff] to misunderstand the disclosure." *See id*. In

4

contrast, Plaintiff's Complaint does no more than speculate that a "properly provided" disclosure "could have helped" Plaintiff in some unspecified way. (*See* Compl., ¶ 55.) The Supreme Court has made clear that such speculation is insufficient to allege standing. *See Spokeo*, 136 S. Ct. at 1548 (alleged injury must be "actual or imminent, not conjectural or hypothetical").) The Court should therefore dismiss Count II with prejudice for lack of standing.

Similarly, Count III alleges that the Engagement Agreement did not provide Plaintiff with a CROA-mandated notice of cancellation right. (Compl., ¶¶ 58-60.) Plaintiff does not allege that he did not receive the notice of cancellation right, that he was not aware of his cancellation right, or that he would have exercised his cancellation right but for CLC's alleged violation. Rather, Plaintiff alleges that certain text was not in bold font, that the Engagement Agreement omitted a sentence specifically directing the reader to the notice, and that the notice was "buried at the end of ten pages of various documents and agreements." (*See* Compl., ¶¶ 62-64.) As for a concrete injury that Plaintiff suffered as a result of this purported violation, Plaintiff again merely speculates that the "information, if properly provided, could have helped Plaintiff and the putative class avoid entering this otherwise violative contract."[1] (*Id*. at ¶ 67.)

Again, Plaintiff does not dispute any of this. Instead Plaintiff relies on the same litany of inapposite case law involving plaintiffs who were either actually deprived of a required disclosure, or who were given false or misleading information. (*Supra* at 3-4.) As set forth above, these cases are inapplicable here because the documents attached to the Complaint demonstrate that Plaintiff

---

[1] As set forth in CLC's opening brief, this allegation, aside from being inadequate speculation, is non-sensical on its face. Although Plaintiff repeats it in his Response, he fails to explain how knowledge of his cancellation right could have helped Plaintiff "avoid entering this otherwise violative contract." To the contrary, a cancellation right is an incentive to *enter* a contract, not a reason to "avoid" it.

5

was notified of his cancellation right, and there is no allegation that Plaintiff was provided false information or was misled in any way. Even if Plaintiff's allegations in Counts II and III were true, and even if they did amount to a procedural, technical violation of CROA, Plaintiff still must allege that he suffered a concrete injury as a result of the violation if he is to have standing to bring the claims. *See Spokeo*, 136 S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation"); *see also Casillas*, 2019 WL 2353211, at *3-4 (in claim for failure to disclose statutory rights, Article III standing requires allegations as to the harm that would have been averted had the disclosure procedure been followed).

Mischaracterizing the *Spokeo* decision and citing only to its Syllabus, Plaintiff protests that "*Spokeo* confirms the violation of a statute, by itself, also can be a concrete harm." (Resp. at 9.) It is true that, pointing to two decisions in which a plaintiff was unable to obtain certain information that had been designated by statute to be public and subject to disclosure, the *Spokeo* Court acknowledged that a statutory violation "can be sufficient in some circumstances to constitute an injury in fact." *Id*. at 1549. "In other words," the Court continued, "a plaintiff in such a case need not allege an *additional* harm beyond the one Congress has identified." *Id*. (emphasis in original.) That reasoning is inapplicable here, however, where there is no allegation that Plaintiff was unable to obtain information he was entitled to, and Plaintiff does not and cannot allege that he failed to receive the information CLC was required to provide at the time CLC was required to provide it.

Plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo*, 136 S. Ct. at 1550; *Casillas*, 2019 WL 2353211, at *3-4. He must still allege a "concrete injury," because "[a] violation of one of the [statute's] procedural requirements may result in no harm." *Spokeo*, 136 S. Ct. at 1550. Plaintiff does not allege that the purported technical violations caused him to overlook or misapprehend his rights in any way, and he certainly does not allege

6

that he would have done anything differently but for the purported violation. To the contrary, the absence of any concrete injury alleged in the Complaint makes plain that these purported technical violations "result[ed] in no harm." *See id*. Indeed, Plaintiff offers only vague speculation that the "properly provided" disclosure "could have helped" him in some unspecified way. (Compl., ¶¶ 55, 67.) *Spokeo* has made clear that this is insufficient, and because Plaintiff fails to allege any concrete injury, Counts II and III should be dismissed with prejudice for lack of standing.

### C.     Plaintiff fails to allege a concrete injury in Count IV.

Count IV alleges that CLC breached its fiduciary duty to Plaintiff by engaging in the purported CROA violations set forth in Counts I-III. In its opening brief, CLC established that Plaintiff failed to identify any injury that he suffered as a result of the purported breach of fiduciary duty, and that Count IV should therefore be dismissed for lack of standing. (Mem. at 7-8.) Plaintiff attempts to dispute this by directing CLC and the Court Paragraph 75 of the Complaint and the "allegation that CLC breached its fiduciary duty by 'accepting payment for credit repair services before such services were fully performed.'" (Resp. at 16 (citing Compl., ¶ 75.)

This allegation, however, simply identifies the *violation* about which Plaintiff complains. It does not identify the concrete *injury* required for Article III standing. Plaintiff then argues in conclusory fashion that "[r]eference to CLC's $300.00 unlawful pre-charge is indisputably [an] allegation of an injury in fact." (Resp. at 16.) But whatever Plaintiff may want CLC and the Court to infer from the allegations in Count IV, the law requires him to "clearly allege facts demonstrating each element [of standing]." *See Spokeo*, 136 S. Ct. at 1547 (internal citations omitted). Save for Plaintiff's inadequate allegation that he has "suffered damages," (which Plaintiff's Response does not attempt to defend), Plaintiff identifies no injury as a result of CLC's

7

purported breach of fiduciary duty whatsoever. (*See* Compl., ¶¶ 76, 70-75.) Count IV should be dismissed with prejudice for lack of standing

Finally, Count IV should also be dismissed for lack of subject matter jurisdiction. Plaintiff failed to allege the Court's pendant jurisdiction (or its statutory equivalent, 28 U.S.C. § 1367(a)) in the Complaint, and he has therefore failed to allege this Court's jurisdiction over Count IV. (*See* Compl., ¶ 9.) Moreover, even if the Court were to exercise supplemental (*i.e.*, pendant) jurisdiction over Count IV *sua sponte*, Count IV should still be dismissed for lack of subject matter jurisdiction if the Court dismisses Counts I-III for lack of standing and/or failure to state a claim. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (where all federal claims are dismissed before trial, the state claims should be dismissed as well); *Tarshik v. Kansas*, No. 08-4058-SAC, 2008 WL 4489789, at *7 (D. Kan. Sept. 30, 2008) (same). Plaintiff does not dispute this. (*See* Resp. at 16.)

## II.   COUNTS I-IV SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff repeatedly (and falsely) asserts that CLC "concedes" or "does not dispute" numerous allegations in the Complaint.[2] (*See, e.g.,* Resp. at 5, 17, 19, 24.) Plaintiff's assertion is incorrect, and, as CLC expressly stated in its opening brief, CLC accepts Plaintiff's well-pleaded

---

[2] For instance, Plaintiff falsely asserts "[i]mportantly, CLC does not dispute that services under its agreement were *not* fully performed at the time it received [the] $300.00 payment, nor does (or could) the agreement (executed in advance) suggest otherwise." (Resp. at 17 (emphasis in original).) It is self-evident that Plaintiff has no basis to make this assertion given that the parties are at the motion to dismiss stage of the litigation, and, other than accepting Plaintiff's allegations as true for purposes of its Motion, CLC has not admitted (or failed to dispute) anything. Further, CLC <u>does</u> dispute Plaintiff's false allegation that services under its agreement were not fully performed at the time that CLC received Plaintiff's $300.00 retainer. Indeed, Plaintiff's facially false contention that the Engagement Agreement "does not" suggest otherwise is belied by the incontrovertible fact that the retainer was not provided to CLC until seven days <u>after</u> Plaintiff executed the Engagement Agreement. (*Compare* Resp. at 17 *with* Engagement Agreement, attached as Exhibit 1 to CLC's Memorandum, at Sec. V, page 3.)

allegations as true (as it must under the Federal Rules) only for purposes of its Motion to Dismiss. (Mem. at 2, n.1)

### A. Count I fails to state a claim because the Engagement Agreement controverts Plaintiff's allegation that he was charged before any service was fully performed.

In its opening brief, CLC established that the documents attached to the Complaint controvert Plaintiff's allegation that CLC "charged [him] money prior to fully performing any credit repair services on [his] behalf" in violation of Section 1679b(b) of CROA. (Mem. at 8-10; *see also Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) (in deciding a 12(b)(6) motion, "if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls").) Plaintiff does not dispute that, under the Engagement Agreement, Plaintiff agreed that he would pay CLC up to $300.00 on April 7, 2015 (35 days *after* he entered into the Engagement Agreement) for services rendered as of that date. (*See* Engagement Agreement, attached as Exhibit 1 to CLC's Memorandum, at Sec. V, page 3.) Nor does Plaintiff dispute that his Client Information Sheet with CLC confirms that the "First Pull Date" of funds against Plaintiff's retainer did not occur until April 7, 2015. (*See* Client Information Sheet, attached as Exhibit 2 to CLC's Memorandum.)

Instead, Plaintiff argues that there is no distinction between the retainer collected from Plaintiff seven days after entering into the Engagement Agreement (*see* Mem. Ex. 1 at Sec. V, p. 3) and charging or receiving consideration for the performance of services, s*ee* 15 U.S.C. § 1679b(b). The Court should reject Plaintiff's effort to strip the contractual terms of their meaning. As an initial matter, even if the retainer did trigger the requirements of Section 1679b(b), the Engagement Agreement expressly states that CLC would, among other services, review correspondence provided to it by Plaintiff, and collect and review information regarding Plaintiff's

9

circumstances and goals.  (Mem. Ex. 1 at Sec. II.)  Plaintiff ignores this contractual language and does not (and cannot) allege that these services were not fully performed in the period following his execution of the Engagement Agreement and prior to providing the retainer to CLC.

In addition, the Engagement Agreement makes clear that the retainer was provided by Plaintiff and held as a credit that would be returned at Plaintiff's request, less any amounts owed to CLC for additional services already rendered up to that point.  (*See* Mem. Ex. 1 at Sec. V (providing that Plaintiff will be charged only for services rendered no earlier than 35 days after the contract date, and that, upon request, any portion of the retainer not owed for services rendered prior to the "35 day mark" will be returned to Plaintiff).)  The plain terms of the contract controvert Plaintiff's allegation that CLC violated Section 1679b(b).

Plaintiff then cites to *Rannis v. Fair Credit Lawyers, Inc.*, 489 F. Supp. 1110 (C.D. Cal. 2007) and asserts that "[a]s here, the attorney-defendants in *Rannis* argued that their services were 'within the course and scope of the practice of law and not as a credit repair organization.'"  (Resp. at 18.)  But CLC makes no such argument and has accepted as true (for purposes of this Motion only) Plaintiff's allegation that it is a credit repair organization.  In any event, the *Rannis* court's discussion regarding whether a law firm can be properly understood as a credit repair organization is wholly inapposite.  Plaintiff then goes on to argue that "[i]t does not matter" that the purported "charge" is in fact a "retainer" under the Engagement Agreement, but he cites no authority for this contention.  (*See id.*)

In deciding CLC's motion, the Court should determine the legal effect of the Engagement Agreement "by its terms rather than by the allegations of the pleader." *Brokers' Choice*, 861 F.3d at 1105.  The imprecise construction of the Engagement Agreement implicit in Plaintiff's

allegations should be rejected. For all of these reasons, Count I does not (and cannot) state a claim and should be dismissed with prejudice.

### B. Count II fails to state a claim because the documents attached to the Complaint controvert Plaintiff's allegation that he was not provided with certain CROA disclosures in a separate document.

Count II alleges that CLC failed to provide Plaintiff with a CROA-mandated disclosure "as a separate document." (Compl., ¶¶ 49-51, 54.) CLC established that the documents attached to the Complaint controvert this allegation. (Mem. at 10-11.) Indeed, Plaintiff admits that the electronic envelope that CLC provided to him was "comprised of eight distinct agreements," including the CROA disclosure. (*See* Compl., ¶ 51; *see also id.* at ¶ 64 (admitting that the electronic envelope consisted of "various documents and agreements").) Plaintiff now insists that these "various" and "distinct" agreements were somehow "*merged*," (Resp. at 20 (emphasis in original), but that allegation appears nowhere in the Complaint and defies common sense.

CROA requires that the disclosure "shall be provided as a document which is separate from any written contract or other agreement" provided to the consumer. *See* 15 U.S.C. § 1679c. The documents attached to the Complaint make clear that CLC provided the disclosure to Plaintiff printed on its own, separate page, apart from the Engagement Agreement. (*See* "Credit Repair Organizations Act" Disclosure Statement, attached as Exhibit 3 to CLC's Memorandum.) CROA does not require that a credit repair organization mail the CROA disclosure to its prospective customers in a separate package or envelope (whether in electronic or paper format). *See* 15 U.S.C. § 1679c. Although Plaintiff now argues that the absence of such a requirement in the statute is "beside the point," (Resp. at 21), it is the very requirement that Plaintiff is asking the Court to create and enforce. Plaintiff's argument is contrary to the plain language of the statute, and it

ignores the separate, "distinct" disclosure that Plaintiff received from CLC and signed. For all of these reasons, Count II does not (and cannot) state a claim and should be dismissed with prejudice.

### C. Count III fails to state a claim because the documents attached to the Complaint controvert Plaintiff's allegation that he was not provided with notice of his cancellation right.

Count III alleges that CLC "deprived Plaintiff and the putative class of their right to information; specifically due notice of their cancellation rights under CROA." (Compl., ¶ 61.) However, the Engagement Agreement and the separate "Notice of Cancellation" form controvert this allegation. (Mem. at 11-12; *see also* Mem. Ex. 1 at Signature Page; CLC Notice of Cancellation form, attached as Exhibit 4 to CLC's Memorandum.) As Plaintiff admits, the following statement appears immediately below the space reserved for Plaintiff's signature in the Engagement Agreement: "You may cancel this contract, without penalty or obligation, at any time before midnight of the 3rd day which begins after the date the contract is signed by you." (Resp. at 22; Mem. Ex. 1 at Signature Page.) And a form "Notice of Cancellation" was included with the documents (10 pages in total) provided to Plaintiff. (Mem. Ex. 4.) These documents make clear that Plaintiff was notified of his cancellation right.

Nevertheless, Plaintiff argues that he should be permitted to litigate a class action simply because the text did not appear in bold font. (Resp. at 21.) There is no allegation, however, that Plaintiff overlooked the statement (located immediately below his signature) because it was insufficiently conspicuous. Plaintiff also argues that the absence of an additional sentence specifically directing him to the notice "preclude[d]" Plaintiff from finding the more detailed disclosure of his rights. (Resp. at 22.) This argument is facially absurd and untenable in light of the documents actually provided to him by CLC. First, the allegation appears nowhere in the Complaint. Indeed, Plaintiff does not allege that he was "precluded" from doing anything.

12

Second, the "more detailed disclosure of his rights" appeared on its own page, conspicuously titled "Notice of Cancellation," and was one of only ten pieces of paper provided to Plaintiff. Plaintiff does not allege or otherwise explain how the absence of the directive to "see the attached notice of cancellation form" somehow precluded him from seeing the two Notice of Cancellation forms that he admits were provided to him. For all of these reasons, Count III does not (and cannot) state a claim and should be dismissed with prejudice.

### D. Count IV fails to state a claim because the Engagement Agreement controverts Plaintiff's CROA allegations, and Plaintiff has not adequately alleged any breach or damages.

Count IV alleges that, by engaging in the purported CROA violations claimed in Counts I-III, CLC also breached its fiduciary duty to Plaintiff. Four elements must be satisfied to have an actionable claim for breach of fiduciary duty: (1) the existence of a fiduciary relationship; (2) a duty arising out of the fiduciary relationship; (3) a breach of that duty; and (4) damages proximately caused by the breach of duty. *CoBank, ACB v. Reorganized Farmers Cooperative Ass'n*, 334 F. Supp. 2d 1273, 1277 (D. Kan. 2004) ("[d]amages are an essential element of a breach of fiduciary duty claim").

CLC established that Plaintiff has not sufficiently pleaded the second, third and fourth elements of his claim for several reasons. (Mem. at 12-13.) In addition to the deficiencies set forth above regarding Counts I-III (on which Plaintiff admits his fiduciary duty claim turns), Plaintiff: (1) fails to identify the fiduciary duty that he believes CLC breached; (2) fails to allege how the purported CROA violations constituted such a breach; and (3) fails to allege damages proximately caused by the alleged breach. (Mem. at 12-13.) Plaintiff's Response is wholly non-responsive to all three of these deficiencies.

First, rather than identify the fiduciary duty that Plaintiff believes CLC breached, Plaintiff simply reiterates the non-controversial principle that "inherent within this fiduciary relationship are the duties of loyalty, integrity, candor, and good faith," and that these duties "emanate from the attorney client relationship." (Resp. at 23-24.) Plaintiff persists in failing to identify which of these duty was breached. All of them? One of them? CLC is entitled to know, and Plaintiff is not at liberty to hide the ball. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (adequately stating a claim requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Second, rather than identify how the purported CROA violations in Counts I-III constitute breaches of fiduciary duty, Plaintiff simply reiterates his CROA allegations, asserting that CLC violated CROA by "among other things, accepting payment for credit repair services before such services were fully performed." (Resp. at 23.) But this allegation, even if true (and it is not), does not constitute a breach of fiduciary duty. Plaintiff does not and cannot allege that CLC failed to provide the services that he paid for. There is no allegation that the purported CROA violations resulted in self-dealing or some other conflicted relationship that CLC improperly benefited from, and there is no allegation of any misrepresentation (fraudulent or otherwise) on CLC's part.

Finally, rather than identify any allegations of damages proximately caused by the alleged breach of fiduciary duty, Plaintiff simply states that his damages were "sufficiently alleged as set out in Section IV, *supra*." (Resp. at 24.) Section IV of Plaintiff's Response is eleven pages long and only one paragraph purports to address damages proximately caused by CLC's alleged breach of fiduciary duty. (*See* Resp. at 16.) Specifically, Plaintiff asserts that he alleged "that CLC breached its fiduciary duty by 'accepting payment for credit repair services before such services were fully performed.'" (Resp. at 16 (citing Compl., ¶ 75).) But this allegation simply reiterates in conclusory fashion Plaintiff's contention that the purported CROA violation alleged in Count I

14

also constituted a breach of fiduciary duty. Plaintiff's bare insistence that this allegation somehow pleads damages proximately caused by the breach of fiduciary duty because "[r]eference to CLC's $300.00 unlawful pre-charge is indisputably allegation [sic] of an injury in fact," (Resp. at 16), is insufficient on its face.

Plaintiff apparently would have the Court and CLC infer from Paragraph 75 of the Complaint that CLC's alleged breach of fiduciary duty caused him to suffer damages in the amount of $300.00. (*See* Resp. at 16, 24.) Yet Paragraph 75 of the Complaint does not assert that Plaintiff was damaged at all. Indeed, further underscoring the inadequacy of Plaintiff's fiduciary duty damages allegations, the only reference to damages in Count IV is Plaintiff's bare, conclusory allegation that "[a]s a direct and proximate result of Defendants' breaches of fiduciary duties owed to Plaintiff and members of the class, Plaintiff and the class members have suffered damages." (Compl., ¶ 76.) But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim, and conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. 679-80; *see also CoBank*, 334 F. Supp. 2d at 1277 ("[d]amages are an essential element of a breach of fiduciary duty claim"). For all of these reasons, Count IV does not (and cannot) state a claim and should be dismissed with prejudice.

### III. PLAINTIFF'S REQUEST FOR LEAVE TO FILE AN AMENDED COMPLAINT SHOULD BE DENIED.

To the extent that the Court grants CLC's motion, it should be with prejudice to Plaintiff filing an amended complaint. For the reasons set forth above, any effort on Plaintiff's part to amend his Complaint would be futile. *See Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 507 (D. Kan. 2007) ("court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it fails to state a claim upon which relief may be granted"). Any purported injury that Plaintiff suffered would have been alleged in the Complaint if it existed,

and Plaintiff should not be given a second chance to plead around his inability to allege Article III standing. Moreover, the plain language of the documents attached to the Complaint controvert Plaintiff's claims, and no amount of artful pleading or amended allegations will change the language contained in those documents. There is no reason to give Plaintiff a second bite at the apple here.

## **CONCLUSION**

For all of the foregoing reasons, and for the reasons set forth in CLC's Motion and its Memorandum in Support of its Motion, CLC respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety and with prejudice, and grant such further relief as the Court deems just and proper under the circumstances.

Dated: June 21, 2019                    Respectfully submitted,

**CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN LLC, d/b/a CREDIT LAW CENTER, and THOMAS ADDLEMAN**

Timothy A. Hudson, *pro hac vice*
Jordan E. Wilkow, *pro hac vice*
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL  60604
Tel: (312) 762-9450
Fax: (312) 762-9451
thudson@tdrlawfirm.com
jwilkow@tdrlawfirm.com
*Attorneys for Defendants*

By:       /s/ Timothy A. Hudson
            One of Their Attorneys

By:       /s/ Chad C. Beaver
            One of Their Attorneys

Chad C. Beaver, KS Bar No. 21280
BEAVER LAW FIRM, LLC
1600 Genessee Street, Suite 920
Kansas City, Missouri 64102
Tel: (816) 579-1800
Fax: (816) 817-0540
cbeaver@beaver-law.com
*Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that today I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT WITH PREJUDICE** with the Clerk of the Court for the District of Kansas using the CM/ECF system.  Counsel of record for all parties will be served by the CM/ECF system.

Dated:  June 21, 2019

By: /s/ Chad C. Beaver