## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MARK ENSMINGER**, *on behalf of himself and those similarly situated*,

                                        Plaintiff,

v.

**CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN L.L.C., d/b/a CREDIT LAW CENTER** and **THOMAS ADDLEMAN a/k/a TOM ADDLEMAN**

                                        Defendants.

**Case No.:2:19-cv-02147-JWL-JPO**

## SUR-REPLY IN OPPOSITION TO MOTION TO DISMISS

Pursuant to the Court's July 2, 2019 Order (Doc. 33), Plaintiff, Mark Ensminger, respectfully submits his sur-reply in opposition to Credit Law Center, LLC and Thomas Addleman's (collectively "Defendants") motion to dismiss (Doc. 19) and reply (Doc. 27).

I.    **ARGUMENT**

The Court's Order asks the parties to provide additional briefing on several points. *First,* Plaintiff was indisputably harmed when Defendants took money from him that he did not owe, conferring standing. *Second,* as the opinion itself recognizes, *Casillas v. Madison Ave. Assocs.*, No. 17-3162, 2019 U.S. App. LEXIS 16798 *8 (7th Cir. June 4, 2019) *citing Robertson v. Allied Sols., LLC*, 902 F.3d 690, 695-97 (7th Cir. 2018) is distinguishable because Casillas did not allege any harm where in this case Plaintiff alleges harm where Defendants deprived him of a concrete interest in information mandated by the Credit Repair Organizations Act, 15 U.S.C. § 1679b(b) ("CROA"). Namely, by withholding key CROA disclosures, Defendants impeded Plaintiff's opportunity to understand limitations of credit repair organizations, and his right to dispute the

credit report trade lines on his own. Finally, Plaintiff's loss of time value of the $300 constitutes an injury in fact in addition to the above injuries.

**A. Defendant Injured Plaintiff by Taking Money Plaintiff Did Not Owe.**

It is beyond purview that the easiest way for a plaintiff to meet the concrete injury requirement is to allege the defendant took money the plaintiff does not owe, as Plaintiff does here. *Milwaukee Police Ass'n v. Flynn*, 836 F.3d 636, 639 (7th Cir. 2017) ("financial injuries are prototypical of injuries for the purposes of Article III standing."); *see also*, *e.g.*, *Sultan v. M&T Bank*, 2017 U.S. Dist. LEXIS 53773, *13 (N.D. Ill. Apr. 7, 2017) ("This is perhaps the simplest of all possible actual damages — being charged additional money not owed …"). Hence, the unlawful payment Defendants demanded when nothing was due is a *tangible* injury, and confers Article III standing.

Plaintiff alleges Defendants took $300 from because CROA barred Defendants from taking any money from him before completing their services. (Doc. 1 (Complaint) at ¶33, ¶40, ¶43-¶47)). Thus, Plaintiff has alleged a "prototypical" concrete injury because he paid money he did not owe. *Milwaukee Police Ass'n*, 836 F.3d at 639.

The Court asked the Parties to address whether the fact that Plaintiff has "not alleged that he did not receive services in return for that payment" converts Plaintiff's financial injury into a non-injury. (Doc. 33 at 3). Plaintiff submits the answer is no, for several reasons.

First, even if Plaintiff conceded some services were performed and had some value (which he does not), there is no basis to jump to the conclusion that they entirely negate his injury. After all, CROA expressly provides that an agreement that conflicts with CROA's mandates is *void* as a matter of law. CROA § f(c)(1)- (2)). And courts considering this issue are in accord. *See Ridgeway v. AR Res., Inc.*, No. 16-1188 (NLH/KMW), 2017 U.S. Dist. LEXIS 139319, at *7-8

(D.N.J. Aug. 30, 2017) (consumer-Plaintiff has standing to void any contract under CROA); *Taylor-Burns v. AR Res., Inc.*, 268 F. Supp. 3d 592, 597 (S.D.N.Y. 2017) (Because the Plaintiff's contract with CS360 fails to comply with the CROA, the contract is void and this Court would not enforce it pursuant to 15 U.S.C. § 1679f(c)(1)- (2)).

Moreover, Defendants are not entitled to a set-off for any value they claim Plaintiff may have received. The court in *Hillis v. Equifax Consumer Servs.* aptly rejected such a claim, holding:

> "Just because some consumers may have received "value" does not mean they received a net benefit as contemplated by the CROA. Nowhere does the CROA provide that a credit repair organization that violates the act may be entitled to a set-off. Nor does the nature of the statute's prescribed damages suggest that the CROA permits such a defense. The damages provision of the CROA is plain and unambiguous, and it does not allow for or contemplate any set-off. If Defendants are subject to but failed to comply with the CROA, any consumer who purchased Score Power is entitled to a refund of the money he paid to Defendants without having to reduce that refund by any "value" he may have received. Finally, computing the value of a purchaser's benefit would be difficult if not impossible. For all of these reasons, the Court denies Defendants' motion for leave to amend their answers.

*Id.*, 237 F.R.D. 491, 500-01 (N.D. Ga. 2006). Here, requiring Plaintiff to plead that he did not receive the services for which he paid when not owed(1) misses the point that CROA prohibits a pre-payment, and (2) ignores that Plaintiff had been deprived money at a *time* that the Act protects against. The deprivation of money at an unlawful time is what constitutes a pecuniary injury in fact for Plaintiff. CROA does not require Plaintiff to plead that he ultimately did not receive any services from Defendants.

Second, Plaintiff does not need allege he "got nothing" for his $300 pre-payment. The complaint is construed in his favor. *United States v. Supreme Court*, 839 F.3d 888, 889 (10th Cir. 2016) ("When evaluating a plaintiff's standing at [the motion to dismiss] stage, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.") (citation omitted). Thus, Plaintiff's absence of

allegations regarding any alleged performance of services means to the extent any services were performed, they were insufficient to justify collection of the illegal $300 pre-payment. To be sure, there is no basis to assume the opposite on a motion to dismiss. *See id.*

Third, and related to the previous point, Plaintiff is not obligated to anticipate Defendants will claim they performed services sufficient to "earn" the $300 they took in violation of CROA, and then plead facts to defeat the anticipated defense. *Craftwood II, Inc. v. Generac Power Sys.*, 920 F.3d 479, 482 (7th Cir. 2019) (rejecting the defendant's attempt to challenge standing based on a defense because "complaints need not anticipate or attempt to plead around potential defenses.") (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). Thus, Plaintiff does not have to "support" his financial injury allegations with additional allegations "disproving" Defendants' potential claim that eventually they "earned" the illegal $300 pre-payment.

The Consumer Financial Protection Bureau ("CFPB") is the administrative agency that is charged with rule making and enforcement authority over the CROA. Consistent with the plain language of the CROA, the CFPB deems it unlawful to demand payment from a customer for credit repair services, prior to the completion of such services. https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-actions-against-credit-repair-companies-charging-illegal-fees-and-misleading-consumers/. The violation arises where Defendants demanded money prior to the completion of credit repair services. CROA does not require a showing that Plaintiff did not receive services, nor do Defendants cite any authority to the contrary.

The only way to determine if the alleged services were "worth" $300, and justified the pre-payment notwithstanding Congress's decision to outlaw such charges under CROA, is to decide the merits of the case. *See*, *e.g.*, *Hillis*, 237 F.R.D. at 513 ("Just because some consumers may have

received 'value; does not mean they received a net benefit as contemplated by the CROA."). However, the Court may not delve into merits issues to decide jurisdiction. *Smith v. Greystone Alliance, LLC*, 772 F.3d 448, 450 (7ᵗʰ Cir. 2014) ("A court can't decide the merits and then dismiss for lack of jurisdiction."); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("Article III jurisdiction is always an antecedent question.").

Thus, Plaintiff's financial injury allegation alone presents a concrete injury, and the *absence* of allegations about services performed in return for the payment does not change that.

**B.  *Casillas* Is Distinguishable on Many Levels.**

The Seventh Circuit's recent decision in *Casillas v. Madison Avenue Associates, Inc.* is easily distinguishable. The plaintiff in *Casillas* did not even attempt to allege an injury stemming from the defendant's violation of the statute in that case. *Casillas*, 2019 U.S. App. LEXIS 16798, *4 ("Casillas had not alleged that Madison's omission affected her in any way."). Plainly, if the complaint does not contain even a single "allegation" of injury, then it is going to be difficult for the court to find the plaintiff meets injury test.

By contrast, Plaintiff's complaint contains allegations of injury, namely the financial loss discussed above. On that ground alone *Casillas* is distinguishable, and thus inapposite.

However, Plaintiff's injury allegations do not stop there. He also alleges Defendants injured him by failing to provide the disclosure mandated by Congress in CROA. (Doc. 1 at ¶ 54 ("Defendants' failure to provide Plaintiff and the putative with a separate statement containing their Disclosure rights deprived them of the information necessary to make an informed decision about the purchase of credit repair services, as intended by Congress."); 15 U.S.C. § 1679b(b) ("CROA"). *See id.* at *8, *citing Robertson*, 902 F.3d at 695-97. CROA specifically required Defendants to tell Plaintiff, upfront, in writing, on specific important rights, including *inter alia*:

". . . a right to dispute inaccurate information in your credit report by contacting the credit bureau directly.

. . . a right to obtain a copy of your credit report from a credit bureau. . . The credit bureau must provide someone to help you interpret the information in your credit file.

. . . a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.

. . . right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.

. . . on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file."

CROA § c. Thus, Defendants impeded Plaintiff's opportunity to understand these limitations on the utility of credit repair organizations, and to dispute the credit report trade lines on his own, by withholding key information required under CROA. This deprived Ensminger of the ability to fully evaluate whether it is worth hiring Defendants, or whether his money is better spent elsewhere.

This is a concrete injury even under *Casillas*, which recognized that where a violation has "harmed the concrete interest that the statute protected," such as "a consumer's interest in having an opportunity to review and respond to *substantive* information," as is the case here, an injury in fact exists. *Cassillas*, 2019 U.S. App. LEXIS 16798 at *8-9, *citing Robertson,* 902 F.3d 690 at 697. Again, a "concrete interest" Congress sought to protect with CROA is ensuring the consumer is "informed" (*see* CompuCredit Corp. v. Greenwood, 565 U.S. 95, 95, 132 S. Ct. 665, 667 (2012) (*e.g.,* informing consumers of their right to cancel the contract)**f**, and plainly Defendants violated that interest. Or, as the Seventh Circuit put it, "[i]n holding that this allegation satisfied the injury-in-fact requirement, we emphasized that 'Article III's strictures are met not only when a plaintiff

complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit.'" *Id.* Here, Plaintiff was deprived of the chance to obtain the benefit of learning he could obtain his credit report and dispute any issues on his own.

Finally, Ensminger incurred an injury due to the timing of Defendants' failure to make the required disclosures, which is particularly important under CROA. CROA disclosures must be provided *before* a consumer contracts with a credit repair service organization, to inform the consumer of their rights *before* they enter a contract. *See Manuel v. Wells Fargo Bank, Nat. Ass'n*, 123 F. Supp. 3d 810, 818 (E.D. Va. 2015) ("… consumers have the right to specific information at specific times."). If the disclosures are not made until after, then it is too late. The consumer has already committed to buying the services without having been fully informed. *Hillis*, 237 F.R.D. at 513 ("[The CROA] seeks to regulate the industry to ensure that consumers are provided with necessary information about credit repair organizations so that they can make informed decisions regarding the purchase of their services"); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 635 (E.D. Va. 2016) ("it is well-settled that Congress may create a legally cognizable right to information, the deprivation of which will constitute a concrete injury. By extension, it is well within Congress' power to specify the form in which that information must be presented. Many courts, including this one, have explicitly or implicitly recognized this point.") (collecting cases).

*Casillas* analyzed the case of *Strubel v. Comenity Bank*, which is instructive. *Id.,* 842 F.3d 181 (2nd Cir. 2016). The *Strubel* court found denial of certain TILA[1] disclosures was, by itself,

---

[1] CROA is a consumer protection statute and was enacted by Congress with a mind to protect similar interests as the federal Truth in Lending Act. *See* 15 U.S.C. § 1601(a); *K/O Ranch, Inc. by Olson v. Norwest Bank of Black Hills*, 748 F.2d 1246, 1248 (8th Cir. 1984) ("The purpose of the Truth in Lending Act is to provide consumers with meaningful disclosure of credit terms to promote the informed use of credit"); *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3d Cir. 1979) ("One of the legislative purposes of the Act is to enable consumers to compare various available credit terms. Any proven violation of the disclosure requirements of the Act is presumed to injure a borrower by frustrating that purpose."). Simply, the disclosure provisions of the TILA and the CROA are both intended to inform consumers about an area that Congress has determined to be important.

sufficient for Article III standing. The Second Circuit concluded that "where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any additional harm beyond the one Congress has identified.'" *Strubel*, 842 F.3d at 189 (quoting *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2015)). "Thus, we understand *Spokeo*, and the cases cited therein, to instruct that an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." *Id.* at 190. The Second Circuit went on to emphasize that the disclosures in the TILA context do not operate "in a vacuum," but rather they serve a Congressionally identified "concrete interest" for "avoid[ing] the uninformed use of credit." *Id.* at 190.

*Casillas* distinguished *Strubel,* finding that the TILA disclosures required in *Strubel*, like the CROA disclosures here, must be provided at the "beginning of an open ended credit relationship…" *Casillas*, 2019 U.S. App. LEXIS 16798, at *14. The noncompliant disclosures, then, present a risk of harm to the interest that Congress sought to protect because "any subsequent transaction might be unsatisfactory..." *Id.*

In this case, Defendants' deprivation of the CROA-mandated disclosures go to one of CROA's primary goals: to provide consumers with critical information regarding the purchase of credit repair services *before* they enter a contract. Failing to provide the required disclosures creates a material risk to the interest that Congress identified. The subjection of Plaintiff to this risk alone is an injury. *See Jeffries v. Volume Servs. Am.*, 2019 U.S. App. LEXIS 19756, *6-9 (D.C. Cir. July 2, 2019) (exposure of plaintiff to mere "increased risk of identity theft" by printing too many digits of plaintiff's credit card number on the transaction receipt handed to plaintiff meets

the concrete injury requirement); *accord Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1188 (11th Cir. 2019). Consequently, the deprivation of the required disclosures constitutes a concrete injury. Plaintiff therefore has standing to bring claims as to the disclosure violations.

Here, Plaintiff has suffered an informational injury, the resulted in his lost opportunity to avoid the contract with Defendants. (Doc. 1 at ¶¶ 66-67). Contrarily, in *Casillas* the plaintiff

> "did not allege any comparable lost opportunity. Nor could she. Unlike the Fair Credit Reporting Act, the provisions of the Fair Debt Collection Practices Act that Madison violated do not protect a consumer's interest in having an opportunity to review and respond to *substantive* information. *See id.* ('An informational injury can be concrete when the plaintiff is entitled to receive and review *substantive* information.' (emphasis added)). They instead protect a consumer's interest in knowing her statutory rights. And in *Robertson*, we expressly distinguished a defendant's obligation to provide substantive information from its obligation to give notice of statutory rights."

*Casillas,* 2019 U.S. App. LEXIS 16798, at *9. The CROA disclosure here, like the Seventh Circuit's *Robertson* opinion under the Fair Credit Reporting Act ("FCRA"), entitles Plaintiff to receive and review *substantive* information. *See Robertson,* 902 F.3d at 697. Defendants' failure deprived Plaintiff of the right to review and respond to the substantive information. In addition, as plead in the Complaint, the response of Plaintiff and the Class likely would have been to forego ever entering a contract with Defendants in the first place. Dissimilarly, the Seventh Circuit compared *Cassilla's* use for the required disclosures as the same that she would "have had for directions accompanying a product that she had no plans to assemble." *Id*. at *7 In other words "she was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them." *Id*.

Accordingly, the facts in *Casillas* is distinguishable from this case, however, the analysis in *Casillas,* including the reliance on *Strubel* and *Robertson* further support Plaintiff's position that a concrete harm has been plead and Article III standing exists.

**C.  Lost Time Value of the $300 Pre-Payment is an Injury in Fact.**

Defendants' deprivation of Plaintiff's $300.00 for the period of time prohibited by CROA is also a concrete injury. Plaintiff provided authority supporting this position in his Response,[2] but the Court noted at least one other court has rejected the argument that the loss of the time value of money constitutes an injury for Article III purposes. (Doc. 33 at 3–4) (citing *Taylor v. Federal Aviation Admin.*, 351 F. Supp. 3d 97, 102–03 (D.D.C. 2018)).

However, Plaintiff submits that *Taylor's* holding is inconsistent with Supreme Court precedent, and the majority of courts to examine the issue, which found the loss of any money, even a tiny amount, is a concrete injury. *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829 (7th Cir. 2018) ("Losing the use of money for three days may be a trifle to some people (though to others it may be a calamity)") (parenthesis in original). Indeed, an "identifiable trifle" of loss is sufficient:

> "Injury in fact" reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to distinguish a person with a direct stake in the outcome of a litigation -- even though small -- from a person with a mere interest in the problem. We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, see Baker v. Carr, 369 U.S. 186; a $ 5 fine and costs, see McGowan v. Maryland, 366 U.S. 420; and a $ 1.50 poll tax, Harper v. Virginia Bd. of Elections, 383 U.S. 663.

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689, n.14 (1973); *see also Dhinsa v. Krueger*, 917 F.3d 70, 78 (2d Cir. 2019) ("An identifiable trifle is enough, the Supreme Court has explained, because standing doctrine's purpose is to distinguish a person with a direct stake in the outcome of a litigation – even though small – from a person with a mere interest in the problem.")

---

[2] *See Santangelo,* 2015 U.S. Dist. LEXIS 69167, at *6-7 ("even if the $50.00 deposit were fully refundable, Santangelo still has standing based on the lost time-value of the money.); *Habitat Educ. Ctr.*, 607 F.3d at 457 (noting that "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time-value of the money" and holding that this was enough to confer standing).)

*Taylor* impermissibly contradicts *SCRAP* and *Spokeo* in suggesting there should be a threshold amount of money wrongfully withheld when the Court was clear that a trifle is sufficient.

Regardless, as noted in footnote 2 above, the court in *Santangelo* held the loss of the time value of $50 was sufficient to confer Article III standing. *Santangelo supra* at *69167.

More to the point, *Santangelo* stands for the proposition that even if money is later refunded—the deprivation of the money alone was sufficient to confer Article III standing. *Id.* at *6-7 (N.D. Ill. May 28, 2015), citing *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) (noting that "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time-value of the money" and holding that this was enough to confer standing); also *see AFGE v. OPM (In re United States OPM Data Sec. Breach Litig.)*, Nos. 17-5217, 17-5232, 2019 U.S. App. LEXIS 18609, at *48 (D.C. Cir. June 21, 2019) (delay in receipt of tax refunds, "and the forgone time value of that money, is an actual, tangible pecuniary injury.")

Here, Plaintiff attached the credit repair contract as an exhibit to his complaint. This contract contemplates payment being made within 35 days of entering the agreement. Because Defendants demanded a payment well in advance of rendering any services, and when the money was not owed, Plaintiff was plausibly denied the use of his money for at least 35 days. *Dieffenbach* supports the proposition that the denial of the possessory interest in money by three days is sufficient. *Dieffenbach*, 887 F.3d at 830. Here, the timeline of the wrongfully withheld money is much longer.

## II.   CONCLUSION

Accordingly, Plaintiff respectfully asks the Court to deny Defendants' motion to dismiss under Fed. R. 12(b)(1) and 12(b)(6), and grant Plaintiff any other and further relief this Court deems just and proper.

*Respectfully Submitted*,

By: s/  Matthew S. Robertson
A.J. Stecklein          KS Bar #16330
Michael H. Rapp      KS Bar #25702
Matthew Robertson   KS Bar #27254
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone:      (913) 371-0727
Facsimile:       (913) 371-0727
Email: aj@kcconsumerlawyer.com
        mr@kcconsumerlawyer.com
        msr@kcconsumerlawyer.com

-and-

Keith J. Keogh          *pro hac vice*
Amy L. Wells           *pro hac vice*
Keogh Law, Ltd.
55 W. Monroe Street, Suite 3390
Chicago, IL 60603
Telephone:      (312) 726-1092
Facsimile:       (312) 726-1093
Email: keith@keoghlaw.com
        awells@keoghlaw.com
ATTORNEYS FOR PLAINTIFF

79774

### CERTIFICATE OF FILING

I hereby certify that the foregoing document was filed electronically with the United States District Court for the District of Kansas on July 16, 2019, which will automatically generate notice of filing to all counsel of record.

/s/ Matthew S. Robertson
Attorney for Plaintiff