IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK ENSMINGER,

Plaintiff,

v.

CREDIT LAW CENTER, LLC, a/k/a THOMAS ANDREW ADDLEMAN L.L.C., d/b/a CREDIT LAW CENTER; and THOMAS ADDLEMAN,

Defendants.

Case No. 19-2147-JWL

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendants' motion to dismiss plaintiff's claims (Doc. # 18) and plaintiff's motion for leave to amend his complaint (Doc. # 39). The Court **grants** plaintiff leave to amend, and plaintiff shall file his proposed amended complaint forthwith. As set forth below, the motion to dismiss is **granted in part and denied in part**. The motion is granted with respect to Counts II, III, and IV of the amended complaint, and those claims are hereby dismissed. The motion is denied with respect to Count I.

## I. Background

As alleged in the complaint, on February 27, 2015, plaintiff retained defendants to provide credit repair services. In electronic form, defendants sent an agreement and other

forms and disclosures to plaintiff. Pursuant to the parties' agreement, plaintiffs paid a "retainer" of $300 to defendants within seven days, before defendants had completed the services promised in the agreement.

Individually and on behalf of a putative class, plaintiff asserts four claims against defendants, including three claims for violations of the federal Credit Repair Organizations Act (CROA), 15 U.S.C. §§ 1679-1679j.[1] In Count I, plaintiff alleges that defendants violated Section 1679b(b) of the CROA by charging or receiving money before the services for plaintiff were fully performed. In Count II, plaintiff alleges that defendants violated Section 1679c(b) by failing to provide a particular disclosure to plaintiff in a separate document. In Count III, plaintiff alleges that defendants violated Section 1679d(b)(4) by failing to include in the disclosures to plaintiff certain language concerning a cancellation right in a certain format. In Count IV, plaintiff asserts a claim for breach of fiduciary duty under state law. Defendants have moved to dismiss all claims under Fed. R. Civ. P. 12(b)(1) for lack of standing and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II. <u>Motion for Leave to Amend</u>

On August 2, 2019, after the parties submitted additional briefing requested by the Court concerning issues relating to standing, plaintiff moved for leave to amend his complaint. Plaintiff seeks to add allegations concerning his alleged injuries in support of his arguments on standing.

[1] The CROA provides for civil liability of any person who fails to comply with any provision of the statute. *See* 15 U.S.C. § 1679g.

Leave to amend a complaint should be "freely" given "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). "A district court should refuse leave to amend only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (internal quotations omitted).

The Court rejects defendants' argument that leave should be denied on the basis of undue delay. The case is still at an early stage, and the scheduling order's deadline for amendments has not passed. Most importantly, defendants have not identified any undue prejudice that they would suffer from an amendment at this time. Indeed, the Court routinely allows a party to amend in an attempt to cure pleading deficiencies, and it would be *more* efficient in this case to allow such an amendment before the Court rules on the pending motion to dismiss.

Defendants also argue that plaintiff's proposed amendment would not cure plaintiff's lack of standing and thus would be futile. The Court deems it more efficient to address any such arguments on the merits of the standing issue in the context of ruling on defendants' motion to dismiss. All parties have now had the opportunity to brief the effect of the proposed amendments on plaintiff's standing. Accordingly, the Court will allow the amendment and then consider the arguments in defendants' motion to dismiss as asserted against the allegations in the amended complaint. Plaintiff is directed to file the proposed amended complaint forthwith.

**III. <u>Motion to Dismiss for Lack of Standing</u>**

Defendants move to dismiss plaintiff's claims for lack of standing. A plaintiff invoking federal jurisdiction bears the burden of establishing the following elements of standing: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent," not conjectural or hypothetical. *See id.* at 1548 (internal quotations and citation omitted). In this case, defendants argue only that plaintiff did not suffer an injury in fact.

Plaintiff argues that he has alleged a financial injury, specifically having to pay money before he should have been required to. Plaintiff notes that any contract subject to the CROA that does not comply with the statute's requirements shall be treated as void. *See* 15 U.S.C. § 1679f(c). Plaintiff further alleges and argues that he lost the time value of the money that he paid before the services were rendered. Plaintiff also argues that he suffered an intangible injury because he did not receive the benefits of the statutory provisions that defendants violated.

First, the Court concludes that the loss of the time value of money that was paid before it should have been does constitute a concrete injury for purposes of standing. Defendants do not dispute that such an injury may satisfy the requirement of standing (they argue only that such an injury has not been properly alleged here). Multiple federal courts of appeal have indicated that the loss of time value represents a tangible injury, although

they have done so in different contexts. For instance, in *Habitat Education Center v. United States Forest Service*, 607 F.3d 453 (7th Cir. 2010) (Posner, J.), the Seventh Circuit concluded a party had standing to challenge a bond order on appeal even though the bond had been returned, on the basis that the party had lost the time value of the amount of the bond; the party *had* suffered a loss, the Court held, because "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money – a loss of the use of the [bond amount]." *See id.* at 457. Subsequently, in *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826 (7th Cir. 2018), the Seventh Circuit confirmed that the loss of the time value of money, even for three days, constituted an economic injury that satisfied a particular statutory requirement of "lost money or property." *See id.* at 829. Recently, the D.C. Circuit held that the forgone time value of money (because of a delay in receiving tax refunds) "is an actual, tangible pecuniary injury" and thus satisfies a statute that requires "actual damages" to have been suffered. *See In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019). District courts have cited such cases in concluding that the loss of time value of money satisfies the constitutional requirement of standing. *See, e.g.*, *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424-25 (S.D.N.Y. 2019) (quoting *Habitat*, 607 F.3d at 457; citing *Dieffenbach*, 887 F.3d at 828); *Santangelo v. Comcast Corp.*, 2015 WL 3421156, at *3 (N.D. Ill. May 28, 2015) (citing *Habitat*, 607 F.3d at 457).

The Court agrees with these courts that the loss of the time value of money – even a small amount – constitutes a tangible financial injury that satisfies the requirement of an injury in fact for purposes of standing. The fact of such injury from the loss of the use of

money is an accepted economic reality, and the Supreme Court has confirmed that "an identifiable trifle" is enough of an injury to create standing. *See United States v. Students Challenging Regulatory Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.14 (1973); *see also American Humanist Ass'n, Inc. v. Douglas County Sch. Dist. RE-1*, 859 F.3d 1243, 1248 (10th Cir. 2017) (quoting *SCRAP* in rejecting argument that the injury for standing must meet some threshold level of pervasiveness).

In the order by which it requested additional briefing on this issue, the Court noted the decision in *Taylor v. Federal Aviation Admin.*, 351 F. Supp. 3d 97 (D.D.C. 2018), in which the court rejected a standing argument based on the loss of the time value of money. *See id.* at 102-03. In that case, the court declined to decide whether such an injury could satisfy the requirement of an injury in fact for purposes of standing, in light of its conclusion that such an injury had not been properly alleged in that case. *See id.* In stating that the recognition of such an injury for standing purposes is "far from well established," the court cited two cases; but in those cases the courts did not consider the economic principle of the lost time value of money, and merely held that a speculative claim for interest on a refund that fully discharged a debt prior to the lawsuit did not create standing. *See Holaway v. Protective Life Ins. Co.*, 2007 WL 2904162, at *2 (M.D. Ga. Oct. 3, 2007); *Amirhamzeh v. Chase Bank USA, N.A.*, 2013 WL 7219270, at *4 (C.D. Cal. Oct. 7, 2013) (citing *Holaway*). Neither did those courts consider the Supreme Court's rejection of any *de minimis* standard for standing in *SCRAP*. The Court is persuaded that the loss of time

value of money represents a tangible economic injury and that such an "identifiable trifle" is sufficient to confer standing.[2]

In *Taylor*, the court ultimately rejected the plaintiff's standing argument because he had not alleged any facts to suggest that if he had not paid the money at issue he would have invested it to increase its value. *See Taylor*, 351 F. Supp. 3d at 103. Defendants here similarly argue that plaintiff has not established standing because he has not alleged that he would have invested the $300 that he allegedly had to pay prematurely. The Court rejects this argument. First, the cases cited in *Taylor* in support of this holding are not actually helpful here. *See id.* (citing cases). In *Kawa Orthodontics, LLP v. Secretary, United States Department of the Treasury*, 773 F.3d 243 (11th Cir. 2014), the plaintiff did not rely on the economic principle of the lost time value of money that it paid to the defendant; rather, the plaintiff cited the lost value of time and resources that it expended because of the defendant's action, and the court concluded that such an injury was too abstract. *See id.* at 246. In *Barber v. Lincoln National Life Insurance Co.*, 260 F. Supp. 3d 855 (W.D. Ky. 2017), *aff'd*, 722 F. App'x 470 (6th Cir. 2018), the plaintiff did not allege that he was injured because he lost the time value of money. *See id.* at 862.

---

[2] Some courts have relied on a *de minimis* standard in rejecting arguments based on the lost time value of money. *See, e.g,, Van v. LLR, Inc.*, 2019 WL 1005181, at *6 (D. Alaska Mar. 1, 2019) (citing, *inter alia*, *Epstein v. JPMorgan Chase & Co.*, 2014 WL 1133567, at *7 n.6 (S.D.N.Y. Mar. 21, 2014), and *Becker v. Skype Inc.*, 2014 WL 556697, at *3 (N.D. Cal. Feb. 10, 2014)), *appeal filed* (9th Cir. Mar. 27, 2019). Such a rationale contradicts *SCRAP*, however, in which the Supreme Court effectively rejected a *de minimis* standard for standing. In the case cited by such courts, *Ingraham v. Wright*, 430 U.S. 651 (1977), the Supreme Court was addressing due process violations, not standing. *See id.* at 674 (recognizing "a de minimis level of imposition with which the Constitution is not concerned" for purposes of a protected liberty interest).

In this case, plaintiff has specifically alleged (in his amended complaint) that he suffered an injury in the form of the lost time value of money. Nothing in the complaint makes such an allegation implausible. Moreover, as the court in *Porsch* noted, "[it] is a basic [principle] of economics and accounting that a dollar today is worth more than a dollar tomorrow," *see Porsch*, 380 F. Supp. 3d at 424-25 (citation and internal quotation omitted), and thus plaintiff suffered a concrete financial injury if he was deprived the use of his money. Accordingly, the Court concludes that plaintiff has standing to pursue the claim asserted in Count I of his complaint. Moreover, that same alleged injury confers standing with respect to plaintiff's claim in Count IV for breach of fiduciary duty to the extent that the claim is based on the same violation of the CROA.[3]

In support of standing to assert the claims in Counts II and III, plaintiff argues that he suffered intangible injuries from defendants' violations of the CROA. In *Spokeo*, decided in 2016, the Supreme Court held that an intangible injury could be sufficiently concrete to constitute an injury in fact for purpose of standing, and that Congress could "define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *See Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992)). The Court further stated that although "a bare procedural violation, divorced from any concrete harm," would not satisfy the injury-in-fact requirement of Article III standing, "the violation of a procedural right granted by

[3] In light of this ruling, the Court need not address plaintiff's alternative argument that he has standing with respect to those claims based solely on the fact of his early payment of the $300.

statute can be sufficient in some circumstances to constitute injury in fact," in which case the plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *See id.* (emphasis in original). As examples related to the statute in that case, which was intended to decrease the risk of the dissemination of inaccurate information, the Court noted that a violation of the statute's procedural requirements would not result in harm if the disclosed information was nevertheless accurate or if the inaccuracy (such as an incorrect zip code) was so trivial that it did not present any material risk of harm. *See id.* at 1550.

Since *Spokeo* was decided, the circuit courts have generally agreed on the applicable framework for consideration of an intangible injury caused by a statutory violation, which has been described as follows:

> Thus, we understand *Spokeo*, and the cases cited therein, to instruct that an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that concrete interest. But even where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest.

*See Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (citations and internal quotations omitted); *see also Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (plaintiff must show that the violation harmed or presented an appreciable risk of harm to the concrete interest that Congress sought to protect); *Macy v. GC Services Limited Partnership*, 897 F.3d 747 (6th Cir. 2018) (adopting similar

framework); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (on remand) (adopting Second Circuit's formulation from *Strubel*), *cert. denied*, 138 S. Ct. 931 (2018).

The Court is persuaded that this framework is consistent with *Spokeo* and that the Tenth Circuit would apply a similar analysis. The Court thus will apply the framework separately to the statutory violations alleged by plaintiff in Counts II and III. *See Strubel*, 842 F.3d at 190-94 (analyzing each alleged violation separately to determine standing for each claim).[4]

In Count II, plaintiff alleges that defendants violated the separate document requirement found in Section 1679c(b) of the CROA. That provision requires that a particular required disclosure, set forth in subsection 1679c(a), "be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer." *See* 15 U.S.C. § 1679c(b). Plaintiff alleges that defendants violated this requirement of a "separate" "document" because the disclosure was included as one of eight parts of a single e-document sent electronically to plaintiff by defendants (which also included the parties' agreement).

In the CROA itself, Congress stated the following purposes for the act:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

[4] In light of the Court's reliance on another basis for standing with respect to the violation alleged in Count I, the Court need not consider that violation under this framework.

> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

*See* 15 U.S.C. § 1679(b). This statement of purposes identifies concrete interests – ensuring that consumers are provided with information necessary to make an informed purchase decision and protecting against deceptive practices – that Congress was seeking to protect, and defendants have not argued otherwise. Moreover, the requirement of a separate document for this disclosure clearly implicates the first of those purposes.

The Court concludes, however, that defendants' violation of this requirement, as alleged in the complaint and as supported by the documents attached to the complaint, did not create a material risk of real harm to plaintiff's interest in receiving information necessary to make an informed purchase decision. As demonstrated by the attachments, one document within the entire e-document contained only this mandated disclosure and no other material, and it followed the end of the agreement (as denoted by the place for the consumer's signature). This provision of the CROA was plainly intended to ensure that the disclosure would not be included within the body of the agreement or some other document and that the consumer would therefore be more likely to see the disclosure. Thus, not only did plaintiff receive the mandated content, he received it in a form that comported with Congress's intent that the disclosure be conspicuous. Finally, plaintiff signed (electronically) the disclosure statement, indicating that he did not overlook that statement. Plaintiff has offered no reason why his receipt of this disclosure in this form materially increased the risk that he would overlook or misunderstand the disclosure to the

extent that he would make a purchasing decision that he would not otherwise have made; nor can the Court discern any such reason.

As demonstrated by the Supreme Court's use of the zip code example in *Spokeo*, this Court must consider the nature of the alleged violation. The violation alleged in Count II did not create a material risk of real harm to the interest that Congress sought to protect (the receipt of information necessary to make an informed purchasing decision). *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (no standing where alleged violation of a statutory stand-alone disclosure requirement was completely removed from any appreciable risk of harm), *cert.denied*, 138 S. Ct. 740 (2018). Therefore, plaintiff has alleged a bare procedural violation that cannot support standing without an allegation of additional harm. Plaintiff has not alleged any such additional harm with respect to the violation alleged in Count II.[5] Accordingly, the Court dismisses Count II for lack of standing.

In Count III, plaintiff alleges that defendants violated Section 1679d(b)(4) of the CROA, which requires a conspicuous statement in bold type next to the consumer's signature block in the contract, as follows:

> You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.

---

[5] Plaintiff does appear to suggest in Counts II and III that the alleged violations caused harm in the form of the payment of the $300 retainer. Plaintiff has not alleged any facts to support a plausible claim, however, that he would not have entered into the contract or made that payment if defendants had not violated these provisions of the CROA.

In the parties' actual contract, attached to the complaint, the disclosure following the signature block reads, in normal print, as follows:

> You may cancel this contract, without any penalty or obligation, at any time before midnight of the 3rd day which begins after the date the contract is signed by you.

Plaintiff alleges that this statement did not comply with the CROA's requirement of a verbatim statement in a particular form.

Again, the alleged violation implicates plaintiff's Congressionally-protected interest in receiving information necessary to make an informed purchase decision. As with Count II, however, defendants' particular violation did not create any risk of real harm to that interest. Although defendants' disclosure in the contract attached to the complaint did not track the statutorily-mandated language exactly, it conveyed the same information with only a few differences. The disclosure referred to three days instead of the potentially-longer period of three *business* days. That difference did not create a real risk, however, that plaintiff would enter into a contract he otherwise would not have signed. In fact, providing a shorter cancellation period would tend to make a consumer *less* likely to execute the contract, not more likely. The disclosure also did not refer to an attached notice of cancellation, but that separate notice was in fact attached to the contract, and that trivial difference did not materially increase the risk concerning plaintiff's ultimate purchasing decision. Nor did the fact that the statement (which was set off, by itself, directly under the place for plaintiff's signature) was not in bold type create the necessary risk of real harm to the relevant interest. Accordingly, the Court concludes that plaintiff has alleged

only a bare procedural violation in Count III, and the Court therefore dismisses that claim for lack of standing.

## IV. Motion to Dismiss for Failure to State a Claim

### *A. Governing Standard*

The Court proceeds to consider defendants' motion to dismiss the remaining counts (I and IV) for failure to state a claim. The Court will dismiss a cause of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

### *B. CROA Violation – Pre-payment (Count I)*

Plaintiff alleges in Count I of his complaint that defendants violated Section 1679b(b) of the CROA by charging and receiving a "retainer" of $300 before performing the credit repair services promised to plaintiff under the parties' agreement. The applicable statutory provision provides as follows:

> No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed.

*See* 15 U.S.C. § 1679b(b).

In moving to dismiss this claim, defendants argue that the terms of the parties' agreement demonstrate that plaintiff cannot prevail on this claim as a matter of law. Defendants note that under the agreement plaintiff's first payment was not due for 45 days, at which time plaintiff was obligated to pay only for those services that defendants had completed; and that the retainer would be applied against the first amount due, and that plaintiff could receive a refund at that time of any amount remaining.

The Court rejects this argument, for which defendants have cited no supporting authority. Plaintiff has alleged conduct – defendants' charging and his paying the $300 "retainer" before services were completed – that would constitute a violation of this provision of the CROA. The fact that the $300 was called a "retainer" is immaterial, as the only consideration for that payment was the (future) provision of credit repair services (defendants have suggested no other consideration for that payment). The retainer could be applied to satisfy plaintiff's first payment obligation for services rendered to that point. Thus, plaintiff has alleged that he pre-paid for the credit repair services, and the statute plainly prohibits such pre-payment.

Defendants also argue in their reply brief that they may have performed some services, such as collecting information from plaintiff, within the first seven days before the retainer was due and paid. Any such argument presents a question of fact, however,

and thus does not provide a basis for dismissal as a matter of law at this stage. Plaintiff has alleged that he was charged and paid money before services were fully performed, and he has therefore stated a claim for a violation of this provision. The Court denies defendants' motion to dismiss Count I for failure to state a claim.

*C. Breach of Fiduciary Duty (Count IV)*

In Count IV of the complaint, plaintiff asserts a claim for breach of fiduciary duty. In moving to dismiss this claim, defendants argue that plaintiff has failed adequately to allege the particular duty breached, the manner of the breach, and the damages suffered. *See, e.g.*, *Camick v. Holladay*, 2018 WL 1523099, at *9 (D. Kan. Mar. 28, 2018) (essential elements of a claim for breach of fiduciary duty are duty, breach, causation, and damages) (citing *Osage Capital, LLC v. Bentley Invs. of Nev. III, LLC*, 2014 WL 902189, at *7 (Kan. Ct. App. Mar. 7, 2014) (unpub. op.)), *aff'd*, 758 F. App'x 640 (10th Cir. 2018).[6] (For purposes of this motion, defendants do not dispute the existence of a fiduciary relationship.)

In his complaint, plaintiff alleges that defendants owed him a fiduciary duty, including duties of loyalty, integrity, candor, and good faith; that they breached their duty by engaging in the acts set forth in the complaint, including by accepting payments before such services were fully performed, in violation of the CROA; and that plaintiff suffered damages as a result, including the loss of the time value of the $300 retainer payment. In arguing that he has sufficiently stated a claim, plaintiff points to the list of fiduciary duties

[6] The parties seem to agree that this claim by plaintiff, a Kansas resident, would be governed by Kansas law. *See Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 690 (D. Kan. 2007) (Lungstrum, J.) (applying law of state where financial harm was felt to claim for breach of fiduciary duty).

in the complaint; he notes his allegation that defendants breached by pre-charging him; and he argues that he suffered damages because he had to pay money at a time when no such payment was required (by virtue of the CROA).

The Court agrees with defendants that plaintiff's complaint is not sufficient to state a claim for breach of fiduciary duty. Plaintiff has not articulated any theory to explain how the pre-payment – the only conduct identified by plaintiff in the complaint or his brief as a breach – constitutes a breach of a fiduciary duty on these facts as alleged.[7] The parties' agreement (attached to the complaint) calls for just such a pre-payment, and plaintiff has not alleged that he did not receive services in return for that payment as required under the agreement. Plaintiff has not alleged that defendants had an undisclosed conflict of interest or engaged in any particular act of self-dealing or lack of candor; nor has plaintiff explained how defendants breached any particular duty owed as a fiduciary. Plaintiff merely points to the alleged statutory violation by defendants, but he has not provided authority or explained how such a violation – in particular, violation of a statute that already provides for civil liability in the event of a violation – may constitute a breach of fiduciary duty under common law; nor has the Court located any such authority. Accordingly, the Court dismisses this claim.

---

[7] This claim as alleged is therefore based only the CROA violation alleged in Count I. To the extent that plaintiff bases this claim also on the violations alleged in Counts II and III, the claim is dismissed for lack of standing, as set forth above.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for leave to amend his complaint (Doc. # 39) is hereby **granted**. Plaintiff shall file his proposed amended complaint forthwith.

IT IS FURTHER ORDERED BY THE COURT THAT defendants' motion to dismiss (Doc. # 18) is **granted in part and denied in part**. The motion is granted with respect to Counts II, III, and IV of the amended complaint, and those claims are hereby dismissed. The motion is denied with respect to Count I.

IT IS SO ORDERED.

Dated this 12th day of September, 2019, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge