## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARK ENSMINGER, *on behalf of himself and those similarly situated*,

                Plaintiff,

v.

CREDIT LAW CENTER, LLC a/k/a
THOMAS ANDREW ADDLEMAN LLC,
d/b/a CREDIT LAW CENTER, and
THOMAS ADDLEMAN a/k/a TOM
ADDLEMAN,

                Defendants.

Case No. 2:19-cv-2147-JWL-JPO

Hon. John W. Lungstrum

Magistrate Judge James P. O'Hara

Jury Trial Demanded

## DEFENDANTS' COMBINED ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED CLASS ACTION COMPLAINT AND COUNTERCLAIM

Credit Law Center, LLC a/k/a Thomas Andrew Addleman LLC, d/b/a Credit Law Center, (together, "CLC") and Thomas Addleman a/k/a Tom Addleman ("Addleman" and, together with CLC, "Defendants"), for their Combined Answer and Affirmative Defenses to First Amended Class Action Complaint and Counterclaim, state as follows:

1.      This is a class action under the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.* and state law claims for breach of fiduciary duty.

**ANSWER:**    CLC and Addleman admit that this lawsuit purports to assert a putative class action under CROA and state law claims for breach of fiduciary duty. Answering further, CLC and Addleman deny that that they have violated CROA or any other statute, law or regulation. CLC and Addleman further deny that Plaintiff or the putative class members are entitled to any of the relief requested in the First Amended Complaint or to any relief whatsoever from CLC or Addleman. CLC and Addleman also deny that this action may properly be maintained as a class action under Federal Rule of Civil Procedure 23.

1

2.      Defendants violated the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq*. ("CROA") in three distinct ways, and also breached their fiduciary duty to Plaintiff and the putative class.

**ANSWER:**   Denied.

3.      In response to abuses in the credit repair industry, Congress enacted the CROA in 1996, as an amendment to the Consumer Protection Act.

**ANSWER:**   CLC and Addleman admit that Congress enacted the CROA in 1996, as an amendment to the Consumer Protection Act.   CLC and Addleman lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and therefore deny them.

4.      Congress did so against the backdrop of express findings that consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing. In order to obtain credit, consumers who have experienced credit problems may seek assistance from credit repair organizations that offer to improve their credit standing. Moreover, certain advertising and business practices of companies engaged in the type of business that CREDIT LAW CENTER LLC a/k/a THOMAS ANDREW ADDLEMAN L.L.C. d/b/a Credit Law Center and Thomas Addleman a/k/a Tom Addleman ("Defendants") operate, have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters. *See* 15 U.S.C. § 1679(a).

**ANSWER:**   CLC and Addleman deny the allegations in the last sentence of Paragraph 4.  Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and therefore deny them.

5.      The purpose of CROA, enacted April 1, 1997, is to improve the policing of companies associated with services offered to aid in credit repair by ensuring that consumers seeking to utilize such services be provided additional disclosures and other protections against deceptive business practices. *See* 15 U.S.C. § 1679(b).

**ANSWER:**   CLC and Addleman admit that the purposes of CROA are to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services, and to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

CLC and Addleman deny the remaining allegations to the extent they are inconsistent with the explicit purposes set forth in 15 U.S.C. § 1679(b)(1)-(2).

6.      CROA prohibits charging or receiving any money until after the service is "fully performed." CROA, § 1679b(b).

**ANSWER:**   Paragraph 6 calls for a legal conclusion for which no answer is required. To the extent that an answer is required, CLC and Addleman state that § 1679b(b) is a written document that speaks for itself and deny the allegations to the extent they are inconsistent with the specific language set forth in § 1679b(b).

7.      CROA mandates that the required written disclosures informing consumers of their rights under CROA be provided "separately from any written contract or other agreement…" CROA, § 1679c(b).

**ANSWER:**   This allegation relates only to the claims that were dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

8.      CROA requires a conspicuous "notice of cancellation…" CROA, § 1679d(b)(4).

**ANSWER:**   This allegation relates only to the claims that were dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

**Jurisdiction and Venue**

9.      This Court has subject matter jurisdiction under 15 U.S.C. § 1679g and 28 U.S.C. § 1331. The Court has jurisdiction as to Count, breach of fiduciary duty, IV under 28 USC § 1367, because Count IV is substantially related to the original claim under CROA.

**ANSWER:**   CLC and Addleman admit this Court has subject matter jurisdiction under 28 U.S.C. § 1331, and they deny the remaining allegations.  Answering further, CLC and Addleman state that this Court lacks personal jurisdiction to certify a nationwide class action. *See Bristol-Myer Squibb Co.*, 137 S.Ct. 1773 (2017) (holding that a court can validly exercise

personal jurisdiction over a non-resident's claims only where the court has general jurisdiction

over the defendant or specific jurisdiction over the non-resident's claims).

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b) as the acts and transactions giving rise to this action occurred in this district, and as Mr. Mark Ensminger ("Plaintiff") resides in this district.

**ANSWER:**     CLC and Addleman admit the allegations in Paragraph 10 as to Plaintiff's

claim only, and deny the remaining allegations.

## Parties

11.     Plaintiff is a natural person and a citizen of the State of Kansas.

**ANSWER:**     Admitted on information and belief.

12.     Plaintiff is a consumer as defined by 15 U.S.C. §1679a(1).

**ANSWER:**     Paragraph 12 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, CLC and Addleman state that § 1679a(1) is a written

document that speaks for itself and deny the allegations to the extent they are inconsistent with §

1679a(1).

13.     Defendant, CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN L.L.C., d/b/a Credit Law Center, is a law firm structured as a Missouri limited liability company with its principle place of business in Lee's Summit, Missouri.

**ANSWER:**     CLC and Addleman admit that Credit Law Center is a registered d/b/a of

Thomas Andrew Addleman, LLC, and that Thomas Andrew Addleman, LLC is a Missouri

limited liability company with its principle place of business in Lee's Summit Missouri.  CLC

and Addleman deny the remaining allegations.

14.     Defendant, Thomas Addleman a/k/a/ Tom Addleman, is an attorney who is licensed to practice, and so practices, in the State of Missouri, including with the jurisdiction of this Court.

**ANSWER:**     CLC and Addleman admit that Thomas Addleman is an attorney who is

licensed to practice and practices law in Missouri, that he is admitted to practice before the United

4

States District Court for the District of Kansas, and deny the remaining allegations in Paragraph

14.

15.     Defendant Thomas Addleman a/k/a Tom Addleman is a Kansas attorney.

**ANSWER:**     CLC and Addleman admit that Thomas Addleman is an attorney licensed

to practice in Kansas, and deny the remaining allegations.

16.     Defendant, Thomas Addleman a/k/a/ Tom Addleman is the sole member and owner
of Defendant, CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN L.L.C.,
d/b/a Credit Law Center.

**ANSWER:**     CLC and Addleman admit that Addleman is the sole member of Thomas

Andrew Addleman, LLC, and that Credit Law Center is a d/b/a of Thomas Andrew Addleman,

LLC.

17.     Defendant, Thomas Addleman a/k/a/ Tom Addleman, acted as the attorney for
Plaintiff.

**ANSWER:**     CLC and Addleman admit that Plaintiff hired CLC (not Addleman) for the

limited scope and purpose of investigating Plaintiff's credit report and disputing inaccurate

reporting, that Plaintiff appointed CLC (not Addleman) as Plaintiff's attorney-in-fact for the

limited purpose set forth in their written agreement, and that Addleman was identified as

Plaintiff's "legal representative" for the purpose of releasing Plaintiff's personal health

information to CLC in accordance with HIPAA.  Answering further, CLC and Addleman admit

that Addleman represented Plaintiff as his attorney in a lawsuit unrelated to the claims and

allegations at issue in this Complaint.  CLC and Addleman deny the remaining allegations.

18.     Defendant, Thomas Addleman a/k/a/ Tom Addleman, acted as the legal
representative for Plaintiff.

**ANSWER:**     CLC and Addleman admit that Addleman was identified as Plaintiff's

"legal representative" for the limited purpose of releasing Plaintiff's personal health information

to CLC in accordance with HIPAA.   Answering further, CLC and Addleman admit that

Addleman represented Plaintiff as his attorney in a lawsuit unrelated to the claims and allegations

at issue in this Complaint.  CLC and Addleman deny the remaining allegations.

19.     Credit Law Center is a registered fictitious name owned by THOMAS ANDREW ADDLEMAN L.L.C., which does business as Credit Law Center.

**ANSWER:**     CLC and Addleman admit that Credit Law Center is a registered d/b/a and

fictitious name (registered with the Missouri Secretary of State) of Thomas Andrew Addleman,

LLC, and deny the remaining allegations.

20.     THOMAS ANDREW ADDLEMAN L.L.C. is a law firm registered in the State of Missouri.

**ANSWER:**     Admitted.

21.     Defendants are jointly and severally liable for all claims alleged by Plaintiff and the putative class.

**ANSWER:**     Paragraph 21 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, CLC and Addleman deny the allegations.

22.     Defendants use instrumentalities of interstate commerce or the mails to sell, provide, or perform (or represent that it can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving any consumer's credit record, credit history, or credit rating, or providing advice or assistance to any consumer with regard to any activity or service related to improving any consumer's credit record, credit history, or credit rating.

**ANSWER:**     Paragraph 22 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, CLC and Addleman admit that CLC uses, among other

things, the mail to provide credit repair and related services.  Answering further, Addleman states

that he primarily focusses on representing clients in FCRA and FDCPA actions.  CLC and

Addleman deny the remaining allegations.

23.     Defendants are each a credit repair organization as defined by 15 U.S.C. § 1679(a)(3)(A).

**ANSWER:**     Paragraph 23 calls for a legal conclusion for which no answer is required.  To the extent that an answer is required, CLC and Addleman admit, on information and belief, that CLC

is a credit repair organization and deny the remaining allegations.

## Factual Allegations

24.     On February 27, 2015, Plaintiff entered into an Engagement Agreement and Limited Designation of Agency ("Engagement Agreement") with Defendants. A redacted copy of this Engagement Agreement is attached as Exhibit A.

**ANSWER:**   CLC and Addleman admit that, on or about February 27, 2015, Plaintiff entered into an Engagement Agreement and Limited Designation of Agency ("Engagement Agreement") with CLC, a redacted copy of which is attached to the First Amended Complaint as Exhibit A.  CLC and Addleman deny the remaining allegations.

25.     Defendants presented this Engagement Agreement as a comprehensive electronic document, stamped: DocuSign Envelope ID: B2C24984-D017-4FA0-9745-85BD892F363C ("E-Doc"), which is comprised of the following eight documents and agreements, in this order:

a.      Credit Law Center letter

b.      Client Information Sheet

c.      Limited Scope Representation Agreement

d.      CROA Sec. 405 Disclosure

e.      Power of Attorney

f.      HIPAA Release of Information Authorization Form

g.      Notice of Cancellation

h.      Notice of Cancellation

**ANSWER:**   CLC and Addleman admit that CLC provided the Engagement Agreement to Plaintiff along with the eight separate documents identified above through a DocuSign Envelope.  CLC and Addleman deny the remaining allegations.

26.     Defendants represent that they are "designed to assist [the client] in [their] efforts to ensure that [their] credit reports fairly and accurately reflect [their] credit history, and to provide [the client] with valuable guidance as [they] continue to manage [their] credit." Exhibit A at 3.

**ANSWER:**   CLC and Addleman admit that Paragraph 26 accurately quotes an excerpt from Exhibit A, and deny the remaining allegations.  Exhibit A is a written document that speaks for itself and CLC and Addleman deny the allegations to the extent they are inconsistent with the specific language set forth in Exhibit A.

27.   The Engagement Agreement sets out the responsibilities and obligations of Plaintiff and Defendants.

**ANSWER:**   CLC and Addleman admit that the Engagement Agreement sets forth the responsibilities and obligations as between Plaintiff and CLC.  CLC and Addleman deny the remaining allegations.

28.   Defendant, Tom Addleman, signed an authorization form that stated:

"If applicable, Legal Representative sign below: *By signing this form, I represent that I am the legal representative of the client identified above and will provide written proof (e.g. Power of Attorney, living will, guardianship papers, etc.) that I am legally authorized to act on the client's behalf with respect to this authorization form.*

Name of Legal Representative: Tom Addleman"

**ANSWER:**   CLC and Addleman admit that Paragraph 28 accurately quotes an excerpt from Exhibit A that applies only to the release of Plaintiff's personal health information to CLC in accordance with HIPAA.  Answering further, Exhibit A is a written document that speaks for itself and CLC and Addleman deny the allegations to the extent they are inconsistent with the specific relevant language set forth in Exhibit A.

29.   The client identified in the authorization described in the preceding paragraph was Plaintiff, Mark Ensminger.

**ANSWER:**   CLC and Addleman admit that the authorization described in Paragraph 28 above identifies Plaintiff as CLC's client.  Answering further, Exhibit A is a written document that speaks for itself and CLC and Addleman deny the allegations to the extent they are inconsistent with the specific relevant language set forth in Exhibit A.

30.     Under the Engagement Agreement, Defendants agree to staff attorneys, paralegals, clerical staff, or others, to assist in handling the client's case.

**ANSWER:**     CLC and Addleman admit that the Engagement Agreement states, among other things and in pertinent part, that CLC "may ask" various attorneys, paralegals, clerical staff, or others to assist in handling Plaintiff's case.  CLC and Addleman deny the remaining allegations and state that the Engagement Agreement is a written document that speaks for itself and CLC and Addleman deny the allegations to the extent they are inconsistent with the specific relevant language set forth in the Engagement Agreement.

31.     Under the Engagement Agreement, Defendants agree to investigate and dispute credit reporting errors or omissions.

**ANSWER:**     CLC and Addleman admit that the Engagement Agreement sets forth CLC's services, among other things, and denies the remaining allegations.  Answering further, the Engagement Agreement is a written document that speaks for itself and CLC and Addleman deny the allegations to the extent they are inconsistent with the specific relevant language set forth in the Engagement Agreement.

32.     In return for these credit repair services, Plaintiff and the class members agree to pay for these services.

**ANSWER:**     CLC and Addleman admit that the Engagement Letter sets forth Plaintiff's (and other respective client's) obligations with respect to fees and charges, and that the Engagement Agreement is a written document that speaks for itself.  CLC and Addleman deny the allegations to the extent they are inconsistent with the specific relevant language set forth in the Engagement Agreement.

33.     Defendants demanded, and Plaintiff paid, $300.00 within seven days of entering into the Engagement Agreement.

**ANSWER:**     CLC and Addleman admit that Plaintiff agreed to provide a retainer of $300 to CLC within 7 days of entering into the Engagement Agreement, and deny the

remaining allegations.

34.    Plaintiff did not owe the $300.00 that he paid Defendants.

**ANSWER:**    Denied.

35.    Defendants demanded that Plaintiff and the putative class members pay monies described as a retainer amount (hereinafter "Retainer") within seven days after signing the Engagement Agreement for all contracts exceeding $500.00.

**ANSWER:**    CLC and Addleman admit that Plaintiff agreed to provide a retainer of $300 to CLC within 7 days of entering into the Engagement Agreement, and deny the remaining allegations.

36.    Plaintiff's contract exceeded $500.00, as set by the Engagement Agreement's "Contract Cap" of $1,200.00.

**ANSWER:**    CLC and Addleman admit that the Engagement Agreement states, among other things, that Plaintiff's "fees with Credit Law Center will not exceed $1,200.00 (Contract Cap) for the negative items being repaired or removed from [Plaintiff's] credit reports, not including the administration fee and any certified letter sent on [Plaintiff's] behalf." Answering further, the Engagement Agreement is a written document that speaks for itself and CLC and Addleman deny the allegations to the extent they are inconsistent with the specific relevant language set forth in the Engagement Agreement.

37.    The Engagement Agreement provides that "Any contract exceeding a total of $500.00 will require a retainer that will be collected seven (7) days after the date the contract is signed by the client." Exhibit A at 5.

**ANSWER:**    CLC and Addleman admit that Paragraph 37 accurately quotes an excerpt from Exhibit A. Exhibit A is a written document that speaks for itself and CLC and Addleman deny the allegations to the extent they are inconsistent with the specific language set forth in Exhibit A.

38.    The Retainer for Plaintiff's contract with Defendants was due on or before March 4, 2015.

**ANSWER:**    Denied.  Answering further, Exhibit A is a written document that speaks for itself and CLC and Addleman deny the allegations to the extent they are inconsistent with the specific language set forth in Exhibit A.

39.    Defendants received Plaintiff's Retainer on or before March 4, 2015.

**ANSWER:**    Denied.

40.    Plaintiff was required to authorize up to $1,200.00 in fees for Defendants' services, which was described as a "Contract Cap" for "negative items being repaired or removed from my credit reports."

**ANSWER:**    CLC and Addleman admit that Plaintiff agreed and understood that his "fees with Credit Law Center will not exceed $1,200.00 (Contract Cap) for the negative items being repaired or removed from [Plaintiff's] credit reports, not including the administration fee and any certified letter sent on [Plaintiff's] behalf", and deny the remaining allegations. Answering further, the Engagement Agreement is a written document that speaks for itself and CLC and Addleman deny the allegations to the extent they are inconsistent with the specific relevant language set forth in the Engagement Agreement.

41.    These payments were demanded, and paid, before the completion of the services outlined in the Engagement Agreement.

**ANSWER:**    Denied.

42.    Plaintiff did not owe the monies demanded by and paid to Defendants.

**ANSWER:**    Denied.

43.    Any credit repair services contract entered into between a consumer and a credit repair organization is void when or if the credit repair organization demands or accepts payment prior to the completion of the credit repair services.

**ANSWER:**    Paragraph 43 calls for a legal conclusion for which no answer is required. To the extent that an answer is required, CLC and Addleman state that § 1679f is a written document that speaks for itself and deny the allegations to the extent they are inconsistent with

the specific language set forth in § 1679f.

44.     Defendants demanded payment for credit repair services from Plaintiff, thereby making void the credit repair services contracts they entered into with Plaintiff.

**ANSWER:**     Paragraph 44 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, denied.

45.     Because the credit repair services contract, in this case titled an Engagement Agreement, was void, Defendants had no legal right to the monies tendered by Plaintiff and by members of the Class.

**ANSWER:**     Paragraph 45 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, denied.

### Count I
### Violation of CROA, 15 U.S.C. § 1679b(b)

46.     Plaintiff repeats and re-alleges each factual allegation above as though set forth in full hereunder.

**ANSWER:**     CLC and Addleman repeat and incorporate by reference each of their

answers and responses to the allegations set forth in Paragraphs 1-45 above as if fully set forth

herein.

47.     This claim is for Defendants' violation of CROA's prohibition on charging or receiving payment before full performance of services.

**ANSWER:**     CLC and Addleman admit that Plaintiff purports to bring this claim for the

reasons stated in Paragraph 47 above.  CLC and Addleman deny that they violated CROA.

48.     The CROA provides "No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b(b).

**ANSWER:**     Paragraph 48 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, CLC and Addleman state that § 1679b(b) is a written

document that speaks for itself and deny the allegations to the extent they are inconsistent with §

1679b(b).

49.     Defendants require payment in the form of a fee be paid within 35 days of entering into the Engagement Agreement.

**ANSWER:**     Denied.


50.     Defendants charged Plaintiff and the putative class money prior to fully performing any credit repair services on their behalf.

**ANSWER:**     Denied.

51.     In requiring payment in advance of completion of services, Defendants violated 15 U.S.C. § 1679b(b).

**ANSWER:**     Paragraph 51 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, CLC and Addleman deny the allegations in Paragraph

51.

52.     As a direct and proximate result of Defendants' demand for an advance payment from Plaintiff, Plaintiff was deprived of the use of his money, resulting in Plaintiff's loss of time value of his money.

**ANSWER:**     Denied.

53.     Time value of money is a core principle of finance that holds money available at the present time is worth more than the identical sum in the future.

**ANSWER:**     CLC and Addleman lack knowledge and information sufficient to form a

belief as to the truth of the allegations in Paragraph 53 and therefore deny them.

54.     The conduct of Defendants was the direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to the Plaintiff and the putative class, including *inter alia,* payment of a Retainer before Defendants performed services, as outlined more fully above. As a result, Defendants are each liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**ANSWER:**     Denied.

## PRAYER FOR RELIEF

CLC and Addleman deny that that they have violated CROA or any other statute, law or regulation.  CLC and Addleman further deny that Plaintiff or the putative class members are entitled to any of the relief requested in the First Amended Complaint or to any relief whatsoever from CLC or Addleman.  CLC and Addleman also deny that this action may properly be maintained as a class action under Federal Rule of Civil Procedure 23.

### Count II

### Violation of CROA, 15 U.S.C. § 1679c(b)

55.     Plaintiff incorporates by reference all preceding allegations as though set forth in shall be provided as a document which is separate from any written contract or other agreement between the full hereunder.

**ANSWER:**     Count II was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

56.     This claim is for Defendants' violation of CROA's requirement that CROA's 1679c Disclosures be provided to consumers as a separate document.

**ANSWER:**     Count II was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

57.     CROA requires that the § 1679c CROA Disclosures be provided in a separate document from any other written material provided to the consumer. *See* CROA § 1679c(b).

**ANSWER:**     Count II was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

58.     Defendants provided the § 1679c Disclosures in an E-Doc, which is a single,

combined electronic document comprised of eight distinct agreements, with the mandatory § 1679c Disclosures set forth on page 6 of 10.

**ANSWER:**   Count II was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

59.   Congress deemed provision of the § 1679c Disclosures important enough to warrant a dedicated Section of CROA's 10-part Subchapter, entitled: 15 U.S. Code § 1679c. Disclosures.

**ANSWER:**   Count II was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

60.   Congress deemed these Disclosure rights important enough to require inclusion of requisite verbatim Disclosure language in every consumer contract providing credit repair services, as set forth in CROA § 1679c(a).

**ANSWER:**   Count II was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

61.   Defendants' failure to provide Plaintiff and the putative with a separate statement containing their Disclosure rights deprived them of the information necessary to make an informed decision about the purchase of credit repair services, as intended by Congress.

**ANSWER:**   Count II was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

62.   Such information, if properly provided, could have helped Plaintiff and the putative class avoid entering this otherwise violative contract with Defendants.

**ANSWER:**   Count II was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

63.     The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to the Plaintiff and the putative class, including *inter alia,* payment of a Retainer before Defendants performed services, as outlined more fully above. As a result, Defendants are each liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**ANSWER:**     Count II was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

## Count III
## Violation of CROA, 15 U.S.C. § 1679d(b)(4)

64.     Plaintiff incorporates by reference all preceding allegations as though set forth in full hereunder.

**ANSWER:**     Count III was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

65.     This claim is for Defendants' violation of CROA's requirement that credit repair contracts contain conspicuous notice of consumers' right to cancel.

**ANSWER:**     Count III was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

66.     CROA 1679d(b)(4) requires: "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows:"

You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.

**ANSWER:**     Count III was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

67.     Defendants' contract with Plaintiff and the putative class violates this requirement, providing only that:

You may cancel this contract, without any penalty or obligation, at any time before midnight of the 3rd day which begins after the date the contract is signed by you.

*See* Exhibit A at 5.

**ANSWER:**     Count III was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

68.     Defendants deprived Plaintiff and the putative class of their right to information; specifically due notice of their cancellation rights under CROA.

**ANSWER:**     Count III was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

69.     Defendants' notice is not in "bold."

**ANSWER:**     Count III was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

70.     Defendants' notice does not contain the provision: "See the attached notice of cancellation form for an explanation of this right."

**ANSWER:**     Count III was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

71.     The Notice of Cancellation form in the Engagement Agreement is buried at the end of ten pages of various documents and agreements, after a Power of Attorney form, and a HIPAA Release of Information Authorization Form, at pages 9 and 10. *See* Exhibit A.

**ANSWER:**     Count III was dismissed pursuant to the Court's Memorandum Opinion

and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is

required.

72.     Congress deemed notice of cancellation rights important enough to mandate inclusion of requisite verbatim language in every consumer contract providing credit repair services.

**ANSWER:**   Count III was dismissed pursuant to the Court's Memorandum Opinion

and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is

required.


73.     Defendants' failure to provide Plaintiff and the putative with a conspicuous notice of the right to cancel deprived them of the information necessary to make an informed decision about the purchase of credit repair services.

**ANSWER:**    Count III was dismissed pursuant to the Court's Memorandum Opinion

and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is

required.

74.     Such information, if properly provided, could have helped Plaintiff and the putative class avoid entering this otherwise violative contract with Defendants.

**ANSWER:**    Count III was dismissed pursuant to the Court's Memorandum Opinion

and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is

required.

75.     The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to the Plaintiff and the putative class, including *inter alia,* payment of a Retainer before Defendants performed services, as outlined more fully above. As a result, Defendants are each liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**ANSWER:**    Count III was dismissed pursuant to the Court's Memorandum Opinion

and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is

required.

**Count IV**
**<u>Breach of Fiduciary Duty</u>**

76.    Plaintiff incorporates by reference all preceding allegations as though set forth in full hereunder.

**<u>ANSWER:</u>**    Count IV was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

77.    This claim is for breach of fiduciary duty.

**<u>ANSWER:</u>**    Count IV was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

78.    The Engagement Agreement is a retainer agreement between Defendants' law firm and Plaintiff and members of the putative class.

**<u>ANSWER:</u>**    Count IV was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

79.    The Engagement Agreement sets out a scope of legal representation of Plaintiff and members of the putative class.

**<u>ANSWER:</u>**    Count IV was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

80.    Because of the Engagement Agreement with Plaintiff and members of the class, Defendants owed Plaintiff and members of the class a fiduciary duty.

**<u>ANSWER:</u>**    Count IV was dismissed pursuant to the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is required.

81.     Inherent within this fiduciary relationship are the duties of loyalty, integrity, candor, and good faith.

**ANSWER:**     Count IV was dismissed pursuant to the Court's Memorandum Opinion

and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is

required.

82.     Defendants breached its fiduciary duty to Plaintiff and members of the class by engaging in the acts and omissions alleged herein, including among other things, accepting payment for credit repair services before such services were fully performed, in violation of the CROA.

**ANSWER:**     Count IV was dismissed pursuant to the Court's Memorandum Opinion

and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is

required.

83.     As a direct and proximate result of Defendants' breaches of fiduciary duties owed to Plaintiff and members of the class, Plaintiff and the class members have suffered damages, including the loss of time value of the money paid to Defendants before it was allowed to be collected under CROA.

**ANSWER:**     Count IV was dismissed pursuant to the Court's Memorandum Opinion

and Order dated September 12, 2019 (Doc. No. 44) and therefore no answer to this paragraph is

required.

## **CLASS ACTION ALLEGATIONS**

84.     Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of the following class and subclasses (collectively the "Class") initially defined as follows:

    a.     **CROA Payment before Performance Class**

    All natural persons in the United States who (1) entered into an Engagement Agreement with Defendants (2) within the five year period preceding the date of this class action complaint, and (3) who was charged by or made any payment to Defendants at the time of execution of the Engagement Agreement <u>or</u> prior to any credit repair services being fully performed.

**ANSWER:**     CLC and Addleman admit that Plaintiff purports to bring this action

pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of himself and on behalf

of the class and subclasses defined in Paragraph 84.   Answering further, CLC and Addleman

deny that that they have violated CROA or any other statute, law or regulation.   CLC and

Addleman further deny that Plaintiff or the putative class members are entitled to any of the relief

requested in the First Amended Complaint or to any relief whatsoever from CLC or Addleman.

CLC and Addleman also deny that this action may properly be maintained as a class action under

Federal Rule of Civil Procedure 23.

> **b.     E-Doc Disclosure Statement Sub–Class**
> All natural persons in the United States who (1) entered into
> an Engagement Agreement with Defendants (2) within the five
> year period preceding the date of this class action complaint, and
> (3) who received a disclosure statement containing CROA rights
> as part of an E-Doc or DocuSign Envelope or did not receive a
> disclosure statement containing CROA rights separately from any
> other agreement.

**ANSWER:**     Plaintiff's claim associated with this allegation was dismissed pursuant to

the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and

therefore no answer to this paragraph is required.

> **c.     Cancellation Notice Sub-Class**
> All natural persons in the United States who (1) entered into
> an Engagement Agreement with Defendants (2) within the five
> year period preceding the date of this class action complaint, and
> (3) who received notice of right to cancel the contract with
> Defendants in substantially the same form as Plaintiff.

**ANSWER:**     Plaintiff's claim associated with this allegation was dismissed pursuant to

the Court's Memorandum Opinion and Order dated September 12, 2019 (Doc. No. 44) and

therefore no answer to this paragraph is required.

48.     Numerosity. FED. R. CIV. P. 23(a)(1). The Class members are so numerous that
joinder of all is impractical. The names and addresses of the Class members are identifiable
through documents maintained by Defendants, and the Class members may be notified of the
pendency of this action by published and/or mailed notice. Numerosity can be inferred by
Defendants' size, that it employees thousands of employees and the fact that its omissions are part

of its routine business practice.

**ANSWER:**     Paragraph 48 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, denied.

49.     Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things and without limitation:

a.     Whether members of the putative class were charged by or paid any monies to Defendants prior to services being fully completed;

b.     Whether Defendants violations under CROA rendered the contracts with Plaintiff and the class void;

c.     Whether deprivation of money that Defendants demanded to be paid before services were completed caused injury by the loss time value of the money paid;

d.     Whether Defendants provided the requisite disclosures under CROA;

e.     Whether the violations alleged by Defendants herein were conducted recklessly, knowingly, or intentionally in conscious disregard of the rights of class members; and

d.     Whether Defendants' conduct constituted violation of the CROA or breach of fiduciary duty.

**ANSWER:**     Paragraph 49 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, denied.

50.     Typicality. FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class member. Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

**ANSWER:**     Paragraph 50 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, denied.

51.     Adequacy. Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Fed. R. Civ. P. 23(a)(4). Plaintiff and his Counsel will fairly and

adequately protect the interests of members of the Class.

**ANSWER:**   Paragraph 51 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, denied.

52.   Superiority. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

**ANSWER:**   Paragraph 52 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, denied.

53.   Injunctive Relief Appropriate for the Class. Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Fed. R. Civ. P. 23(b)(2).

**ANSWER:**   Paragraph 53 calls for a legal conclusion for which no answer is required.

To the extent that an answer is required, denied.

## PRAYER FOR RELIEF

CLC and Addleman deny that that they have violated CROA or any other statute, law or regulation.  CLC and Addleman further deny that Plaintiff or the putative class members are entitled to any of the relief requested in the First Amended Complaint or to any relief whatsoever from CLC or Addleman.  CLC and Addleman also deny that this action may properly be maintained as a class action under Federal Rule of Civil Procedure 23.

## COUNTERCLAIM

### Parties

1.     Counter-plaintiff Credit Law Center is a registered d/b/a of Thomas Andrew Addleman, LLC ("CLC"), a Missouri limited liability company with its principle place of business in Lee's Summit Missouri.

2.     Counter-defendant Mark Ensminger ("Ensminger") is a citizen of the State of Kansas.

### COUNTERCLAIM COUNT I
### (Unjust Enrichment/Quantum Meruit)

3.      This Counterclaim Count I is plead in the alternative in the event that the Court or the jury find that no valid and enforceable contract exists between and among CLC, on the one hand, and Ensminger and/or putative class members, on the other hand.

4.     As alleged in Ensminger's First Amended Complaint, on or about February 27, 2015, Ensminger entered into an Engagement Agreement and Limited Designation of Agency ("Engagement Agreement") with CLC, a redacted copy of which is attached to the First Amended Complaint as Exhibit A.

5.     As a result of the entering into the Engagement Agreement, CLC performed services for the benefit of Ensminger by, among other things,: (a) collecting and reviewing instructions from Ensminger regarding his financial circumstances and goals; (b) collecting and reviewing information from Ensminger's creditors and major credit bureaus; (c) corresponding with Ensminger's creditors and major credit bureaus on Ensminger's behalf to resolve incorrect information; and (d) analyzing, monitoring and providing Ensminger with updates regarding the status of the working being conducted on his behalf.

6.     Ensminger accepted CLC's services and received the reasonable value of its services.

7.     As alleged in Ensminger's First Amended Complaint, and despite having received and retained the benefits of the services provided by CLC at his request, Ensminger now contends that the Engagement Agreement (and each engagement agreement that CLC entered into with putative class members) is void, and seeks through this lawsuit to have monies returned to him that he paid to CLC in connection with the valuable services CLC provided.

8.     In the event that no agreement is deemed to have existed between CLC and Ensminger for the payment to CLC for its services, then Ensminger's receipt and retention of the valuable services and benefits he received from CLC is unlawful and wrongful, and violates fundamental principles of justice, equity, and good conscience.

9.      As a result of the foregoing, Ensminger has been unjustly enriched by not paying CLC the monies to it is entitled (including interest, costs and expenses), and Ensminger should be obligated to pay CLC for the reasonable value of the services CLC provided to Ensminger.

10.     As a direct and proximate result of Ensminger's conduct, CLC has suffered injury for which compensation is sought in the form of monetary damages, in an amount that will be established at trial by jury.

WHEREFORE, CLC respectfully requests that the Court (a) enter judgment in its favor and against Ensminger and/or putative class members; (b) award CLC damages for the reasonable value of its services and any unjust enrichment to Ensminger and/or putative class members together with interest and costs; and (c) award AMS such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES
### First Affirmative Defense

The First Amended Class Action Complaint fails to set forth facts sufficient to state a claim upon which relief may be granted against Thomas Addleman, and further fails to entitle Plaintiff or the putative class members to the relief sought or to any relief whatsoever against each and every Defendant.

### Second Affirmative Defense

Plaintiff and the putative class members lack standing to bring the remaining claim set forth in the First Amended Class Action Complaint.

### Third Affirmative Defense

Plaintiff's and the putative class members' claim is not suitable for class certification because their case fails to satisfy the requirements of Federal Rule of Civil Procedure 23.

### Fourth Affirmative Defense

The Court lacks personal jurisdiction to certify a nationwide class action.  *See Bristol-Myer Squibb Co.*, 137 S.Ct. 1773 (2017) (holding that a court can validly exercise personal jurisdiction over a non-resident's claims only where the court has general jurisdiction over the defendant or specific jurisdiction over the non-resident's claims).

### Fifth Affirmative Defense

The certification and maintenance of this action as a class action would violate Defendants' right to a single jury trial as provided in the United States Constitution, Amendment VII.

## Sixth Affirmative Defense

The Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq.*, violates the due process rights of the Defendants as guaranteed by the 5th and 14th Amendments to the United States Constitution.

## Seventh Affirmative Defense

Plaintiff's and the putative class members' claim is barred by the doctrines of laches and/or waiver.

## Eighth Affirmative Defense

Plaintiff's and the putative class members' claim is barred, in whole or in part, because Plaintiff and the putative class members have failed to mitigate any injuries and damages that they have allegedly suffered.

## Ninth Affirmative Defense

Plaintiff's and the putative class members' claim is barred because Plaintiff and the putative class members have not suffered actual damages due to any alleged violation of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq.*, by Defendants.

## Tenth Affirmative Defense

Plaintiff does not allege facts sufficient to rise to the level of conduct required to recover punitive damages under the Credit Repair Organizations Act, 15 U.S.C. §§ 1679, *et seq.*, and thus all requests for punitive damages are improper and legally unsustainable.

## Eleventh Affirmative Defense

Defendants are entitled to set-off in the amount of any damages, restitution and settlement recovered by Plaintiff and the putative class members for the injuries alleged in the First Amended

Class Action Complaint should any damages, restitution and settlements be awarded to Plaintiff and the putative class members.

If it is determined that the underlying contract(s) at issue are void or otherwise unenforceable, Defendants are also entitled to have any damages or restitution that may be awarded to Plaintiff and the putative class members set-off by the value of any benefit and/or services conferred upon Plaintiff and the putative class members by Defendants.

### Twelfth Affirmative Defense

Plaintiff's and the putative class members' claim is barred by their own unclean hands and wrongful conduct.

### Thirteenth Affirmative Defense

Plaintiff and the putative class members would be unjustly enriched if they recovered anything in this action.

### Fourteenth Affirmative Defense

Plaintiff's and the putative class members' claim is barred by the doctrines of ratification.

### JURY TRIAL DEMAND

Defendants demand a trial by jury of all claims triable by jury as of right.

WHEREFORE, Defendants pray for the entry of judgment in their favor and against Plaintiff as follows:

1.      That this action be dismissed in its entirety and with prejudice;

2.      That Plaintiff takes nothing by way of the First Amended Class Action Complaint;

3.      That Defendants be awarded their attorneys' fees and costs of suit; and

4.      For such other relief as the Court deems just and proper.

Dated:  October 3, 2019                                 Respectfully submitted,

**CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN LLC, d/b/a CREDIT LAW CENTER**, and **THOMAS ADDLEMAN**

By:_____/s/   Timothy A. Hudson_____
                    One of Their Attorneys

By:_____/s/   Chad C. Beaver_____
                    One of Their Attorneys

Timothy A. Hudson, *pro hac vice*
Jordan E. Wilkow, *pro hac vice*
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL  60604
Tel: (312) 762-9450
Fax: (312) 762-9451
thudson@tdrlawfirm.com
jwilkow@tdrlawfirm.com

-and-

Chad C. Beaver, KS Bar No. 21280
BEAVER LAW FIRM, LLC
1600 Genessee Street, Suite 920
Kansas City, Missouri 64102
Tel: (816) 579-1800
Fax: (816) 817-0540
cbeaver@beaver-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2019, a copy of the above and foregoing document was served by:

    (_X_) Filing it with the Court's CM/ECF system;
    (__) U.S. Mail, postage-prepaid;
    (__) Facsimile;
    (__) Email;
    (__) Federal Express; and/or,
    (__) Hand delivery, upon:

Mr. Michael H. Rapp
Mr. A.J. Stecklein
Mr. Matthew S. Robertson
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile: 913-371-0727
Email: MR@KCconsumerlawyer.com
Email: AJ@KCconsumerlawyer.com
Email: MSR@KCconsumerlawyer.com
ATTORNEYS FOR PLAINTIFF

Mr. Keith J. Keogh
Ms. Amy L. Wells
Keogh Law, Ltd.
55 W. Monroe Street, Suite 3390
Chicago, IL 60603
312-726-1092
Fax: 312-726-1093
Email: keith@keoghlaw.com
Email: AWells@KeoghLaw.com
ATTORNEYS FOR PLAINTIFF

                                /s/ Chad C. Beaver

                                _____

                                ATTORNEY FOR DEFENDANTS