## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MARK ENSMINGER**, *on behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>**CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN L.L.C., d/b/a CREDIT LAW CENTER** and **THOMAS ADDLEMAN a/k/a TOM ADDLEMAN**<br><br>Defendants. | Case No.:2:19-cv-02147-JWL-JPO |

### PLAINTIFF'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS CREDIT LAW CENTER'S COUNTERCLAIM

Now comes Plaintiff, Mark Ensminger, on behalf of himself and the putative class, and respectfully moves this Court to dismiss the counterclaim of Defendant, Credit Law Center, dba Thomas Andrew Addleman, LLC, ("CLC"), for unjust enrichment and quantum meruit.

**I.      NATURE OF MATTER BEFORE THE COURT**

Plaintiff seeks a return of his money in this action because Defendants violated the Credit Repair Organization Act, 15 U.S.C. § 1679b(b) ("CROA"), by charging for services prior to full performance. CLC now counterclaims that if the Plaintiff prevails because the payments were found to be prohibited by law, CLC should be awarded quantum merit. Put another way, if the Court or Jury find in favor of Plaintiff, and award damages as expressly provided for under the CROA, CLC seeks to undo that outcome via this counterclaim.

However, CLC cannot sidestep the CROA's complete bar on such payments, and its

counterclaim fails as a matter of law.[1] Specifically, the CROA does not allow for a set-off, as CLC seeks here. *Hillis v. Equifax Consumer Servs.,* 237 F.R.D. 491, 500-01 (N.D. Ga. 2006) ("The damages provision of the CROA is plain and unambiguous, and it does not allow for or contemplate any set-off."). This is consistent with the overwhelming number of opinions across the country when adjudicating claims under similar consumer protection statutes (*see* myriad of citations in Sec. IV(B), *infra*).

In addition, CLC alleges Plaintiff was unjustly enriched, or that Plaintiff should be ordered to pay CLC money under the theory of quantum meruit. ECF 49 at 24-25, ¶¶ 3-10. The crux of CLC's baseless claim is the false assertion that the Mr. "Ensminger has been unjustly enriched ***by not paying CLC*** ..." *Id.* at ¶ 9. However, because CLC received full payment from Mr. Ensminger many years ago, these claims fail as a matter of law. Indeed, CLC charged a $300.00 retainer before it ever commenced *any* credit repair service on behalf of Mr. Ensminger [*FAC* at ¶ 33]; and in the end, CLC received even more money before the credit repair services were complete. *Id.* at ¶¶ 36, 50.

Importantly, CLC concedes as much. Specifically, CLC's counterclaim comes in response to Plaintiff seeking "through this lawsuit to have monies returned to him ***that he paid to CLC***…" Counterclaim at ¶ 7 (emphasis added).[2]

Thus, CLC cannot make a plausible claim for relief under unjust enrichment or quantum meruit because the third element of these causes of action – no payment – cannot be satisfied since Plaintiff did make the payment. *See Genesis Health Clubs, Inc. v. LED Solar & Light Co.*, No. 13-

---

[1] CLC's Counterclaim for non-payment essentially seeks an offset from judgment because ***Mr. Ensminger already paid CLC***. CLC does not (nor could it) allege Plaintiff owes CLC any money at this time, nor does it dispute Plaintiff's assertion that CLC has received payment for all services it performed on behalf of Plaintiff.
[2] Because the CROA treats any agreement that is inconsistent with its mandates as void, CLC attempts a work around to seek to reclaim any monies allegedly due under the violative (and void) agreement –under equitable theories.

1269-JWL, 2015 U.S. Dist. LEXIS 7591, at *43-44 (D. Kan. Jan. 23, 2015) (third and final element for unjust enrichment or quantum meruit claim is "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit *without payment* of its value.") (emphasis added and citations omitted).

Although CLC may argue that if they have to pay Plaintiff damages under the CROA, they have no longer been paid, any such argument illustrates why the CROA does not allow a set-off for organizations that break the law. Otherwise, CROA would be toothless.

For these reasons, and those set forth herein, Plaintiff respectfully moves the Court to dismiss CLC's counterclaim pursuant to Rule 12(b)(6) for failure to state a claim.

## II.      CONCISE SUMMARY OF FACTS

The facts as they relate to CLC's counterclaim for unjust enrichment or quantum meruit are simple. Plaintiff previously paid CLC and its counterclaim omits any allegations that Mr. Ensminger or any putative class member accepted or retained any benefit from CLC *without payment*. Here, full payment was made to CLC. *See FAC* ¶¶ 32- 33, 41.

Indeed, CLC's claims demonstrate that the entire basis for its counterclaim is founded on the notion that Mr. Ensminger "…seeks through this lawsuit to have monies returned to him *that he paid to CLC*…" *Counterclaim* at ¶ 7 (emphasis added). Simply put, CLC's counterclaim does not allege, nor can it, that it has not been paid by Plaintiff or any putative class member. *See Counterclaim.*

In fact, CLC received payment from Mr. Ensminger well over four years ago. *FAC* at ¶ 33- 39. The same is true for the entire putative class, many of whom, like Plaintiff, paid CLC a retainer within seven days of signing an Engagement Agreement and before any credit repair was

completed. *See id.* at ¶ 35.[3] In addition, CLC concedes via its allegations that the payment in contention is money that Mr. Ensminger previously "paid to CLC in connection with services CLC provided." *Id.* at ¶ 7.

In short, CLC's counterclaim does not and cannot allege that Mr. Ensminger or any putative class member have any balance due or owing to CLC. CLC's contradictory allegations make clear that it is seeking "compensation … in the form of monetary damages" for monies it has, and has had since 2015. *See Counterclaim* at ¶ 10 and ¶ 7.

## III.    QUESTIONS PRESENTED

1. Whether CLC can equitably seek a set-off, permitting it to violate the CROA and then evade the CROA's liability provision when the statute and applicable opinions hold otherwise.

2. Whether CLC states a plausible claim for unjust enrichment/quantum meruit where Plaintiff and putative class members have already paid in full for the any alleged benefit they may have received.

## IV.    ARGUMENT

### A.  Civil Rule 12(b)(6) Standard

In analyzing a Rule 12(b)(6) motion to dismiss, the Court will accept as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the [pleader]." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). Next, the Court determines whether there are "enough facts to state a claim to

---

[3] Notably, CLC does not assert that **any** money is due or owing from Mr. Ensminger at this time, nor that Plaintiff ever harmed CLC financially or otherwise. *See Counterclaim.* Instead, CLC's entire premise is based on a **future** determination by this Court or a Jury. *See id.* at ¶ 8. CLC alleges that "[i]n the event that no agreement is deemed to have existed between CLC and Ensminger for payment to CLC for its services, **then** … benefits he received from CLC [were] unlawful and wrongful…" *Id* (emphasis added). CLC's "if – then" hypothesis does not pass muster for a plausible claim, let alone grounds to *falsely* assert that "… Ensminger has been unjustly enriched by not paying CLC the monies to it is entitled (including interest, costs and expenses[3])" *Id.* at ¶ 9.

relief that is plausible on its face." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citations omitted). In determining the plausibility of a claim, the court looks to the elements of the particular cause of action, "keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element." *Id.* (quotations omitted). While "the nature and specificity of the allegations required to state a plausible claim will vary based on context," "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id.* (citations and quotations omitted). Thus, a "claim is facially plausible if the plaintiff has pled 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.,* a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548, 127 S. Ct. 1955, 1961 (2007). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

Here, no inference of liability can be made that Plaintiff has been unjustly enriched or CLC is entitled to relief under claims of quantum meruit based on its allegations. This is because CLC has neither made, nor could make, ***any*** allegation that it has not already received payment for the credit repair services it alleges to have performed, which is an essential element of its counterclaim. CLC's allegations related to its damages are not only speculative they are non-existent.

**B.  CLC's Attempts to End Run Federal Law & Undermine a Future Decision by the Court or Jury**

CLC's counterclaim is an attempt to undermine the CROA by pleading an "if – then" counterclaim. Essentially, CLC's counterclaim can be read to state that *if* the fact-finder determines "no agreement is deemed to have existed between CLC and Ensminger for the payment to CLC for its services" CLC asserts this counterclaim. *Id.* at ¶ 8. Accordingly, CLC implicitly admits that it has no claim now, but advances this misplaced "alternative" cause of action in the event the Court or Jury find it violated the CROA.

However, the CROA is clear. If CLC is found to have violated the statute, civil liability provides for, *inter alia*:

> **Actual damages**
> The greater of –
>> (A) the amount of any actual damage sustained by such person as a result of such failure; or
>> (B) *any amount paid by the person to the credit repair organization*.

CROA  §1679g(a)(1) (emphasis added). CLC's back-door attempt at a set-off obviates this provision of the CROA that provides recovery of the amount paid to credit repair organization. However, it clearly is not the intent of the statute to provide relief with one hand only to take it back and hand it over to the unlawful credit repair organization with the other. After all, if every credit repair organization could reclaim the damages awarded to an aggrieved consumer, it would effectively remove the legs from this consumer protection statute.

In *Hillis v. Equifax Consumer Servs.*, the court squarely rejected the very contention CLC raises here: that a credit repair organization may be entitled to a set-off for any value it claims to have provided through its services, holding:

> "Just because some consumers may have received "value" does not mean they received a net benefit as contemplated by the CROA. Nowhere does the CROA provide that a credit repair organization that violates the act may be entitled to a

set-off. Nor does the nature of the statute's prescribed damages suggest that the CROA permits such a defense. The damages provision of the CROA is plain and unambiguous, and it does not allow for or contemplate any set-off. If Defendants are subject to but failed to comply with the CROA, any consumer who purchased Score Power is entitled to a refund of the money he paid to Defendants without having to reduce that refund by any "value" he may have received. Finally, computing the value of a purchaser's benefit would be difficult if not impossible. For all of these reasons, the Court denies Defendants' motion for leave to amend their answers.

*Id.*, 237 F.R.D. 491, 500-01 (N.D. Ga. 2006).

After all, as this Court recognized in this case, [i]n the CROA itself, Congress stated the following purposes for the act:

(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

(2) ***to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.***

*Ensminger v. Credit Law Ctr*., No. 19-2147-JWL, 2019 U.S. Dist. LEXIS 155461, at *12-13 (D. Kan. Sep. 12, 2019), citing 15 U.S.C. § 1679(b) (emphasis added). Allowing CLC to upend the CROA by rendering the liability provision meaningless would be inconsistent with the CROA's purpose of protecting the public from unfair business practices such as those of CLC here, whereby it unlawfully pre-charged its customers, a direct contravention of the CROA.

An examination of the Act and interpretive case law indicates that it "ultimately serves the dual purpose of providing a remedy for harm to the monetary interests of individuals while serving to deter socially undesirable lending practices" by penalizing those who violate its provisions. *Riggs v. Gov't Emps. Fin. Corp.,* 623 F.2d 68, 72 (9th Cir. 1980), citing *Murphy v. Household Finance Corp., supra*, 560 F.2d at 211; *see Williams  v. Public Finance Corp*., 598 F.2d 349, 355 (5th Cir. 1979); *Porter v. Household Finance Corp., supra*, 385 F. Supp. at 342.The CROA, enacted in 1994 as part of an amendment to the Consumer Credit Protection

Act ("CCPA"), 15 U.S.C. § 1601 *et seq*. Consumer Credit Reporting Reform Act, Sen. Rpt. 103-209 (Dec. 9, 1993). The Senate Committee found that:

> consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing. As a result, consumers who experience problems may seek assistance from credit repair organizations offering to improve the credit standing of such consumers. The Committee further finds that certain advertising and business practices of these organizations have harmed consumers, particularly consumers of limited economic means and who are inexperienced in credit matters.

> The purpose of [the CROA] is to ensure that consumers who utilize the services of credit repair organizations have the necessary information to make informed decisions regarding the purchase of those services and to protect the public from unfair and deceptive business practices by credit repair organizations.

*Id*. at § 402. The Report cites testimony from the Federal Trade Commission, stating:

> fraudulent companies that lead consumers to believe that the companies can 'repair' bad credit histories have bilked consumers of millions of dollars in the past several years, have caused consumer reporting agencies to waste time and money reinvestigating spurious disputes, and have been the focus of numerous enforcement actions by the FTC.

*Id*. at § K. Congress itself recognized that enactment of the CROA would enhance the consumer credit industry, thus making its enforcement one of sound public policy:

> economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this title to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against unfair and inaccurate credit billing and credit card practices.

15 U.S.C. § 1601(a).

Notably, Plaintiff could find only *one* case, *Hill,* where a CROA-violating defendant had the audacity to countersue despite the express language of the CROA contravene such a position. That said, many other consumer protection statutes prohibit set-off, which is consistent with the remedial purposes of CROA. *See Stout v. FreeScore, LLC*, 743 F.3d 680, 684 (9th Cir. 2014) ("In

enacting the Consumer Credit Protection Act, of which the CROA is a part, Congress intended for courts to broadly construe its provisions in accordance with its remedial purpose), citing *See Brothers v. First Leasing*, 724 F.2d 789, 793 (9th Cir. 1984). Moreover, courts should construe consumer protection statutes "liberally [] in favor of" consumers. *Bizier v. Globe Fin. Serv., Inc.,* 654 F.2d 1, 3 (1st Cir. 1981).

For example, the Fair Credit Reporting Act ("FCRA"), Fair Debt Collections Practices Act ("FDCPA"), and the Truth in Lending Act ("TILA") are each consumer protection laws that preclude equitable set-off. *See Gonzales v. Bank of Am*., No. CIV S-10-2143 KJM-EFB, 2011 U.S. Dist. LEXIS 147372, at \*4 (E.D. Cal. Dec. 21, 2011) (no set-off under FCRA); *Brim v. Midland Credit Mgmt.,* 795 F. Supp. 2d 1255, 2011 U.S. Dist. LEXIS 75714, \*24 (N.D. Ala. May 4, 2011) ("There is no right to offset or contribution under the FCRA."); *McMillan v. Equifax Credit Information Services, Inc*., 153 F. Supp. 2d 129, 132 (D.Conn. 2001) (no right to indemnification or contribution under FCRA); *Jansen v. Equifax Info. Servs., LLC,* 2010 U.S. Dist. LEXIS 79760, \*\*5-6 (D. Or. Aug. 6, 2010) (finding no right to contribution or indemnification under FCRA); *Nelson v. Equifax Info. Servs. LLC,* 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007) (stating that FCRA is distinct cause of action from the Fair Debt Collection Practices Act and "[t]here is no equitable offset for either of these causes of action"); *McMillan v. Equifax Credit Info. Servs., Inc.,* 153 F. Supp. 2d 129, 132 (D. Conn. 2001) ("Courts have found that the FCRA does not provide a right to indemnification."); *Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1058 (N.D. Cal. 2000) (FDCPA does not provide express or implied right to contribution or indemnification); *Kay v. First Continental Trading., Inc*., 966 F. Supp. 753, 754-55 (N.D. Ill. 1997) (contribution is not available under FCRA); *G*utshall *v. Bailey & Assocs.,* Case No. 90 C 20182, 1991 U.S. Dist. LEXIS 12153, at \*5 (N.D. Ill. Feb. 11, 1991) (recognizing no set-off in TILA claim); *In re Johnson*, 13 B.R. 185,

188 (Bankr. M.D. Tenn. 1981) (declining to allow lenders to offset the TILA recovery against the underlying debt; *Riggs v. Gov't Emps. Fin. Corp*., 623 F.2d 68, 73-75 (9th Cir. 1980) (same); *Newton v. Beneficial Fin. Co.*, 558 F.2d 731, 732 (5th Cir. 1977)  (reversing district Court, holding "may not … offset a Truth in Lending claim arising out of the same debt").

Because CROA does not allow a set-off, which is consistent with the remedial consumer protection purpose of the Act, and consistent with the similar prohibition of set-off in other consumer protection statutes, CLC's claim fails, and should be dismissed with prejudice.

### C.  CLC Received Payment in 2015, thus its *Counterclaim* Fails

Quantum meruit, also called unjust enrichment, is an equitable doctrine sounding in quasi-contract. *See Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd*., 259 Kan. 166, 176, 910 P.2d 839 (1996). The Kansas Supreme Court has described quantum meruit/unjust enrichment as follows:

> "'Quantum meruit is an equitable doctrine. Restitution and unjust enrichment are modern designation for the older doctrine of quasi-contracts." *Peterson v. Midland Nat'l Bank*, 242 Kan. 266, 275, 747 P.2d 159 (1987). "The theory of quasi-contract is raised by the law on the basis of justice and equity regardless of the assent of the parties." *Holiday Development Co. v. Tobin Construction Co.,* 219 Kan. 701, 708, 549 P.2d 1376 (1976). "The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him [or her]." *Peterson*, 242 Kan. at 275 [747 P.2d 159].' *Pioneer Operations Co. v. Brandeberry,* 14 Kan.App.2d 289, 299, 789 P.2d 1182 (1990)."

*W&W Steel, LLC v. BSC Steel, Inc.*, 944 F. Supp. 2d 1066, 1077 (D. Kan. 2013), citing *Haz-Mat Response, Inc. v. Certified Waste Services, Ltd*., 259 Kan. 166, 910 P.2d 839, 846 (1996)(quoting *Haz-Mat Response, Inc., v. Certified Waste Services, Ltd*., 21 Kan.App.2d 56, 896 P.2d 393, 399 (1995)).

"The basic elements of a claim based on a theory of unjust enrichment are threefold: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the

benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit *without payment* of its value." *Genesis Health Clubs, Inc. v. LED Solar & Light Co.*, No. 13-1269-JWL, 2015 U.S. Dist. LEXIS 7591, at *43-44 (D. Kan. Jan. 23, 2015) (quoting *J.W. Thompson Co. v. Welles Prods. Corp.*, 243 Kan. 503, 512, 758 P.2d 738 (1988)) (internal cites omitted) (emphasis added).

Under the third element, which is key in this case, CLC "must show both that [Plaintiff] received a benefit *and* that retention of that benefit *without payment* would be unjust." *First Specialty Ins. Corp. v. NovaPro Risk Sols., LP*, 468 F. Supp. 2d 1321, 1341 (D. Kan. 2007), quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519, 526 (1994) (citations omitted) (emphasis added). Here, CLC has not, and cannot, allege any facts to support a showing of third element: the acceptance of a benefit *without payment*.[4] This is because of the indisputable fact that CLC received full payment years ago. Accordingly, CLC's counterclaim must be dismissed.

CLC cannot satisfy the third element of its counterclaim, and has not made any allegations suggesting it has not already received full payment for its services in its eight-paragraph *Counterclaim.* To the contrary, the *Counterclaim* makes clear that Mr. Ensminger did pay CLC for the credit repair work it alleges to have provided Mr. Ensminger. *Counterclaim* at ¶ 7 ("through

---

[4] Although Plaintiff cites primarily to Kansas cases, the result does not change to the extent that Missouri law applies. "To properly and sufficiently establish a claim for unjust enrichment, the plaintiff must prove three elements: (1) the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit." *Holliday Investments, Inc. v. Hawthorn Bank*, 476 S.W.3d 291, 295 (Mo. App. W.D. 2015). Neither the laws of Kansas nor Missouri would allow a claim for unjust enrichment or quantum meriut, on the facts of this case, to proceed because Defendant cannot allege that they were not paid for any services that were rendered—because they were. *See Rackers v. Baclesse, Inc. v. Kinstler*, 497 S.W.2d 549, 554 (Mo. App. W.D. 1973) ("Having advanced Gemeinhardt money for the payment of these materials, it cannot be said that retention of them without further payment constituted unjust enrichment."). The failure to pay is considered, in Missouri, to be an "essential element" to a claim for quantum meruit and because Defendant cannot plead this essential element, their claim must fail. *See County Asphalt Paving, Co., Inc. v. Mosley Const., Inc.*, 239 S.W.3d 704, 711–12 (Mo. App. E.D. 2007) (citing *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261 (Mo. App. W.D. 1984)).

this lawsuit [Plaintiff seeks] to have monies returned to him ***that he paid to CLC***…") (emphasis added).

The result is obvious. Because CLC received full payment from Mr. Ensminger over four years ago, CLC cannot make a plausible claim for relief, thus its *Counterclaim* fails.[5]

## V.     CONCLUSION

The CROA and public policy preclude the set-off that CLC seeks. In addition, Mr. Ensminger and the putative class have already paid CLC for any alleged benefit conferred upon them for the credit repair services provided. Accordingly, CLC's counterclaim for unjust enrichment/quantum meruit fails. Therefore, Plaintiff, on behalf of the putative class, respectfully moves the Court to dismiss CLC's counterclaim.

---

[5] CLC charged a $300.00 retainer before it ever commenced *any* credit repair service on behalf of Mr. Ensminger [*FAC* at ¶ 33]; and in the end, CLC received even more money before the credit repair services were complete. *Id.* at ¶¶ 36, 50.

*Respectfully Submitted,*

By: s/  Matthew S. Robertson
A.J. Stecklein          KS Bar #16330
Michael H. Rapp      KS Bar #25702
Matthew Robertson   KS Bar #27254
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone:     (913) 371-0727
Facsimile:      (913) 371-0727
Email: aj@kcconsumerlawyer.com
         mr@kcconsumerlawyer.com
         msr@kcconsumerlawyer.com

-and-

Keith J. Keogh          *pro hac vice*
Amy L. Wells           *pro hac vice*
Keogh Law, Ltd.
55 W. Monroe Street, Suite 3390
Chicago, IL 60603
Telephone:     (312) 726-1092
Facsimile:      (312) 726-1093
Email: keith@keoghlaw.com
         awells@keoghlaw.com
Attorneys for Plaintiff

## CERTIFICATE OF FILING

I hereby certify that the foregoing document was filed electronically with the United States District Court for the District of Kansas on October 24, 2019, which will automatically generate notice of filing to all counsel of record.

/s/ Matthew S. Robertson
Attorney for Plaintiff