**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MARK ENSMINGER, *on behalf of himself and those similarly situated*,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN LLC, d/b/a CREDIT LAW CENTER, and THOMAS ADDLEMAN a/k/a TOM ADDLEMAN,<br><br>Defendants/Counter-Plaintiffs. | Case No. 2:19-cv-2147-JWL-JPO<br><br>Hon. John W. Lungstrum<br><br>Magistrate Judge James P. O'Hara<br><br>Jury Trial Demanded |

**DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE IN OPPOSITION TO
PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DIMISS**

Defendants/Counter-Plaintiffs Credit Law Center, LLC a/k/a Thomas Andrew Addleman, LLC, d/b/a Credit Law Center and Thomas Addleman (together, "CLC") respectfully submit this response in opposition to the 12(b)(6) motion to dismiss of Plaintiff/Counter-Defendant Ensminger ("Counter-Defendant").

**INTRODUCTION**

In early 2015, Counter-Defendant hired CLC to improve his credit score. Accordingly, on February 27, 2015, CLC and Counter-Defendant entered into an Engagement Agreement and Limited Designation of Agency ("Engagement Agreement"), pursuant to which CLC agreed to perform certain services, and Counter-Defendant agreed to pay certain fees in return for those services. Pursuant to the Engagement Agreement, CLC fully performed all of the services that Counter-Defendant requested to his satisfaction, and Counter-Defendant's credit score improved as a result of CLC's services. Counter-Defendant was charged for and paid fees for CLC's services in an amount that Counter-Defendant agreed to pay in return for those services.

Nevertheless, after employing CLC's services for many months and receiving the full benefit of all contracted-for services to his full satisfaction, Counter-Defendant now asserts that the Engagement Agreement is void and unenforceable under the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679, and that he should receive a full refund of *all* amounts that he paid to CLC for services rendered.  CLC maintains that the Engagement Agreement is valid and fully enforceable, but, in the alternative, brings a counterclaim to remedy the unjust enrichment and windfall that, on these facts, would occur were Counter-Defendant to prevail on his claim.

In its Motion, Counter-Defendant asserts that CLC's claim should be dismissed because: (1) no defendant can *ever* bring a counterclaim for unjust enrichment against a CROA plaintiff; and (2) Counter-Defendant paid for the services it received from CLC.  Both arguments fail.  The first argument proves far too much.  Nothing in CROA prohibits a defendant from bringing an unjust enrichment counterclaim.  There certainly is no reason that such a claim should be precluded on the facts at issue here, where Counter-Defendant obtained the full benefit of CLC's services and thereafter sought a determination that the Engagement Agreement is unenforceable.  The second argument is merely a strawman of Counter-Defendant's own making.  On its face, CLC's counterclaim is brought only in the event that the Engagement Agreement is deemed unenforceable and fees are returned to Counter-Defendant, despite his retention of the benefit of CLC's services.  Counter-Defendant's assertion that he has not yet been unjustly enriched is therefore misplaced. For these reasons and the reasons that follow, Counter-Defendant's motion should be denied.

## FACTUAL BACKGROUND

On or about February 27, 2015, Counter-Defendant entered into the Engagement Agreement with CLC. (Countercl., ¶ 4.)  Pursuant to the Engagement Agreement, CLC performed services for the benefit of Counter-Defendant.  (*Id.* at ¶ 5.)  These services included, among other

things: (a) collecting and reviewing instructions from Counter-Defendant regarding his financial circumstances and goals; (b) collecting and reviewing information from Counter-Defendant's creditors and major credit bureaus; (c) corresponding with Counter-Defendant's creditors and major credit bureaus on his behalf to resolve incorrect information; and (d) analyzing, monitoring and providing Counter-Defendant with updates regarding the status of the working being conducted on his behalf. (*Id*.)

As set forth in the Engagement Agreement, CLC and Counter-Defendant agreed upon a fee for the performance of these services. Over the following months, CLC performed all of its services and Counter-Defendant accepted and received the value of CLC's services. (Countercl. at ¶¶ 5-6.) Despite having waited until long after CLC completed its services, and despite having received and retained the benefit of those services, Counter-Defendant now contends that the Engagement Agreement is void and seeks through this lawsuit to have monies returned to him that he agreed to pay to CLC in return for the valuable services that CLC provided. (*Id*. at ¶ 7.)

## **ARGUMENT**

### I.     **Legal Standard**

When considering a motion to dismiss for failure to state claim, courts will accept as true "all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). Although a complaint must contain "more than labels and conclusions" to satisfy Rule 12(b)(6), it does not need "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is

facially plausible if its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id*.

## II. Nothing in CROA Precludes All Defendants from Bringing an Unjust Enrichment Counterclaim as a Matter of Law.

Counter-Defendant would have this Court make a broad, sweeping holding that no defendant may *ever* bring a counterclaim for unjust enrichment against a CROA plaintiff. This argument should be rejected for several reasons. To begin, nowhere in CROA did Congress specify that credit repair organizations are precluded from bringing unjust enrichment counterclaims against CROA plaintiffs, or that such claims would be subject to the "complete bar" Counter-Defendant urges on the Court. (*See* Mot. at 1.) This purported rule is particularly dubious in the context of the facts at issue here, where a customer voluntarily sought the services of a credit repair organization, received all of the services he requested, and then, while retaining the benefit of those services, later sued to void the services contract and obtain a refund of the entire amount that he paid in return for the services.

One can certainly imagine CROA claims on facts that would not give rise to a customer's unjust enrichment, as in, for example, a case where a customer is awarded a refund of fees paid because he was not given the CROA-required notice of his cancellation right and, but for the CROA violation, he would have cancelled the services sooner. But it cannot be that Congress intended to permit a credit repair organization's customer to request its services, receive the benefit of those services, wait until after the services are successfully completed to the customer's full satisfaction, then attempt to take advantage of an alleged technical violation to rescind the contract and demand a full refund, while at the same time precluding the credit repair organization from even claiming that such a customer would be unjustly enriched if his claims succeeded.

Notably in this connection, CROA provides for the recovery of only actual and (potentially) punitive damages. *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 113 (2012) (Ginsburg, J., dissenting) (defendant in violation of CROA liable for "actual damages and attorneys' fees, and may be liable for punitive damages as well"). It does not provide for statutory damages.

Here, Counter-Defendant received full performance of all of the services he requested and retained the benefit of those services. He cannot identify any actual damages that he suffered, save for the "identifiable trifle" of the alleged loss of the time value of $300 for 90 days. And although Counter-Defendant trumpets the important interests that Congress sought to protect through CROA (*i.e.*, ensuring disclosure of statutory rights, protecting the public from unfair or deceptive advertising and business practices, protecting the public from fraudulent companies leading consumers to believe that they can repair bad credit histories, and avoiding the uninformed use of credit), Counter-Defendant does not claim that he suffered harm to *any* of those interests – not one. Nevertheless, he contends that he is entitled to a full refund of *all* amounts that he paid in return for the services he requested and received. Under such circumstances, there is no reason, and there is certainly nothing in the language of the statute to suggest, that CLC is precluded as a matter of law from claiming that the award Counter-Defendant demands would result in a windfall and his unjust enrichment.

The only decision Counter-Defendant identifies in support of the sweeping holding he urges on this Court is a 2006 order from the Northern District of Georgia in the matter *Hillis v. Equifax Consumer Services, Inc.*, 237 F.R.D. 491, 493 (N.D. Ga. 2006). *Hillis*, however, is inapposite. In *Hillis*, the CROA defendant sought to challenge the named plaintiff's adequacy as a putative class representative on the grounds that an impermissible conflict existed because,

5

unlike many members of the putative class, the named plaintiff did not receive value for the fees he paid.  *Id*. at 500.  The court held that the availability of this argument to the defendant depended on the defendant having alleged a viable set-off defense.  *Id*.  The defendant had not included set-off in its affirmative defenses, however, and the court denied the defendant leave to amend its affirmative defenses to add it.  Among the reasons the court gave was that CROA did not permit a set-off defense.  *Id*. at 500-01.

First, even if *Hillis*'s interpretation of CROA were correct (and it is not), it was reached and applied only in the context of the court's conclusion that the conflict the defendant identified was "insufficient" to undermine the named plaintiff's adequacy as a class representative, and that the defendant's motion for leave to amend was therefore futile.  *Id*.  The court certainly was not considering the viability of an unjust enrichment counterclaim generally, much less the viability of such a counterclaim brought against a plaintiff who *did* receive full performance of the services he requested to his full satisfaction.

Second, even if the question of the availability of set-off under CROA were somehow dispositive here, *Hillis* does not explain why it should be incumbent upon Congress to specifically provide for it in the statute – in fact, just the opposite is true.  It is well-settled that Congress is presumptively understood to legislate against the background of the common law (of which claims for unjust enrichment are a part).  *See Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501, U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles") (collecting cases).  Courts will not conclude that Congress limited or repealed the rights that a party would otherwise have at common law without "clear and explicit language" in the statute to the contrary.  *U.S. v. Texas*, 507 U.S. 529, 534 (1993) ("[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by

the common law"); *Norfolk Redevelopment and Housing Authority v. Chesapeake and Potomac Telephone Co. of Virginia*, 464 U.S. 30, 35 (1983) ("[i]t is a well-established principle of statutory construction that the common law ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose") (internal quotations omitted). Counter-Defendant does not and cannot identify language from CROA indicating that Congress intended to limit or repeal CLC's common law rights, much less "clear and explicit language" that "speaks directly" to any such intention. Far from precluding a defendant's right to bring an unjust enrichment claim, CROA's silence on the point indicates that Congress intended to leave it undisturbed.

Counter-Defendant otherwise cites to a series of inapposite cases that conclude that other statutes preclude indemnification and contribution claims. (*See* Mot. at 9.) First, CLC has brought a counterclaim for unjust enrichment, not a claim for contribution from some third-party defendant, and not a claim for indemnification from Counter-Defendant or any third party. Second, in contrast with CROA, the statutes to which Counter-Defendant points *all* provide for the award of statutory (not merely actual) damages. *See* 15 U.S.C. § 1681n (Fair Credit Reporting Act); 15 U.S.C § 1592k (Fair Debt Collection Practices Act); 15 U.S.C. § 1640 (Truth in Lending Act). Distinct from these statutes, where Congress contemplated the recovery of only actual damages, and where a plaintiff has "the audacity" to accept and retain the benefit of all of the services he requested, suffer at most *de minimis* damages, and then turn around and demand a refund of *all* amounts paid, there is no reason why a credit repair organization should be precluded from asserting a counterclaim that the plaintiff seeks unjust enrichment.

### III. CLC's Counterclaim is Brought in the Event the Engagement Agreement is Deemed to Be Unenforceable and Counter-Defendant's Payments Are Returned to Him.

Counter-Defendant argument that he paid for CLC's services and therefore was not unjustly enriched is without merit. CLC's counterclaim is plainly brought in the event that the

7

Engagement Agreement is deemed to be void and unenforceable, and Counter-Defendant's assertion that he has not yet been unjustly enriched is misplaced.

To state a claim for unjust enrichment, a plaintiff must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Tradesmen Int'l, Inc. v. U.S. Postal Serv.*, 234 F. Supp. 2d 1191, 1204 (D. Kan. 2002). As set forth above, CLC has alleged that it performed valuable services for Counter-Defendant's benefit, that Counter-Defendant requested those services and agreed to pay certain fees in return for them, that Counter-Defendant accepted those services, and that Counter-Defendant now seeks to retain the benefit of those services without paying for them. (*See* Countercl., ¶¶ 3-10.) CLC maintains that the Engagement Agreement remains valid and fully enforceable. However, in the event that the Engagement Agreement is deemed to be unenforceable and Counter-Defendant's payments are returned to him, CLC has properly alleged that Counter-Defendant would be unjustly enriched by retaining the benefit of CLC's services without compensating CLC. Counter-Defendant's argument to the contrary should be rejected.

## CONCLUSION

For all of these reasons, CLC respectfully requests that the Court deny Counter-Defendant's motion to dismiss and grant such further relief as the Court deems just and proper under the circumstances.

Dated: November 14, 2019

Respectfully submitted,

**CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN LLC, d/b/a CREDIT LAW CENTER, and THOMAS ADDLEMAN**

Timothy A. Hudson, *pro hac vice*
Jordan E. Wilkow, *pro hac vice*
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL  60604
Tel: (312) 762-9450
Fax: (312) 762-9451
thudson@tdrlawfirm.com
jwilkow@tdrlawfirm.com
*Attorneys for Defendants*

By:     /s/ Timothy A. Hudson
        One of Their Attorneys

By:     /s/ Chad C. Beaver
        One of Their Attorneys

- and –

Chad C. Beaver, KS Bar No. 21280
BEAVER LAW FIRM, LLC
1600 Genessee Street, Suite 920
Kansas City, Missouri 64102
Tel: (816) 579-1800
Fax: (816) 817-0540
cbeaver@beaver-law.com
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I certify that today I electronically filed the foregoing **DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE IN OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS** with the Clerk of the Court for the District of Kansas using the CM/ECF system. Counsel of record for all parties will be served by the CM/ECF system.

Dated: November 14, 2019

By: /s/ Chad C. Beaver