UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK ENSMINGER, on behalf of himself
and those similarly situated,

    Plaintiff,

v.

    Case No. 19-2147-JWL

CREDIT LAW CENTER, LLC, et al.,

    Defendants.

## **ORDER**

Keith N. Williston, who is not a party to this litigation, filed a combined motion to quash a subpoena *and* a motion for a protective order prohibiting all discovery related to his prior representation of plaintiff (ECF No. 58). The undersigned U.S. Magistrate Judge, James P. O'Hara, denied the motion to quash the subpoena because it must be filed in the district where compliance is required, i.e. in the Northern District of Illinois (ECF No. 59).[1] The defendants, Credit Law Center, LLC and Thomas Addleman, who caused the subpoena to be served on Williston, oppose the motion for protective order, arguing Williston has not shown good cause (ECF No. 60). For the reasons discussed below, the court denies the motion for protective order.

---

[1] Courts have uniformly held that "only the issuing court has the authority to quash or modify a subpoena." *High Point SARL v. Sprint Nextel Corp.*, 280 F.R.D. 586, 593–94 (D. Kan. 2012). This court does not have the jurisdiction to quash or modify the subpoena.

Background

The plaintiff. Mark Ensminger, filed this putative class-action complaint against defendants for violation of the Credit Repair Organizations Act ("CROA").[2] Williston is an attorney who previously represented plaintiff in another action in this court,[3] which was settled and voluntarily dismissed on February 19, 2018.[4] Williston has not represented plaintiff in this action in any capacity. But defendants contend Williston has remained in contact with plaintiff and has documents relevant to this action.[5] Defendant briefly previews an argument that plaintiff is an inadequate representative of the putative class because of a conflict of interest arising from his relationship with Williston, though that argument is not presently before the court.[6]

Defendants served the subpoena on Williston on October 26, 2019. Williston argues defendants served the subpoena and will continue to serve discovery only "to annoy, embarrass, and oppress Williston in an effort to indulge their delusional grudges that have been or at least could have been litigated elsewhere."[7] After conferring, defendants narrowed the items requested by subpoena to:

---

[2] ECF No. 1.

[3] *Ensminger, et al. v. Fair Collections and Outsourcing, et al.*, 16-2173-CM (D. Kan. 2018).

[4] ECF No. 65.

[5] ECF No. 60.

[6] *Id.* at 2.

[7] ECF No. 58 at 6.

2

1. All correspondence and communications (including but not limited to emails, text messages, and direct messages) with Mark Ensminger that reference or discuss the Credit Repair Organizations Act; any potential lawsuit or claims against [Credit Law Center ("CLC")] or any credit repair organization; or any payment, compensation or other benefit to be provided to or by you in connection with any potential lawsuit or claims asserted by Mr. Ensminger against CLC.

2. All documents that reference or discuss Mark Ensminger, on the one hand, and, on the other hand, the Credit Repair Organizations Act; any potential lawsuit or claims against CLC or any credit repair organization; or any payment, compensation or other benefits to be provided to or by you in connection with any potential lawsuit or claims asserted by Mr. Ensminger against CLC.[8]

What transpired between defendants and Williston is not clear in the briefing; it appears they had a dispute about Williston's continued representation of clients after he left defendants' firm.[9] Williston contends defendants now intend to seek discovery in this case, including the above-mentioned subpoena, that constitutes "yet another fishing expedition by defendants who are trying to find 'dirt' on Williston because Williston left the defendants' firm on bad terms."[10] He asserts defendants previously attempted similar inappropriate tactics in *Ensminger v. Fair Collections and Outsourcing, Inc.*, but he did not raise his objections and concerns then "out of hopes that defendants' ethical obligations

---

[8] ECF No. 58-2.

[9] ECF No. 58 at 7-9.

[10] *Id.* at 7.

3

would guide them to resolve the issues without court intervention."[11] The issue was apparently taken up in a case in the Circuit Court of Jackson County, Missouri.[12]

Williston filed the instant motion on November 6, 2019, arguing defendants should be precluded from serving any discovery into any matter related to Williston's representation of plaintiff.[13] Williston wants a protective order to obtain "relief from defendants' incessant harassment."[14]

Analysis

For the purposes of this case, defendants appear to allege financial agreements between Williston and plaintiffs' counsel could be discoverable.[15] Although Williston and defendants agree there is no present attorney-client relationship between Williston and plaintiff, defendants insinuate (though they don't clarify how) Williston may have a financial interest in this litigation.[16] Williston asserts he "knows of no documents that will

---

[11] ECF No. 62 at 6.

[12] Williston filed *Williston v. Thomas Andrew Addleman, LLC*, 1816-cv-17281, on July 9, 2018. In his motion for protective order, Williston references the answer filed in that case but did not attach an exhibit to the motion with that document. ECF No. 58 at 7. The state court held a bench trial on July 24, 2019, but no judgment has been entered in that action.

[13] *Id.* at 2.

[14] ECF No. 62 at 2.

[15] ECF No. 58 at 6.

[16] ECF No. 62 at 3.

4

be (a) responsive; (b) not be protected by privilege; (c) not already in possession of the parties; and (d) material to these proceedings."[17]

Rule 26(c) provides that upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Discovery may be proscribed or limited to prevent abuse.[18] The court has broad discretion to decide when a protective order is appropriate and what degree of protection is required.[19] The party seeking a protective order has the burden to demonstrate good cause.[20] In determining whether good cause exists, "the initial inquiry is whether the moving party has shown that disclosure of the information will result in a 'clearly defined and serious injury.'"[21] The moving party must show "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[22]

---

[17] *Id.* at 2.

[18] *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2010 WL 4226214, at *2 (D. Kan. Oct. 21, 2010.

[19] *See Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) ("The modification of a protective order, like its original entry, is left to the sound discretion of the district court."); *see also Univ. of Kan. Ctr. For Research, Inc. v. United States*, No. 08-2565, 2010 WL 571824, at *3 (D. Kan. Feb. 12, 2010) (citing *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007)) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

[20] *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) (citing *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000)).

[21] *Reed*, 193 F.R.D. at 691 (citing *Zapata v. IBP, Inc.*, 160 F.R.D. 625, 627 (D. Kan. 1995) (internal quotations omitted)).

[22] *Univ. of Kan. Ctr. For Research*, 2010 WL 571824 at *3 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

The rule contemplates that "any person from whom discovery is sought" may move for a protective order, like Williston here.[23]

After reviewing the briefing, the court finds Williston has not shown good cause to justify the scope of the requested protective order. Although Williston argues the subpoena seeks irrelevant and privileged information, imposes a undue burden, and constitutes harassment, he does not explicitly reassert these objections in his protective-order argument. Indeed, Williston doesn't make any specific arguments to support the motion for protective order, beyond the harassment argument. Tellingly, Williston does not cite to any case law to support his position that all discovery related to his representation of plaintiff should be precluded. Rather, Williston offers a factual summary of what he contends is defendants' dogged pursuit of discovery in various actions "to annoy, embarrass, and oppress Williston and subject him to undue expense and delays."[24] But the court, to be comprehensive in its analysis, addresses Williston's arguments related to the subpoena in the context of a protective order.

Relevance

Williston asserts "nothing in [his] relationship with plaintiff will contribute to this litigation for either party."[25] Defendants contend Williston does possess relevant information, related to the putative class representative's stake in the controversy and

---

[23] *High Point SARL v. Sprint Nextel Corp.*, 280 F.R.D. 586, 592 (D. Kan. 2012).

[24] ECF No. 62 at 6.

[25] *Id.* at 2.

6

financial motivations.[26] The fitness of plaintiff as a class representative is not before the court today. Regardless, the court need not, at this point, decide whether the discovery requests are relevant. "Rule 26(c) does not provide for any type of order to protect a party from having to provide discovery on topics merely because those topics are overly broad or irrelevant."[27] The court may only rule on the validity of objections of relevance in the context to compel.[28] The court declines to enter a protective order on the basis that the discovery sought is irrelevant.

Privilege

Second, Williston argues any responsive documents he possesses would be covered by the attorney-client privilege.[29] However, privilege is not a valid basis for a protective order under Rule 26(c). Williston may raise privilege objections as to certain discovery requests or in response to a subpoena. The court notes, though, "it is well-established in this District that blanket claims of attorney-client privilege or work-product protection do not satisfy the objecting party's burden of proof."[30] Thus, if Williston were to object on

---

[26] ECF No. 60 at 5.

[27] *In re Urethane Antitrust Litig.*, 2010 WL 4226214, at *3; *Kansas Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605-JWL-DJW, 2005 WL 327144, at *2 (D. Kan. Feb. 3, 2005).

[28] *In re Urethane Antitrust Litig.*, 2010 WL 4226214, at *3.

[29] ECF No. 62 at 2.

[30] *Kemp v. Hudgins*, No. 12-2739-JAR-KGG, 2013 WL 4857771, at *2 (D. Kan. Sept. 10, 2013) (citing *Linnebur v. United Telephone Ass'n,* No. 10–1379–RDR, 2012 WL 1183073,*4 (D. Kan. April 9, 2012)).

7

the grounds of attorney-client privilege to future discovery, he would need to reference specific requests he contends are improper. Otherwise, the court cannot determine whether any request is actually objectionable. The court also notes not all communications to plaintiff would be privileged merely because Williston at one time represented him.[31] The court declines to enter a protective order on the basis of privilege.

Undue Burden

Third, Williston argues any discovery related to his representation of plaintiff imposes an undue burden on him. The court considers whether Williston has met his burden of submitting "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[32] An affidavit or evidentiary proof is the best way to demonstrate undue burden, though the court does not require it.[33] At a minimum, plaintiff must provide a "detailed explanation as to the nature and extent of the claimed burden or expense."[34]

---

[31] *"Nor is information privileged simply because it comes from an attorney. The mere fact that one is an attorney does not render everything he does for or with the client privileged." In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005).

[32] *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2010 WL 4226214, at *4 (D. Kan. Oct. 21, 2010); *Kansas Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605-JWL-DJW, 2005 WL 327144, at *3 (D. Kan. Feb. 3, 2005).

[33] *In re Urethane Antitrust Litig.*, 2010 WL 4226214, at *4; *Kansas Waste Water, Inc. v. Alliant Techsystems, Inc.*, 2005 WL 327144, at *3.

[34] *In re Urethane Antitrust Litig.*, 2010 WL 4226214, at *4; *Kansas Waste Water, Inc. v. Alliant Techsystems, Inc.*, 2005 WL 327144, at *3.

As proof of the undue burden, Williston submits he would have to create a privilege log, which would be a "a waste of judicial resources and an abuse of Rule 45."[35] Williston is an attorney who is equipped to create a privilege log if necessary. He does not offer a detailed explanation as to why the expenses or effort required would be extraordinary. While the court recognizes there are resources involved in creating and evaluating a privilege log, the court does not find it so burdensome as to constitute good cause for granting a protective order.

Harassment

Finally, Williston argues defendants are only serving him discovery for the purpose of abusing court processes to harass, annoy, and embarrass him.[36] Defendants argue Williston fails to "specifically identify any reason why responding to CLC's narrow request for a limited set of documents (concerning topics directly related to plaintiff's claims and this lawsuit) would cause him the undue annoyance, embarrassment or oppression necessary to merit a protective order."[37] Defendants characterize Williston's motion as "the airing of a series of grievances he has with CLC that are unrelated to the matter before the court."[38]

---

[35] ECF No. 58 at 5.

[36] *Id.* at 7.

[37] ECF No. 60 at 3.

[38] *Id.* at 3.

Courts have determined "conclusory claims of annoyance, harassment, and embarrassment are not sufficient to satisfy an objecting party's burden when seeking a protective order under Rule 26(c)."[39] Again, the court looks for a particular and specific demonstration of fact.[40] Although relevance is not a *basis* for a protective order, the court may consider it in its evaluation of whether certain discovery "bolsters the annoyance and harassment to nonparties."[41]

The court acknowledges Williston has asserted more than conclusory statements to illustrate his argument defendants are attempting to "'drain the pond' in pursuit of a baseless theory that Williston is somehow 'conspiring' against defendants."[42] Specifically, Williston outlines past litigation with defendant involving their dispute over the scope of representation in other cases and the allocation of funds from those cases.[43] He contends those issues have been fully litigated (though not resolved) and there is no need to address them in this case.[44]

---

[39] *Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *5 (D. Kan. May 2, 2017).

[40] *Stewart v. Mitchell Transp.*, No. 0CIV.A. 01-2546-JWL, 2002 WL 1558210, at *6 (D. Kan. July 11, 2002).

[41] *Azim v. Tortoise Capital Advisors, LLC*, No. 13-2267-DDC, 2015 WL 197325, at *4 (D. Kan. Jan. 14, 2015).

[42] ECF No. 58 at 6.

[43] *Id.* at 6.

[44] ECF No. 58 at 8.

The court declines to issue an order barring all discovery into any matter related to Williston's representation of plaintiff. Defendants represent they are not seeking documents or communications related to Williston's representation of plaintiff in the *Ensminger v. Fair Collections and Outsourcing, Inc.* case.[45] Although the court doesn't know the full scope of discovery defendants may seek from Williston beyond the subpoena, if any, it appears thus far the discovery is reasonably related to this case and not served for the sole purpose of annoying or harassing Williston. The scope of discovery is broad and includes "any non-privileged matter that is relevant to any party's claim or defense."[46] Generally, courts lean toward resolving doubt over relevance in favor of discovery.[47] Williston has not shown the discovery served to him thus far rises to the level of harassment.

Although the court acknowledges Williston's frustration at his involvement in this litigation, on balance, the court finds there is not good cause for a protective order regarding *all* discovery related to Williston's relationship with plaintiff. Williston may continue to pursue the motion to quash the subpoena in the appropriate court and may object to specific discovery requests as necessary.

---

[45] ECF No. 60 at 6.

[46] *Carter v. Spirit Aerosystems, Inc.*, No. 16-1350-EFM-GEB, 2018 WL 6249991, at *1 (D. Kan. Nov. 29, 2018).

[47] *Id.*

IT IS THEREFORE ORDERED that Williston's motion for protective order (ECF No. 58) is denied.

Dated November 26, 2019, at Kansas City, Kansas.

s/ James P. O'Hara  
James P. O'Hara  
U.S. Magistrate Judge