UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK ENSMINGER, on behalf of himself
and those similarly situated,

      Plaintiff,

      v.

CREDIT LAW CENTER, LLC, et al.,

      Defendants.

Case No. 19-2147-JWL

## **ORDER**

The plaintiff, Mark Ensminger, has filed a motion to compel discovery responses from the defendants, Credit Law Center, LLC ("CLC") and Thomas Addleman (collectively, "Defendants") (ECF No. 81). Defendants oppose the motion, arguing they have already produced responsive information and any additional information is improperly sought and objectionable. For the following reasons, the motion is granted in part and denied in part. Defendants are directed to produce the dates of actual retainer payments to the putative class members but are not required to produce each client file, as requested.

As a threshold matter, the court first considers whether the parties have sufficiently conferred, as required by D. Kan. R. 37.2. As represented in the briefing and in plaintiff's certificate of compliance, the parties conferred a number of times by e-mail and telephone,

in addition to requesting a telephone conference with the court.[1]  The undersigned U.S. Magistrate Judge, James P. O'Hara, is satisfied the parties have adequately conferred and turns to the requests at issue.

Background

Plaintiff filed his class action complaint on March 15, 2019, alleging defendants violated the Credit Repair Organizations Act ("CROA") in their dealings with the putative class member clients.  The presiding U.S. District Judge, John W. Lungstrum, dismissed Counts 2, 3, and 4 of plaintiff's amended complaint, leaving only the claim that defendants' receipt of a retainer from plaintiff and other putative class members violated a provision of CROA.  Plaintiff served his first set of discovery requests on July 23, 2019.[2]  Defendants served responses on September 10, 2019 and, after conferring with plaintiff, served supplemental responses on October 31, 2019.[3]  After depositions began, plaintiff requested supplemental information regarding revenue information and training materials, which defendants served on January 30, 2020.[4]

There remains an ongoing dispute over production of certain class-member information.  To summarize the crux of this dispute, plaintiffs allege they served discovery to obtain a list of all clients who had actually paid a retainer during the relevant time

---

[1] ECF No. 73.  The undersigned directed the parties to brief the issue, given its nuances, rather than hold a telephone conference.

[2] ECF No. 83.

[3] *Id.*

[4] *Id*.

period.[5]  When they learned during the deposition of defendants' corporate representative that the spreadsheet only identified those who had *agreed* to a retainer, rather than those who had *paid*, plaintiff requested a supplement to identify the retainers that were actually paid, along with the date of the first billable event.[6]  Defendants disagree and assert they produced the requested information by providing a spreadsheet of 20,531 people who had entered into engagement agreements since March 15, 2014, and who had agreed to provide retainers.[7]  Defendants argue plaintiff's requests do not require them to provide the dates or amounts of retainer payments or other billable events, and that plaintiff has failed to properly request to request that discovery.

The court first looks to the actual text of the subject discovery request.  Plaintiff's Interrogatory No. 2 reads:

> Identify each person in the United States who (1) entered into an Engagement Agreement with Defendants (2) since March 15, 2014, (3) who had paid a retainer to Defendants at the time of execution of the Engagement Agreement or prior to full performance of the contracted for credit repair services.
>
> Also, please state the date of each agreement and the total number of persons who meet this criteria.
>
> If you contend that a full response to this interrogatory is impossible, please explain why with specificity, and provide the most complete response possible.

---

[5] ECF No. 82 at 2.

[6] *Id.*

[7] ECF No. 84 at 4.

The corresponding Document Request, No. 1, seeks "the complete database tables showing the information requested in Interrogatory Numbers 2-4.  If this request is impossible to satisfy, produce electronic information in CSV format sufficient to show as much of the information as possible."[8]   Defendants objected to the interrogatory on the grounds that it requested confidential, personal identifying information.  They also argued the interrogatory was vague as to whether it was requesting information about people who had paid prior to full person for *all* contracted-for services or *any* contracted-for services.  Notwithstanding the objections, defendants answered "none" as to the portion who had paid a retainer to defendants at the time of execution of the agreement.  And defendants produced a spreadsheet of 20,531 people who had entered into engagement agreements since March 15, 2014, and who had agreed to provide retainers.[9]  This list did not provide the dates on which any putative class member actually did provide a retainer.[10]

Defendants argue plaintiff is now revising his request to encompass each person in the United States who paid a retainer to CLC since March 15, 2014,[11] rather than the subgroup of people who had paid the retainer at the time of execution of the Engagement Agreement or prior to full performance of the contracted-for credit repair services.  Plaintiff argues he has not changed the scope of his request.  Defendants object to the discovery

---

[8] ECF No. 81-2 at 5.

[9] ECF No. 84 at 4.

[10] *Id.* at 5.

[11] *Id.* at 4.

4

requests on three grounds: (1) the pending motion was untimely served; (2) plaintiff has mischaracterized his initial request; (3) the requests are overbroad, unduly burdensome, and not proportional to the needs of the case.

Analysis

First, defendants argues plaintiffs' the motion is untimely. Defendants served their initial discovery responses on September 10, 2019. D. Kan. R. 37.1(b) requires a motion to compel "must be filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion." Defendants argue, even if the court liberally construes the parties' ongoing communication related to the discovery, plaintiff knew of defendants' final response by February 5, 2020. Plaintiff did not request the telephone conference with the court until March 27, 2020 and did not file his motion to compel until April 13, 2020.

Given the somewhat unusual procedural history of this particular case, the court will exercise its discretion and decline to deny plaintiff's motion to compel on the basis of this timeline. Plaintiff's delay in moving to compel was caused by the parties' ongoing efforts to confer, including defendants' supplemental productions and assurances that the issue could be resolved.[12] Given the steady communication and multiple productions related to

---

[12] *See Shultz v. Blue Cross & Blue Shield of Kansas, Inc.*, No. 09-1220-WEB, 2010 WL 5067629, at *1 (D. Kan. Dec. 7, 2010) ("D. Kan. Rule 1.1 provides that the court may modify the district court's local rules to 'avoid injustice.' Under the circumstances, denying plaintiff's motion to compel merely because more than 30 days passed after defendant's original response would be an 'injustice.'").

5

this discovery, the court believes plaintiff reasonably waited to file his motion to compel until such time as the parties could not agree on a resolution of the issues.

Scope of Request

Defendants argue plaintiff is now seeking information beyond his originally served discovery requests. Specifically, defendants contend the requests do not seek "anything whatsoever (either explicitly or implicitly) about the date on which each putative class member actually provided a retainer, the "amount" of any such retainer, the date of each such client's "first billable event," or "client files.""[13] Defendants argue these requests "do not directly or indirectly request, and cannot reasonably be read to request, the information plaintiff now demands."[14] Defendant points to plaintiff's decision not to serve additional discovery requesting that specific information. Plaintiff, on the other hand, contends that information was sought in the initial requests.

The court construes the parties' efforts to clarify the requests as good faith attempts to avoid involving the court. However, the court notes the string of communications is confusing, at best, as to both what plaintiff sought and how defendants produced it. Plaintiff could have and perhaps should have directed specific supplementary discovery to target this information, given the apparent difficulties the parties had in communicating throughout this process.

---

[13] ECF No. 84 at 8.

[14] *Id.*

6

But based on the plain language of the interrogatory, the court concludes plaintiff has been seeking a list of people who have actually paid the retainer since serving the initial discovery. Interrogatory No. 2 specifically asks for the list of people who "had paid a retainer," not the list of people who had agreed to pay. It is accurate that the interrogatory does not seek the date or amount of payment (rather, the interrogatory seeks the date of the engagement agreement). But defendants agreed to, and ostensibly did, provide a spreadsheet "identifying customers who paid a retainer since March 15, 2014 . . . without admitting or otherwise conceding that such retainers were paid prior to full performance of any service."[15] Plaintiff accordingly relied on that spreadsheet to "confirm which CLE clients actually paid their retainers."[16]

Defendants then revised their position, asserting the list didn't actually capture those who had made their payments. Thus began the instant dispute between the parties as to what could actually be produced. Because plaintiff has requested the list of people who had paid the retainer from the outset, then relied on what defendants produced in response, the court is unpersuaded by defendants' argument that plaintiff has improperly served discovery requests through e-mail or phone communications.

Relevance

Defendants argue, even if the court finds the information has been properly requested, the court should still deny the requests as irrelevant, overbroad, unduly

---

[15] ECF No. 87 at 2; ECF No. 81-1.

[16] ECF No. 87 at 2.

burdensome, and not proportional to the needs of the case. As an initial matter, defendants have waived any objections by answering the interrogatory along with their objections. Courts in this district have held plaintiffs "effectively waive all objections in their discovery responses by simultaneously asserting objections while responding with an offer to comply with defendant's requests subject to their objections."[17] Conditional responses are not permitted. Whenever an answer accompanies an objection, the objection is deemed waived and the answer, if responsive, stands.[18] Defendants' objections are waived.

Even if defendants had not conditionally responded, their objections are insufficient. Relevance is broadly construed for purposes of pretrial discovery. A request generally will be allowed unless it is clear the information sought has no bearing on the claim or defense of a party.[19] If a discovery request appears relevant on its face, the party opposing discovery has the burden of showing that the request falls outside the scope of Fed. R. Civ. P. 26(b)(1). But if the relevance of the discovery request is not readily apparent, the burden of showing its relevance is on the party requesting discovery.[20]

The information sought here is relevant. Plaintiff's remaining claim is based on allegations that defendants improperly collected retainers from putative class members

---

[17] *Fasesin v. Henry Indus., Inc.*, No. 13-2490-JTM-GEB, 2016 WL 3654740, at *4 (D. Kan. July 8, 2016).

[18] *Id.* (citing *Gust v. Wireless Vision, L.L.C.*, No. 15-2646-KHV, 2015 WL 9462078, at *1 (D. Kan. Dec. 24, 2015)).

[19] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001).

[20] *Hammond v. Lowe's Home Centers, Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003).

before completing the agreed-upon credit repair services.[21] The proposed class is defined by the timing of payment in relation to the timing of full performance of credit repair services.[22] Information about the date of payment of the retainer, therefore, is very relevant to this analysis. As discussed below, depending on the method of production, each client's entire file, however, is not necessarily relevant.

Undue Burden

A party objecting to discovery on the grounds that the request is overbroad has the burden to support its objection, unless the request is overbroad on its face.[23] Defendants have the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[24] "[E]ven if the production of documents would cause great labor and expense or even considerable hardship and the possibility of injury to its business," the party objecting is still "required to establish that the hardship would be undue and disproportionate to the benefits" to the party requesting the documents.[25] The court will balance the burden on the interrogated

---

[21] ECF No. 82 at 8.

[22] *Id.*

[23] *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364 at *2 (D. Kan. Jan. 31, 2002) (citing *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997)).

[24] *Fulghum v. Embarq Corp.*, No. 07-2602-EFM, 2011 WL 13237614, at *4 (D. Kan. Nov. 4, 2011).

[25] *Id.* (quoting *Manning v. General Motors*, 247 F.R.D. 646, 654 (D. Kan. 2007)).

party against the benefit to the discovering party of having the information.[26] Discovery will be allowed unless the hardship imposed on the interrogated party is unreasonable compared to the benefits to be secured from the discovery.[27] And even if an interrogatory or document request is overly broad in nature, a party generally has a duty to respond to the extent the interrogatory or request can be narrowed to an appropriate scope.[28]

The court finds that defendants have not met their burden of showing that the burden imposed on them by reviewing the files is undue and disproportionate to the benefits plaintiffs would gain from the discovery. It is undisputed the information can be produced. Indeed, defendants represent they offered to supplement their spreadsheet to "show the 'credits' for each putative class member (the vast majority of which would relate only to retainers)."[29]

What remains to be decided is the most efficient way to produce this information. After reviewing the briefing, the court believes the method defendants have apparently been offering (the one they claim plaintiff never formally requested through discovery) is preferable. Defendants represent they are able to "supplement the spreadsheet to show the

---

[26] *Id.* (citing *McBride v. Medicalodges, Inc.*, No. 06-2535, 2008 WL 1958350, at *4 (D. Kan. May 2, 2008)).

[27] *Id.*

[28] *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006).

[29] ECF No. 84 at 6.

dates on which it issued invoices to putative class members – which CLC could export from its Credit Money Machine software, not from the client files."[30]

Based on defendants' representation that they can show the dates on which it issued invoices through their software, the method plaintiff proposes – submitting both the date of the retainer payments and the dates of the first billable events – may not be necessary. Those specific terms were not included in Interrogatory No. 1. Further, it appears plaintiff's characterization of the "first billable event" may be overly broad, as defendants represent a billable event "will have happened at any time between the bureaus' receipt of CLC's letters disputing the item and CLC's periodic review of its clients' credit reports."[31]

Defendants are the ones most familiar with their own systems, and the court is inclined to defer to the parties as to how to most efficiently produce the data. But, to be clear, the court is directing defendants to produce the dates of actual payments of retainers. So if they cannot produce that information for all putative class members through the method they proposed to plaintiff, they should turn to plaintiff's proposed method and "identify which CLC customers fall within the scope of these requests [by comparing] the dates of their retainer payments against the corresponding dates of their first billable events."[32] Defendants' representative testified that it was possible to determine which customers had actually paid retainers by pulling their first billable event through the

---

[30] *Id.* at 16.

[31] *Id.* at 17.

[32] ECF No. 87 at 4.

company's processing software.[33]   Defendants represented that whether a client had provided a retainer is recorded internally as a "credit," but that other non-retainer information also is recorded as a "credit."[34]   To determine whether the retainer is reflected in the database would require defendants to manually check each client's customer file to determine the reason for the credit.[35]   This method will ostensibly be more time-consuming but not unduly burdensome.

That said, it does not seem that producing the client file to plaintiff is necessary for this task.  The court will not, at this time, rule that the entire client file is relevant and discoverable.  Similarly, the court is not persuaded that defendants must produce the amount the retainer payment made.  The amount of the retainer was not sought in the initial request.  Plaintiff argues that information is necessary to determine whether a particular credit on an account reflects a retainer, as opposed to a different type of credit.  If defendants can reasonably produce the requested information – the dates of retainer payments – without producing the amount of retainer payment, that would be sufficient. From the parties' descriptions of their processes, it seems likely defendants can review their files and determine the relevant dates of payment without producing the amount of retainer payment.  But if, upon review, the only way to determine the dates is to simultaneously produce the amount of the payment retainer, then defendants must do so.

---

[33] ECF No. 82 at 5.

[34] ECF No. 84 at 5.

[35] *Id.* at 5.

13

IT IS THEREFORE ORDERED that plaintiff's motion to compel is granted in part. By **May 18, 2020**, defendants must produce the dates of actual retainer payments for the putative class members.

Dated May 4, 2020, at Kansas City, Kansas.

                                           s/ James P. O'Hara
                                           James P. O'Hara
                                           U. S. Magistrate Judge