UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK ENSMINGER, on behalf of himself
and those similarly situated,

       Plaintiff,

                                     Case No. 19-2147-JWL

       v.

CREDIT LAW CENTER, LLC, et al.,

       Defendants.

## <u>ORDER</u>

The defendants, Credit Law Center, LLC ("CLC") and Thomas Addleman, have filed a motion for protective order (ECF No. 90). They seek to preclude the plaintiff, Mark Ensminger, from serving certain discovery, arguing it's precluded by an order previously entered by the court. In addition, they argue the discovery is irrelevant and unduly burdensome. Plaintiff opposes the motion, arguing the discovery is not precluded by the court's previous order, and further arguing the discovery is relevant and would impose no undue burden. Plaintiff has also filed a motion to amend the scheduling order (ECF No. 98), which defendants do not oppose. For the reasons discussed below, the court denies defendants' motion for protective order and grants plaintiff's motion to amend the scheduling order.

<u>Background</u>

A detailed summary of the procedural background of this case is necessary to understand the issues raised by defendants' motion. On March 15, 2019, plaintiff filed this putative class-action complaint for violation of the Credit Repair Organizations Act

("CROA").[1]  On July 23, 2019, plaintiff served his first set of discovery requests.[2]  On April 1, 2020, the same day the fact-discovery deadline in the court's original scheduling order was set to expire, and before filing any motion to compel, plaintiff filed a motion to amend the court's scheduling order and extend the discovery deadline, based on the ongoing discovery dispute relating to class data and to seek "additional time to complete fact discovery due to unforeseen circumstances."[3]  Defendants didn't oppose a limited extension but opposed the request to allow all fact discovery as overbroad and unnecessary.[4]

The amended scheduling order entered by the court on April 7, 2020 granted plaintiff's request for extension of time, extending fact discovery 90 days, but significantly didn't limit the subject matter of such discovery.[5]  The court did note defendants' position that discovery should be limited to the then-forthcoming motion to compel and the deposition of Paige White, but the court intentionally didn't incorporate that limitation in its order.  Rather, the amended scheduling order granted plaintiff's request and stated "[b]ased on the scope of the disputed discovery, it seems reasonably likely the parties will

---

[1] ECF No. 1.

[2] ECF No. 83.

[3] ECF No. 76 at 2.

[4] ECF No. 78 at 1-2.

[5] ECF No. 80.

have additional follow-up to conduct."[6]  The order allowed for "both the possibility of supplemental discovery and the uncertainty of rescheduling depositions during the pandemic."[7]

The court ruled on plaintiff's motion to compel related to his first set of discovery on May 4, 2020.[8]  That order granted plaintiff's request to produce the list of clients who actually submitted a retainer payment for credit repair services, along with the dates of those actual payments.[9]  The court denied to compel to obtain the amounts of the retainers because that information was not included in the request.[10]

Plaintiff served his second set of discovery on May 8, 2020.  This set seeks the amount of the retainers paid by clients, in addition to a range of other information.[11]  Plaintiff also asserts the discovery relates to "defendants' attacks on the previously-produced class discovery."[12]  Before filing their motion for a protective order, defendants asked plaintiff to withdraw the discovery, arguing it improperly sought information unrelated to the motion to compel, which they maintain is precluded.  Plaintiff argues any

---

[6] *Id.* at 1.

[7] *Id.* at 2.

[8] ECF No. 88.

[9] *Id.*

[10] *Id.*

[11] ECF No. 89.

[12] ECF No. 99 at 3.

denial to compel discovery in the first order was because the discovery wasn't previously requested, not because the court found it objectionable.[13]  In the instant motion, defendants raise this point – they argue plaintiff was limited in what discovery he could serve to supplemental discovery related to the motion to compel.[14]  The court disagrees.

Plaintiff's first motion to compel centered on a dispute over whether the first set of discovery sought information about the date on which putative class members provided a retainer, the amount of the retainer, the date of the first billable event, and the client files.[15]  Defendants argued plaintiff sought information beyond his originally-served request, while plaintiff argued he had sought that information initially.[16]  Defendants are correct that the court declined to compel production of certain information, including the client files, retainer amounts, and initial invoice dates.[17]  The court's May 4, 2020 order stated that each client's entire file might not be relevant, depending on the method of production.  The court directed defendants to produce the dates of actual payments of retainers.[18]  The court allowed for the possibility that defendants' proposed method, exporting the dates from its Credit Money Machine software, wouldn't work, in which case they should compare the

---

[13] *Id.* at 4.

[14] ECF No. 102 at 2.

[15] ECF No. 88 at 6.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 11.

dates of the retainer payments against the dates of their first billable events, ostensibly using the client file.[19]  The court referenced the possibility of using the client file to get that information but explicitly stated it was not ruling the entire client file to be relevant.

Notably, plaintiff requested the amount of the retainer payment in his motion. Plaintiff argued the information was necessary to determine whether a particular credit reflected a retainer, versus a different type of credit.[20]  Because plaintiff had *not* requested that information in his initial requests, the court ruled defendants didn't have to produce the amount at that time.[21]  But, as discussed above, nothing in the order ruled that plaintiff *couldn't* request the information in the future, nor was any particular subject deemed objectionable.  And plaintiff did not represent in his motion to extend the scheduling order that it was solely to expound on specific discovery issues.  The language in the motion and in the court's resulting order do not limit the scope of discovery.

Once plaintiff served his second set of discovery, the parties conferred over the disputed issues by telephone on June 1, 2020 and June 4, 2020.[22]  Plaintiff represents he offered to pay an independent expert to extract the client files requested in Request No. 6, and offered to narrow the scope of the request of the database tables when he received the

---

[19] *Id.*

[20] *Id.* at 12.

[21] *Id.*

[22] ECF No. 99 at 4.

row and column headings for each field in the database.[23]  Plaintiff represents defendants did not respond to these proposals until after filing their motion for protective order.[24] Importantly, plaintiff asserts the parties have not conferred regarding multiple interrogatories and requests.  Plaintiff expresses belief "the parties ostensibly could have reached an agreement with respect to some of those requests"[25] and concludes "the court must now allocate resources to several discreet issues that the parties could have – and in some instances, would have – resolved by agreement."[26]  Defendants disagree and represent the parties "covered all of the matters at issue in this motion"[27] in their efforts to confer.

Analysis

Under Rule 26(c) of the Federal Rules of Civil Procedure, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Discovery may be proscribed or limited to prevent abuse.[28]  The court has broad discretion to decide when a protective

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 20.

[26] *Id.*

[27] ECF No. 102 at 18.

[28] *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2010 WL 4226214, at *2 (D. Kan. Oct. 21, 2010.

order is appropriate and what degree of protection is required.[29]   The party seeking a

protective order has the burden to demonstrate good cause.[30]   In determining whether good

cause exists, "the initial inquiry is whether the moving party has shown that disclosure of

the information will result in a 'clearly defined and serious injury.'"[31]   The moving party

must show "a particular and specific demonstration of fact, as distinguished from

stereotyped and conclusory statements."[32]

Relevance

The parties focus much of their arguments on relevance.  Defendants assert the issue

in this case is whether they collected retainers before they fully performed the credit

services at issue.  Their position is that plaintiff is misconstruing the fundamental issue to

seek discovery that is irrelevant to what is actually central to the case.  But "Rule 26(c)

does not provide for any type of order to protect a party from having to provide discovery

---

[29] *See Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) ("The modification of a
protective order, like its original entry, is left to the sound discretion of the district court.");
*see also Univ. of Kan. Ctr. For Research, Inc. v. United States*, No. 08-2565, 2010 WL
571824, at *3 (D. Kan. Feb. 12, 2010) (citing *MGP Ingredients, Inc. v. Mars, Inc.*, 245
F.R.D. 497, 500 (D. Kan. 2007)) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36
(1984)).

[30] *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) (citing *Reed v.
Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000)).

[31] *Reed*, 193 F.R.D. at 691 (citing *Zapata v. IBP, Inc.*, 160 F.R.D. 625, 627 (D. Kan. 1995)
(internal quotations omitted)).

[32] *Univ. of Kan. Ctr. For Research*, 2010 WL 571824 at *3 (citing *Gulf Oil Co. v.
Bernard*, 452 U.S. 89, 102 n.16 (1981)).

on topics merely because those topics are overly broad or irrelevant."[33]  Such an objection

is not a basis upon which the court may enter a Rule 26(c) protective order.[34]  Although a

party may request a protective order to preclude inquiry into matters outside the scope of

appropriate discovery, it still must demonstrate the order is necessary to protect against one

of the enumerated conditions, i.e., embarrassment, oppression, or undue burden or

expense.[35]  The court may only rule on the validity of objections of relevance in the context

to compel.[36]  The court, therefore, declines to enter a protective order on the basis that the

discovery sought is irrelevant.

<u>Undue Burden</u>

Defendants also argue plaintiff's discovery imposes an undue burden.  The court

considers whether defendants have met their burden of submitting "a particular and specific

demonstration of fact, as distinguished from stereotyped and conclusory statements."[37]

---

[33] *In re Urethane Antitrust Litig.*, 2010 WL 4226214, at *3; *Kansas Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605-JWL-DJW, 2005 WL 327144, at *2 (D. Kan. Feb. 3, 2005); *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534–35 (D. Kan. 2003) ("Rule 26(c) does not provide for any type of order to protect a party from having to divulge privileged information or materials that are not calculated to lead to the discovery of admissible evidence.").

[34] *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534–35 (D. Kan. 2003).

[35] *Creative Consumer Concepts, Inc. v. Kreisler*, No. CV 05-2045-CM-DJW, 2005 WL 8160411, at *2 (D. Kan. Sept. 2, 2005).

[36] *In re Urethane Antitrust Litig.*, 2010 WL 4226214, at *3.

[37] *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2010 WL 4226214, at *4 (D. Kan. Oct. 21, 2010); *Kansas Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605-JWL-DJW, 2005 WL 327144, at *3 (D. Kan. Feb. 3, 2005).

Plaintiff argues defendants have failed to carry their burden by providing an affidavit or other evidence to substantiate the objection.[38]  Although an affidavit or evidentiary proof is the best way to demonstrate undue burden, the court does not require it.[39]  At a minimum, the party must provide a "detailed explanation as to the nature and extent of the claimed burden or expense."[40]

Plaintiff argues defendants haven't adequately shown there is an undue burden because they haven't offered any evidence as to the costs of responding to the requests, how long it would take to do so, or "why producing why of the electronic files sought here – a standard task in class action litigation … could warrant a broad protective order that encompasses all of the Second Set of Discovery Requests."[41]  Defendants have included the affidavit of Bo Thomas, the chief executive officer of CLC.[42]  The affidavit describes the scope of the individual client files and estimates the time for reviewing all files would take over 500 hours and cost approximately $14,000.[43]  Beyond that, the affidavit mainly describes the company's invoicing system.  The court agrees defendants haven't specifically set forth sufficient information to justify a protective order encompassing *all*

---

[38] ECF No. 99 at 2.

[39] *In re Urethane Antitrust Litig.*, 2010 WL 4226214, at *4; *Kansas Waste Water, Inc. v. Alliant Techsystems, Inc.*, 2005 WL 327144, at *3.

[40] *Id.*

[41] ECF No. 99 at 6.

[42] ECF No. 90-3.

[43] *Id.* at 4-5.

of plaintiff's discovery requests, which involve much more than just the request for the individual client files.

Even if a party hasn't met its evidentiary burden, there is an exception that applies when discovery requests are unduly burdensome on their face.[44]  The court must therefore determine whether plaintiff's requests are unduly burdensome on their face.  Defendants argue plaintiff's supplemental discovery is an attempt to "throw open the doors for wide-ranging new discovery, far beyond that which plaintiff identified to justify his requested extension."[45]  The court is mindful of the scope of information that has already been produced.  Defendants have produced information "identifying all clients during the relevant time period who provided a retainer to CLC, the date(s) on which each client entered into his/her engagement agreement with CLC, the retainer amount set forth in those agreements, and the date on which each such client provided his/her retainer payment."[46] Defendants also argue their corporate representative "testified extensively regarding CLC's practices as to the work it performs in the hours and days after a client enters into his or her agreement with CLC."[47]  But, as discussed above, the court cannot say that any of these requests are unduly burdensome merely because they are not directly tied to the discovery in the previous motion to compel.  Defendants' argument fails there.

_____

[44] *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 537–38 (D. Kan. 2003).

[45] ECF No. 102 at 5.

[46] ECF No. 90 at 11.

[47] *Id.*

The undue-burden analysis is somewhat tied to the relevance issue. Plaintiff appears to frame the ultimate issue as whether a retainer payment occurred before the completion of *the agreed-upon* credit repair services.[48] Defendants frame the issue as whether a retainer payment occurred before *any* credit repair services were completed. The distinction is important, as defendants argue, in what discovery it might make relevant. For example, information about invoices and additional services after receiving a retainer, dates of other work done, and wide-ranging client notes, may reasonably relate if the issue is whether the payment occurred before all services were completed. What would constitute an undue burden in one interpretation may be reasonably-tailored discovery in another interpretation. As the record stands, the court is not persuaded the discovery is unduly burdensome on its face. The parties dispute the meaning of the relevant statute, a dispute better suited for dispositive motions. The court is not inclined to limit the scope of discovery when the merits of the case are in dispute.

Ultimately, defendants have not met their burden for a protective order encompassing everything in this set of discovery. Their argument that plaintiff wasn't allowed to serve this discovery in the first place is unavailing. Defendants have shown, through their motion, that there *would* be a substantial amount of information to be produced, but that doesn't convince the court of an undue burden in producing it. To bolster their argument, defendants rely heavily on the relevance point. But the court,

---

[48] ECF No. 99.

mindful of case law limiting the scope of motions for protective orders,[49] declines to rule based on relevance.

As plaintiff forecasts, declining to rule on the relevance objections almost certainly means the "the parties will be briefing these same issues when defendants repeat their same objections."[50]  But, as discussed above, the relevance analysis isn't appropriate in the context of the protective order.  Additionally, based on plaintiff's representation that the parties have not adequately conferred regarding many of these disputed issues, the court declines to exercise its broad discovery power and rule on the objections at this time.  Fed. R. Civ. P. 37(a)(1) requires motions to compel discovery "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  In addition, D. Kan. R. 37.2 states,

> The court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37 . . . unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion.  Every certification required by Fed. R. Civ. P. 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery or disclosure

---

[49] *See, e.g.*, *P.S. v. Farm, Inc.*, No. 07-CV-2210-JWL, 2009 WL 483236, at *6 (D. Kan. Feb. 24, 2009) (finding objections based on overbreadth and relevance were "misplaced because such objections are not a basis for entering a protective order under Rule 26(c)"); *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1652056, at *4 (D. Kan. June 6, 2007) (entering a protective order to bar a deposition until the party's objections as to "vagueness, overbreadth, and relevance" were resolved was "clearly improper.  Such resolution of defendants' objections can only be resolved via a proper motion to compel.").

[50] ECF No. 99 at 3.

disputes must describe with particularity the steps taken by all attorneys to resolve the issues in dispute.

A "reasonable effort to confer" means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.

The court takes these conference requirements seriously. Failure to confer alone is a sufficient basis for denial of a discovery motion.[51] The purpose of Fed. R. Civ. P. 37(a)(1) and D. Kan. R. 37.2 is to encourage parties to satisfactorily resolve their discovery disputes before resorting to judicial intervention.[52] The court will not convert the briefing on the motion for protective order into briefing on a motion to compel when one party represents they have not adequately conferred pursuant to the local rules.

That said, to hopefully streamline the issues, the court will comment on some of the larger issues before a formal motion to compel is filed, if necessary. The ongoing struggle between the parties to agree on the discovery scope suggests it would be a useful exercise. The court will address the categories largely following defendants' structure.

---

[51] *Carter v. Spirit Aerosystems, Inc.*, No. 16-1350-EFM-GEB, 2018 WL 5923487, at *7 (D. Kan. Nov. 13, 2018).

[52] *Heglet v. City of Hays, Kan.*, No. 13-228, 2014 WL 2865996, at *1 (D. Kan. June 24, 2014); *Activision TV, Inc. v. Carmike Cinemas, Inc.*, No. 14-208-JWL, 2014 WL 789201, at *2 (D. Kan. Feb. 26, 2014); *VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*, No. 98-2138, 1999 WL 386949, at *1 (D. Kan. June 8, 1999) (citing *Nave v. Artex Mfg., Inc.*, No. 96-2002, 1997 WL 195913, at *1 (D. Kan. Apr. 16, 1997)).

<u>Policies for Creating Invoices and Verifying Trade-Line Deletions and Corrections (Interrogatory No. 7; Request Nos. 7-8)</u>

According to defendants, the ultimate issue in this case is whether they performed services before receiving a retainer.  This information in invoices "concern only the time when CLC verifies that a client will be *invoiced* for a correction to his credit report," not when the actual deletion happened or when the services had been performed.[53]  The parties disagree on what constitutes full performance, as plaintiff argues performance isn't completed until defendants complete the last task required to earn payment.[54]  The court agrees with plaintiff that this argument appears to go to the merits of the case and should not be limited during the broad phase of discovery.  The court is inclined to agree that the information is relevant to the discovery process.

<u>Documents and Communications About Invoices/Dates Work Completed (Interrogatories No. 2-3; Request No. 2)</u>

Based on the same principle – that the issue in this case is whether defendants fully performed services *before* receiving a retainer – they argue "invoices issued and additional services performed *after* CLC received a retainer are not proportional to the needs of this case and are overbroad, immaterial, and certainly not 'importan[t] in resolving' that issue."[55]  Defendants represent they can supplement their spreadsheet to show the dates on

---

[53] ECF No. 90 at 11 (emphasis in original).

[54] ECF No. 99 at 10.

[55] ECF No. 90 at 9-10.

which they issued the first invoice to each of the putative class members, which moots

Interrogatory No. 2.  Defendants are directed to supplement the spreadsheet accordingly.

Defendants argue the other information involves services performed after they

received a retainer and are therefore overly broad and irrelevant.  Plaintiff disagrees,

asserting this information "will conclusively establish that CLC collected a payment (i.e.,

the retainer) before it fully performed the agreed-upon credit repair services."[56]  Again, the

parties disagree on the meaning of full performance – a legal issue better suited for

dispositive motions.  The court is not inclined to limit this in the discovery stage and would

be inclined to grant a motion to compel this information.

Last Known State of Residence and Related Information (Interrogatory No. 5)

Defendants argue these requests "have nothing to do with the services performed by

CLC."[57]  They argue, to the extent this information would be used on the issue of whether

the court can certify a nationwide class, that is a legal issue, not a factual issue.[58]  Plaintiff

argues his ability to certify the class or subclass is an evidentiary issue, and discovery on

certification issues like this is relevant.[59]  Defendants represent they have already identified

the putative class members in their spreadsheet, but they do not indicate residency is part

---

[56] ECF No. 99 at 10.

[57] ECF No. 90 at 10.

[58] *Id.*

[59] ECF No. 99 at 12.

of that information.[60]  The court is inclined to find this information relevant and to grant a motion to compel this data.

<u>Notes in Credit Money Machine Database (Request No. 4)</u>

Defendants argue this information is not proportional and not relevant and "instead seeks the wholesale production of all 'notes' for each of the 17,956 putative class members."[61]  Plaintiff argues this database contains information about all payments, retainers, and credits, and can be used to establish both liability and damages.[62] Specifically, plaintiff wants the "total amount that each class member paid to CLC."[63]

Defendants argue plaintiff hasn't ever requested the aggregate amount of payments made to CLC by the putative class members.[64]  This argument is unpersuasive because plaintiff was permitted to serve new discovery in this extended period.  The specific amount paid may be relevant to damages, as plaintiff argues, and the court may find a narrower request relevant. But the court is not inclined to find *all* notes from the database to be relevant, unless defendants are unable to produce the aggregate amount of payments in a simpler way.

---

[60] ECF No. 102 at 12.

[61] ECF No. 90 at 12.

[62] ECF No. 99 at 16.

[63] *Id.*

[64] ECF No. 102 at 16.

Complete Database Tables (Request No. 1)

Plaintiff requests "complete database tables showing the information" concerning retainer payment amounts, all invoices issued to putative class members, and each client's last known state of residence.  Plaintiff insinuates that the difficulty in obtaining this information from defendants gives him cause to question and verify defendants' representations "as to what [their] databases show."[65]  Plaintiff argues he is not obligated to take defendants' word for what the spreadsheet shows – yet plaintiff has not proffered any evidence that this information is misrepresentative or inaccurate.  The court agrees with defendants that plaintiff "already has the information he requested about when putative class members signed contracts with CLC and the date on which they provided retainers."[66]  Plaintiff notes he has attempted to confer with defendants to potentially narrow the scope of this request.[67]  The court would entertain a motion to compel a narrowed-down table, if plaintiff can show it contains relevant information that defendants haven't already produced.  As it stands, the court would not be inclined to grant a motion to compel the complete database tables.

---

[65] EF No. 99 at 13.

[66] ECF No. 102 at 15.

[67] ECF No. 99 at 15.

Credit Report Audits (Request No. 5)

Defendants argue this information is not proportional and not relevant to whether defendants fully performed any services prior to their receipt of a retainer.[68]   Plaintiff argues these documents "can support the allegations that CLC received payment from the class before completing the agreed-upon credit repair services."[69]   The court is inclined to agree that seeking *all* credit report audits for *all* clients, with no limitation in time, is likely overly broad.  The court is not likely to grant a motion to compel this request.

Client File (Request No. 6)

Defendants argue the client files have been denied in the court's prior order, but to reiterate, the court didn't rule that plaintiff couldn't ask for them.[70]   To the extent defendants are making an undue-burden argument regarding the client files, plaintiff has offered to pay an independent expert to extract the files from the database.[71]   But plaintiff has not, thus far, provided a justification for needing information beyond what defendants have already provided, i.e., the retainer payments.  Defendants have already given "the best information that [they have]" on the question of when they performed services for a given client.[72] Further, the files contain "highly sensitive personal information such as a client's

---

[68] ECF No. 90 at 9.

[69] ECF No. 99 at 17.

[70] ECF No. 90 at 8-9.

[71] ECF No. 99 at 6.

[72] ECF No. 90 at 9.

medical and personal health information, social security numbers, credit card numbers, usernames and passwords, home addresses, e-mail addresses, and photo identification."[73] In the absence of a more persuasive argument this information is necessary, the court is inclined to agree that defendants have already identified and provided the information relevant to this issue.

Computer Hardware and/or Software (Interrogatory No. 6; Request Nos. 9-12)

Defendants argue this is "nothing more than a fishing expedition," given the information they have already produced.  Plaintiff argues the instruction manuals and user guides for defendants' processing and accounting programs are relevant to "understanding the manner in which those programs store and retrieve data, which will allow plaintiff's expert to convert any proprietary file formats into a usable, open source format."[74]  But the information was produced in a native Excel spreadsheet, which can be converted easily into another format.[75]  As with the tables themselves, the court is not persuaded the manuals and guides are relevant in the requests and would be unlikely to grant a motion to compel them.

To be clear, since this dispute is before the court on a motion for protective order, and since the parties haven't complied with the requirements to confer required for a motion to compel, these aren't binding rulings.  But in the hopefully unlikely event plaintiff

---

[73] *Id.* at 8.

[74] ECF No. 99 at 14.

[75] ECF No. 102 at 16.

has to file a motion to compel after adequately conferring with defendants, hopefully the guidance in this order will assist in narrowing the issues.

Motion to Amend Scheduling Order (ECF No. 98)

Plaintiff has filed a motion seeking additional time to complete fact discovery, in light of time spent briefing the motion for protective order.  Defendants have confirmed via e-mail to the court that they do not oppose the request.  The court agrees the remaining discovery issues necessitate additional time for discovery and finds good cause for the extension.  The scheduling order, therefore, is amended as follows:

| SUMMARY OF DEADLINES AND SETTINGS | |
|---|---|
| Event | Deadline/Setting |
| All fact discovery completed | **August 31, 2020** |
| Experts disclosed by plaintiff | **September 28, 2020** |
| Experts disclosed by defendants | **October 30, 2020** |
| Rebuttal experts disclosed | **November 30, 2020** |
| Class-certification motions | **January 29, 2021** |
| Updated Rule 26(f) report | **14 days after class-certification ruling** |

IT IS THEREFORE ORDERED that defendants' motion for protective order (ECF No. 90) is denied.  Defendants are directed to supplement their spreadsheet in accordance with Interrogatory No. 2 by **August 3, 2020**.  Plaintiff's motion to amend the scheduling order (ECF No. 98) is granted.

Dated July 27, 2020, at Kansas City, Kansas.

<u>s/ James P. O'Hara</u>
James P. O'Hara
U.S. Magistrate Judge