UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK ENSMINGER, on behalf of himself
and those similarly situated,

      Plaintiff,

      v.

CREDIT LAW CENTER, LLC, et al.,

      Defendants.

Case No. 19-2147-JWL

## ORDER

These two motions arise from the putative-class action brought by the plaintiff, Mark Ensminger, against defendants, Credit Law Center, LLC ("CLC") and Thomas Addleman, for violations of the Credit Repair Organizations Act ("CROA"). Plaintiff has filed a motion to amend the scheduling order (ECF No. 106), which defendants do not oppose in substance. Plaintiff has also filed a motion to compel defendants' discovery responses (ECF No. 109), which defendants do oppose. For the reasons discussed below, the court grants plaintiff's motion to amend the scheduling order. The court grants plaintiff's motion to compel in part and denies it in part.

Background

Plaintiff served the relevant discovery on May 8, 2020.[1] In response, defendants filed a motion for protective order regarding the discovery on June 8, 2020.[2] The court

---

[1] ECF No. 89.

[2] ECF No. 90.

denied defendants' motion for protective order on July 27, 2020.[3] In that order, anticipating a motion to compel would be filed, the court previewed some of the parties' expected arguments. Defendants served their responses and objections to the discovery on August 21, 2020. It appears the parties resolved some of the disputes on their own, but disputes over four discovery requests remain.

As a threshold matter, the court first considers whether the parties have sufficiently conferred regarding the motion to compel, as required by D. Kan. R. 37.2. The parties have exchanged letters and have met and conferred several times.[4] The court finds counsel have adequately conferred as to the issues in the motion.

Motion to Amend Scheduling Order (ECF No. 106)

Plaintiff's first motion seeks to extend the scheduling order deadlines in light of ongoing discovery issues, some of which are now the subject of the pending motion to compel. Other issues have now been resolved, and the parties need additional time to produce the supplemental information. Plaintiff seeks 60 additional days for discovery, as well as a corresponding extension on expert disclosure and class certification deadlines. Defendants do not oppose the requested extensions but do oppose the "characterization of the discovery disputes at issue."[5] Specifically, defendants ask the court to order that fact

---

[3] ECF No. 103. The same order also granted plaintiff's prior motion to amend the scheduling order and extended the remaining pre-trial deadlines.

[4] ECF No. 110 at 2.

[5] ECF No. 112 at 1.

discovery is extended solely to resolve the outstanding discovery disputes and that no further discovery will be issued.

For good cause, the court grants plaintiff's motion. Defendants' limitations are incorporated. This extension is solely to resolve the parties' outstanding discovery disputes, as the court has amended the scheduling order for the fourth time. The parties shall not serve new discovery requests. The deadlines are adjusted as follows:

| **SUMMARY OF DEADLINES AND SETTINGS** | |
| --- | --- |
| Event | Deadline/Setting |
| All fact discovery completed | **October 30, 2020** |
| Experts disclosed by plaintiff | **November 30, 2020** |
| Experts disclosed by defendants | **December 29, 2020** |
| Rebuttal experts disclosed | **January 29, 2021** |
| Class-certification motions | **March 2, 2021** |
| Updated Rule 26(f) report | **14 days after class-certification ruling** |

Motion to Compel (ECF No. 109)

Plaintiff has also filed a motion to compel supplemental discovery responses relating to his previously-served discovery. Rule 26(b) of the Federal Rules of Civil Procedure states that the parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case."[6]

---

[6] Fed. R. Civ. P. 26(b)(1). The proportionality standard takes into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving

3

The proportionality standard moved to the forefront of Fed. R. Civ. P. 26(b) when the rule was amended in 2015, which reinforced the need for parties to focus on the avoidance of undue expense to the parties.[7] Although the court still considers relevance, the previous language defining relevance as "reasonably calculated to lead to the discovery of admissible evidence," was deleted in the 2015 amendment "because of it was often misused to define the scope of discovery and had the potential to 'swallow any other limitation.'"[8] As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.[9]

<u>Interrogatory No. 2</u>

In the court's July 27, 2020 order, it directed defendants to supplement their response to Interrogatory No. 2, which sought "the date on which CLC created his or her first invoice"[10] for each putative class member. The rest of the interrogatory reads, "If you contend that a full response to this interrogatory is impossible, please explain why with specificity, and provide the most complete response possible."[11] Because defendants

---

the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

[7] *Frick v. Henry Indus., Inc.*, No. 13-2490-JTM-GEB, 2016 WL 6966971, at *3 (D. Kan. Nov. 29, 2016).

[8] *Brown v. Panhandle E. Pipeline Co. L.P.*, No. 16-CV-2428-JAR-TJJ, 2018 WL 263238, at *2 (D. Kan. Jan. 2, 2018).

[9] *Funk v. Pinnacle Health Facilities XXXII, LP*, No. 17-1099-JTM-KGG, 2018 WL 6042762, at *1–2 (D. Kan. Nov. 19, 2018).

[10] ECF No. 109-1 at 2.

[11] *Id.* at 2.

represented they would supplement their spreadsheet to show the dates on which they issued the first invoice to putative class members, the court found Interrogatory No. 2 to be effectively mooted.[12] Defendants served an updated spreadsheet on August 3, 2020. 510 of those entries listed "N/A" rather than include a date and did not include any explanation as to why those people didn't receive an invoice.

Defendants contend their supplemental spreadsheet listed the first invoice for 17,446 putative class members, and for the other 510 clients, no first invoice date exists "because they did not receive an invoice from CLC."[13] Plaintiff reads that response to be incomplete, such that defendants should "shed light" on why they didn't receive an invoice.[14] Defendants' position is that plaintiff's interrogatory and the court's order do not require additional information beyond the date, or, if applicable, the fact there is no responsive date.[15]

The court concedes there was no explicit directive to provide an explanation about why there isn't an invoice for those clients. But the court does, contrary to defendants' assertion, read an *implicit* directive in the request. Although a full response may not be, technically speaking, "impossible," the complete and specific response, in the spirit of the interrogatory, reasonably includes a brief explanation why there is no invoice for certain

---

[12] ECF No. 103 at 14-15.

[13] ECF No. 113 at 3.

[14] ECF No. 114 at 2.

[15] ECF No. 113 at 3.

clients.  The court isn't persuaded defendants will face an undue burden in identifying why these clients didn't receive an invoice.  Indeed, defendants may be aided by relying on the same credit money machine notes they reference for those 510 clients to facilitate their supplemental explanations. The court grants plaintiff's motion to compel supplemental information as to Interrogatory No. 2.

Request No. 3

Request No. 3 initially sought "all documents and communications that you contend support your affirmative defenses in this case."[16]  Plaintiff represents he offered to limit the scope of this request to the *principal or material* documents and communications that defendants contend support their affirmative defenses.[17] Even with the narrowed language, defendants continue to oppose the request on the grounds that producing materially relevant information for 18,000 putative class members is unduly burdensome.[18] Defendants suggest this information may be relevant if and when a class is certified and this information "can be more efficiently addressed in the claims administration process."[19]

The cases cited by the parties involve interrogatories, not requests for production. A contention interrogatory that seeks "all facts" supporting allegations is generally overly

---

[16] ECF No. 109-1 at 2.

[17] ECF No. 110 at 3.

[18] ECF No. 113 at 3.

[19] *Id.* at 3-4.

6

broad and unduly burdensome on its face.[20] Courts have reduced the scope of such interrogatories to the material or principal facts.[21] Here, neither party has cited case law on the issue of whether plaintiff can seek all principal or material *documents and communications* in support of defendants' affirmative defenses in a class action case. Here, the court finds that requesting all documents – even accounting for the narrowed scope – is overly broad. The burden will be significantly higher to produce documents for thousands of putative class members than it would be for litigation between a single plaintiff and single defendant. *Pepsi-Cola Bottling Co. of Pittsburg v. Bottling Grp., L.L.C.*, which plaintiff cites, involves the enforcement of a settlement between one plaintiff and one defendant, right before the proposed final pretrial order (which included the parties' narrowed-down claims and defenses) was submitted to the court.[22] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, plaintiff's other cited case, involves contention interrogatories, not requests for production.[23] It stands to reason an interrogatory seeking responsive facts may not be unduly burdensome. Seeking the production of documents for 18,000 class members, before any class is certified, is.

---

[20] *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 658 (D. Kan. 2006).

[21] *Williams v. UnitedHealth Grp.*, No. 2:18-CV-2096, 2020 WL 528604, at *4 (D. Kan. Feb. 3, 2020); *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006).

[22] No. 07-2315-JAR, 2008 WL 234326, at *2 (D. Kan. Jan. 28, 2008) (directing the defendant to produce responsive documents and answer an interrogatory narrowed to the "material or principal" facts supporting its affirmative defenses).

[23] No. 17-MD-2785-DDC-TJJ, 2019 WL 5622419, at *4 (D. Kan. Oct. 31, 2019).

That said, after this much discovery, the court believes defendants are in a position to decide whether some of their asserted affirmative defenses lack evidentiary support. Accordingly, although the court will deny the motion to compel this wide scope of documents, defendants shall review their affirmative defenses to evaluate whether they are all worth pursuing in good faith.

Request No. 5

Request No. 5 seeks "all credit report audits for each CLC client identified in the spreadsheet."[24] The parties conferred to discuss narrowing this request and plaintiff agreed to limit the request to the first and last credit report audit for each member of the proposed class.[25] Defendants maintain their objections that this request is overbroad and unduly burdensome.

Plaintiff argues these audits are relevant because "they provide periodic progress updates identifying when work was complete or those that require additional work to determine if money was collected prior to work [being] complete."[26] The court previously indicated it wasn't inclined to grant a motion to compel all credit reports for all clients,

---

[24] ECF No. 109-1 at 6.

[25] ECF No. 110 at 2-3.

[26] *Id.* at 6.

8

with no limitation in time.[27] Plaintiff then narrowed the scope to only seek production of two audits – the first and the last – for each class member, rather than all reports.[28]

Defendants argue only the invoice dates, which have been produced, are relevant to when money was collected and when work was completed.[29] Defendants represent the credit report audits are not maintained in a format that can be searched and extracted electronically.[30] Plaintiffs argue the audits will show all incomplete credit repair services at a given point in time, which cannot be obtained from the invoice dates.[31] On balance, the court finds the request has been adequately narrowed and will elicit information that plaintiff may not otherwise have. The court grants plaintiff's motion to compel with respect to Request No. 5.

Request No. 6

Request No. 6 seeks "the client file for each CLC client identified in the spreadsheet."[32] Plaintiff represents that the parties conferred to discuss narrowing this request and plaintiff agreed to limit the request down from the entire client file to "production of each putative class member's invoices and transaction logs, and an

---

[27] ECF No. 103 at 18.

[28] ECF No. 110 at 6.

[29] ECF No. 113 at 6.

[30] *Id.* at 6.

[31] ECF No. 114 at 3.

[32] ECF No. 109-1 at 6.

exemplar of each non-identical version of the engagement agreement entered into between CLC and the members of the proposed class."[33] Plaintiff argues the information is relevant because it'll show defendants "collected payment from the class before completing the agreed-upon credit repair services."[34]

The court agrees the information would be appropriately covered by the parties' protective order, entered on July 1, 2019 (ECF No. 30), so that is not a basis to deny the motion to compel. To defendants' argument that that request is overly burdensome, plaintiff argues the task of extracting ESI like the transaction logs is appropriate and typical in class action litigation.[35] The court agrees "the technical burden . . . of creating a new dataset for the instant litigation does not excuse production"[36] and notes plaintiff's offer to pay an independent expert to extract the requested files from defendants' database.

Plaintiff argues he is entitled to "recover *all* non-refunded payments made by the class," and the transaction logs reflect net payments that are in addition to the retainers received, which is relevant to total damages. That reasoning is persuasive to the court as to relevance. Defendants shall produce the transaction logs, at plaintiff's cost, by the end of the newly-extended discovery period. But the court hasn't been persuaded plaintiff

---

[33] ECF No. 110 at 5.

[34] *Id.*

[35] *Id.*

[36] *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013).

needs invoices or additional versions of engagement agreements. Defendants have given the information to identify when they performed services for a given client. Defendants have produced the date and amount of all retainers, the date of the first invoice issued to each putative class member, and the dates for all invoices issued to the putative class members.[37] The court fails to see how this additional information from the client file offers something plaintiff doesn't already have. Accordingly, defendants are directed to produce the transaction logs reflecting additional payments that weren't already captured by retainer payments. The motion to compel regarding Request No. 6 is otherwise denied.

IT IS THEREFORE ORDERED that plaintiff's motion to amend the scheduling order (ECF No. 106) is granted. Plaintiff's motion to compel (ECF No. 109) is granted in part and denied in part, in accordance with the rulings above. To the extent defendants are directed to provide responses, by **September 28, 2020**, they shall provide them or coordinate for plaintiff's expert to extract the information by the end of the discovery period.

Dated September 14, 2020, at Kansas City, Kansas.

                                              s/ James P. O'Hara
                                              James P. O'Hara
                                              U. S. Magistrate Judge

---

[37] ECF No. 113 at 4.