**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MARK ENSMINGER, *on behalf of himself and those similarly situated*,<br><br>      Plaintiff,<br><br>v.<br><br>CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN LLC, d/b/a CREDIT LAW CENTER, and THOMAS ADDLEMAN a/k/a TOM ADDLEMAN,<br><br>      Defendants. | Case No. 2:19-cv-2147-JWL-JPO<br><br>Hon. Toby Crouse<br><br>Magistrate Judge James P. O'Hara<br><br>Jury Trial Demanded |

### DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

Defendants Credit Law Center, LLC and Thomas Addleman (together, "CLC") respectfully move the Court to certify its October 8, 2021 Order denying CLC's Rule 12(b)(1) Motion to Dismiss the Amended Complaint of Mark Ensminger ("Plaintiff") (Dkt. 44) for immediate appeal pursuant to 28 U.S.C. § 1292(b).  In support of its motion, CLC states as follows:

### BACKGROUND

1. CLC is a credit repair organization in the business of counseling and assisting its clients in the management of their credit rating.  Plaintiff, a former CLC client, contracted with CLC for its services and agreed to pay CLC certain fees in return.

2. Plaintiff's sole claim in this litigation is that CLC's collection of $300 from Plaintiff on March 9, 2015 violated a provision of the Credit Repair Organizations Act ("CROA") that precludes credit repair organizations from charging or receiving payment for services until such services are "fully performed."  *See* 15 U.S.C. §1679b(b).

2

3. Plaintiff does not dispute that CLC provided greater than $300 in services. Nor does Plaintiff contend that CLC charged him more than he had agreed to pay in exchange for those services pursuant to the parties' written contract.

4. Instead, in an effort to satisfy the "concrete injury" requirement for Article III standing, Plaintiff contends only that the alleged statutory violation caused him injury in the form of the "lost time value of his money." In other words, Plaintiff admits (as he must) that he owed at least $300 to CLC for the services it provided. He contends only that, because CROA allegedly provided him with a statutory right to withhold payment of the $300 until a few weeks after the date on which it was actually paid, he lost the "time value" of the $300 over that several-week time period.

5. Critically, however, there is no dispute that, before receiving Plaintiff's $300 payment on March 9, 2015, CLC provided to Plaintiff services in excess of $300 in value.[1]

6. On March 8, 2021, CLC moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing. CLC argued that, even if the lost time value of money is a concrete injury under some circumstances, recent Supreme Court precedents establish that a "lost time value of money" injury is *not* concrete and does *not* support Article III standing if it is predicated solely on the violation of a statutory right and would not otherwise exist. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

---

[1] There is no dispute that Plaintiff agreed to pay CLC to remove false items from his credit report at a rate of $65 per removed item. And there is no dispute that, through services that CLC performed for Plaintiff *before* his March 9, 2015 $300 payment, CLC caused 6 false items to be removed from Plaintiff's credit report thereby entitling CLC to $390 under the parties' written contract.

2

7. On October 8, 2021, the Court denied CLC's motion from the bench, relying on the Court's September 12, 2019 ruling that Plaintiff had adequately alleged a concrete injury for purposes of Article III standing.

## ARGUMENT

8. CLC respectfully requests that the Court certify its October 8, 2021 Order for interlocutory appeal. *See* 28 U.S.C. § 1292(b). An interlocutory appeal under Section 1292(b) is appropriate when: (1) the appeal presents a question of law; (2) that is controlling; (3) that is contestable; and (4) the resolution of which will expedite the resolution of the litigation. *See* 28 U.S.C. § 1292(b). The issue that is the subject of this motion satisfies these criteria.

9. CLC asks the Court to certify the following question to the Tenth Circuit for interlocutory review under Section 1292(b):

> Where Congress has created a statutory right to pay for a covered provider's services only *after* such services have been "fully performed," (*see* 15 U.S.C. §1679b(b)), does a plaintiff have Article III standing to sue for a violation of that right where: (1) the only injury alleged is the "lost time value" of money; and (2) notwithstanding the alleged statutory violation, it is undisputed that the plaintiff received services of at least equal value to the payment *before* the payment was made, and thus there was no "lost time value of money" injury independent of the statutory violation?

### A. The Appeal Presents Questions of Law.

10. The issue to be decided in a Section 1292(b) appeal must present a "question of law." *Reorganized FLI, Inc. v. Williams Companies, Inc.*, No. 05-CV-02389-JAR-GEB, 2019 WL 6998756, at *4 (D. Kan. December 20, 2019) (granting motion to certify for interlocutory appeal and finding a question of law where there were "no contested factual issues"). Here, the underlying facts are not in dispute and the proposed question on appeal requires only the application of the Supreme Court's Article III standing precedents in *Spokeo* and *Ramirez* to the purported injury

3

relied upon by Plaintiff for Article III standing to bring a claim for violation of Section 1679b(b) of CROA.

### B. The Question of Law is Controlling.

11. The question of law on which CLC seeks certification is "controlling" because whether Plaintiff has Article III standing to bring his CROA claim will significantly affect the further course of litigation and could control the outcome of this case. *See McHenry v. City of Ottawa, Kansas*, No. 16-2736-DDC-JPO, 2017 WL 4758947, at *2 (D. Kan. Oct. 20, 2017) (finding a "controlling" question where the answer will determine if a claim "ends here or will move forward"); *see also Sokaogon Gaming Enter. Corp. v. Tushie-Montogomery Assocs., Inc.*, 86 F. 3d 656, 659 (7th Cir. 1996) (a question is "controlling" when it is "quite likely to affect the further course of the litigation, even if not certain to do so"). Here, without standing, Plaintiff's cannot proceed on his sole remaining claim, and a resolution of this question in CLC's favor would end this lawsuit entirely.

### C. The Question of Law is Contestable.

12. The weight of authority supporting CLC's position as to the proposed question on appeal is substantial and demonstrates that the question is at least open to serious debate. While the Tenth Circuit has not squarely addressed the issue, *Spokeo*, *Ramirez*, and numerous circuit court decisions following them have made clear that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," rather, Article III standing requires an independent concrete injury "even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549; *see also Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329, 333 (7th Cir. 2019); *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016); *Macy v. GC Servs. L.P.*, 897 F.3d

4

747, 756 (6th Cir. 2018); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) ("*Spokeo II*"); *McCloud v. Save-A-Lot Knoxville, LLC*, 388 F. Supp. 954, 961 (E.D. Tenn. 2019); *Perta v. National Credit Care Corporation*, No. 18-cv-5767, 2019 WL 4750098, at *4 (N.D. Ill. Sept. 30, 2019).

13. *Ramirez* reaffirmed that, in determining whether an injury is "concrete" for purposes of Article III, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Ramirez*, 141 S. Ct. at 2204.

14. Here, Plaintiff contends that the statutory violation caused him an injury in the form of the lost time value of his money. However, there is no dispute that Plaintiff received valuable services in excess of $300 *before* CLC collected the $300 payment in (alleged) violation of CROA. And the purported lost time value of money paid *after* a plaintiff received fair value for the payment has *never* been "traditionally recognized as providing a basis for a lawsuit in American courts." [2] *See TransUnion*, 2021 WL 2599472, at *7; *see also* Dkt. 133 at 7-8. Here, absent the statutory violation, there is no independent "lost time value of money" injury.

15. To the extent CLC arguably collected Plaintiff's payment too early as a matter of *statute*, the above precedents make clear that a statutory violation is not enough for Article III standing – "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 2021 WL 2599472, at *8 (emphasis in original). Even if the lost time value of money *can* constitute an Article III injury, (*see* September 12, 2019 Order at 4-5 (Dkt. 44)), the lost time value of money

---

[2] CLC has found no decision to the contrary.

injury that *Plaintiff* purportedly suffered does not exist independent of the statutory violation and is not concrete for purposes of Article III standing.

        **D.**      **Resolution of the Questions Will Expedite Resolution of the Litigation.**

16.     The Tenth Circuit's resolution of the questions presented will "materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b). Indeed, a successful appeal would end the litigation. And either way, finality as to Plaintiff's standing to bring this action would resolve a major point of contention between the parties and avoid the time and expense of further motion practice.

WHEREFORE, for all of the foregoing reasons, CLC respectfully requests that the Court certify its October 8, 2021 Order for immediate appeal as described above.

Dated: November 22, 2021

Respectfully submitted,

**CREDIT LAW CENTER, LLC a/k/a THOMAS ANDREW ADDLEMAN LLC, d/b/a CREDIT LAW CENTER, and THOMAS ADDLEMAN**

Timothy A. Hudson, *pro hac vice*
Jordan E. Wilkow, *pro hac vice*
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., 7th Floor
Chicago, IL  60604
Tel: (312) 762-9450
Fax: (312) 762-9451
thudson@tdrlawfirm.com
jwilkow@tdrlawfirm.com
*Attorneys for Defendants*

By: /s/ Timothy A. Hudson
        One of Their Attorneys

By: /s/ Chad C. Beaver
        One of Their Attorneys

Chad C. Beaver, KS Bar No. 21280
BEAVER LAW FIRM, LLC
1600 Genessee Street, Suite 920
Kansas City, Missouri 64102
Tel: (816) 579-1800
Fax: (816) 817-0540
cbeaver@beaver-law.com
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I certify that today I electronically filed the foregoing **DEFENDANTS' MOTION TO CERTIFY THE COURT'S OCTOBER 8, 2021 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)** with the Clerk of the Court for the District of Kansas using the CM/ECF system.  Counsel of record for all parties will be served by the CM/ECF system.

Dated:  November 22, 2021

By: /s/ Chad C. Beaver