In the United States District Court
for the District of Kansas

————————

Case No. 2:19-cv-02147-TC

————————

MARK ENSMINGER,

*Plaintiff*

v.

CREDIT LAW CENTER, LLC, ET AL.,

*Defendants*

————————

## MEMORANDUM AND ORDER

Plaintiff Mark Ensminger filed this action on behalf of himself and other class members, asserting that Defendants Credit Law Center, LLC, and Thomas Addleman violated 15 U.S.C. § 1679b(b) of the Credit Repair Organizations Act (CROA). Doc. 45. All parties moved for summary judgment, Docs. 208, 210, and 213, and Ensminger also moved to exclude Defendants' expert, Doc. 212. For the following reasons, Defendants' motions are granted because Ensminger lacks standing, and as a result, Ensminger's motions are denied as moot.

## I

## A

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed,

belaboring such disputes undermines the efficiency Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

In a case where the moving party does not bear the burden of persuasion at trial, the summary judgment rules require that party to show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991); *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to dispositive matters. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

But in a case where the moving party will bear the burden of proof at trial on a particular issue, the moving party must meet "a more stringent summary judgment standard." *Pelt*, 539 F.3d at 1280; *see also Donner v. Nicklaus*, 778 F.3d 857, 876 (10th Cir. 2015) (discussing a movant with affirmative defenses). That standard requires the movant to "establish, as a matter of law, all essential elements of the issue." *Pelt*, 539 F.3d at 1280. Only then must the nonmovant "bring forward any specific facts alleged to rebut the movant's case." *Id.*

The filing of cross-motions for summary judgment does not alter this standard. Each motion—and its material facts—must "be treated separately," meaning that "the denial of one does not require the grant of another." *Atl. Richfield Co. v. Farm Credit Bank Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

2

**B**

Familiarity with the legal, factual, and procedural background of this dispute is presumed.[1] The following briefly summarizes the relevant factual and procedural history that frames the four motions at issue.

**1.** The details of the parties' relationship is not complicated or in significant dispute. CLC is in the business of counseling and assisting clients in the management and improvement of their credit reports. Doc. 207 at ¶ 2.a.i. Among other things, it offers credit repair services to its customers for disputing inaccurate, negative entries on their credit reports. *Id.* at ¶ 2.a.iii. All agree that CLC is a "credit repair organization" as that term is used in the Credit Repair Organizations Act. *Id.* at ¶ 2.a.ii. Addleman is CLC's owner. *See* Doc. 222 at 23, ¶ 4; Doc. 236 at 5.

Ensminger is a former customer of CLC. Doc. 207 at ¶ 2.a.iv. The timing and nature of that relationship forms the basis of this dispute. Ensminger signed CLC's standard Engagement Agreement for credit repair services on February 27, 2015. *Id.* at ¶ 2.a.vi. The Engagement Agreement provided, in pertinent part, as follows:

> Thank you for hiring Credit Law Center, LLC, 255 NW Blue Parkway, Suite 200, Lee's Summit, Missouri 640063 to represent you.
>
> * * *
>
> [CLC] performs one or more of the following ongoing and periodic services as appropriate in its judgment and discretion: receives and reviews Bureau and Furnisher correspondence sent to us directly or by you; collects and reviews updated information and instructions from you regarding your circumstances, goals, and case; monitors and analyzes your case; provides you with status updates regarding your case; and prepares

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF. All facts are uncontroverted unless otherwise specified.

and sends one or more additional Communications on your behalf.

* * *

Limited Scope of Legal Representation: [CLC] hereby agrees to investigate your credit report and dispute inaccurate reporting. This legal representation is limited in scope to these services only. Any additional legal representation would constitute another matter and would require a separate agreement.

* * *

[CLC] will not file your case in court or perform prelitigation services on your behalf, except under a separate written agreement signed by both you and [CLC].

* * *

Charges: The amount authorized below will be deducted in 35 days from the date of this contract unless the total items deleted/corrected are less than that amount then the lesser amount will be withdrawn. In the event a retainer has been paid, there will be a credit on the first invoice for the retainer amount.

For Example: If you have authorized a payment of $500.00 in 35 days and [CLC] repair[s] $400.00 worth of items, then we will only deduct $400.00 from your account and continue working on your items. If the total exceeds the $500.00, then we will deduct the $500.00 and suspend any further work until balance is paid in full.

* * *

Fee Agreement for Removal of: (per bureau)
Late Pays ($30)
Collections/Repossessions ($65)
Public Records ($65)
Inquiries/Social Security # ($65)
Bankruptcies/Foreclosures ($120)

Additional Pricing:
Certified Mail ($8)
Administrative Fee ($95)
Min. Contract Price ($300)

\* \* \*

Any contract exceeding a total of $500.00 will require a retainer that will be collected seven (7) days after the date the contract is signed by the client.

\* \* \*

I also understand that my fees with Credit Law Center will not exceed $1200.00 {Contract Cap} for the negative items being repaired or removed from my credit reports, not including the administration fee and any certified letters sent on my behalf.

\* \* \*

Any contract exceeding a total of $500.00 will require a retainer that will be collected seven (7) days after the date the contract is signed by the client. Other than this contract there will be no prior notice that the retainer will be collected. If the value of the items repaired or removed at the 35 day mark are less than the retainer amount, [customer] can request a refund of excess funds and all further work on the file will be suspended. *Other than the retainer, I understand that I will only be charged after Credit Law Center document [sic] that the negative items were repaired or removed from my credit reports. The retainer amount for this contract will be $300.*

\* \* \*

You may cancel this contract, without any penalty or obligation, at any time before midnight of the 3rd day which begins after the date the contract is signed by you.

*Id.* at ¶ 2.a.vii. (emphasis added).

On March 4, 2015, CLC prepared and sent out dispute letters challenging six trade lines in Ensminger's credit report. Doc. 207 at ¶ 2.a.x. Two days later, CLC charged Ensminger $300 for the retainer outlined in the Engagement Agreement. *Id.* at ¶ 2.a.xi.

A little over one month later, CLC obtained and reviewed Ensminger's updated credit report. Doc. 221 at 20, ¶ 57; Doc. 222 at 20, ¶ 57. CLC successfully secured the deletion of six false tradelines from Ensminger's credit reports. Doc. 207 at ¶ 2.a.xii.

Following confirmation that the tradelines had been cleared, CLC created an invoice for $485, applied Ensminger's $300 retainer, and sought payment for the remaining $185 fee. Doc. 221 at 20, ¶ 59; Doc. 222 at 20, ¶ 59. Then, on or about April 24, 2015, CLC sent at least ten more debt verification letters to Ensminger's creditors or their collectors. Doc. 207 at ¶ 2.a.x.; *see also* Doc. 214-17 (debt verification letter). CLC continued to work on Ensminger's file until June 3, 2015, when it issued his final invoice. Doc. 234 at 7, ¶ 26.

**2.** As noted, the procedural history of this litigation is quite extensive. *See* Docs. 44, 65, 160, 162, 189, and 192. And, to some extent, it informs the dispositive issues currently presented, particularly relative to whether Ensminger has Article III standing.

In March 2019, Ensminger, on his own behalf and on behalf of those similarly situated, filed suit against Credit Law Center, LLC, a law firm, and Thomas Addleman, the sole member of that firm. Doc. 1. The sole claim currently pending against CLC and Addleman (collectively "Defendants") is a violation of 15 U.S.C. § 1679b(b) of the Credit Repair Organizations Act (CROA). That provision provides as follows: "No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer *before such service is fully performed.*" *Id.* (emphasis added).

Ensminger has alleged that the Defendants violated this section by charging or receiving money—a $300 retainer—before the services were fully performed. *See* Doc. 207 at 4.a.i.; *accord* Doc. 44 at 2. Largely from the outset of this litigation, Defendants have asserted that Ensminger lacked standing to assert his CROA claim. Each time, however, that argument has been rejected.

Standing was first considered in a motion to dismiss and briefing related to Ensminger's request for leave to amend his CROA claim. Doc. 44. CLC asserted that Ensminger lacked standing to assert the CROA claim, asserting that Ensminger had received full value for his payment before the retainer was charged. Doc. 19 at 3–5; Doc. 41 at 6–8. But that argument was contrary to Ensminger's factual allegation that he paid the retainer before the services were rendered. As a result, then-presiding Judge Lungstrum held that "loss of the time value of money—even a small amount—constitutes a tangible financial injury that satisfies the requirement of an injury in fact for purposes of standing." Doc. 44 at 5–6.

Defendants raised standing again after the case was reassigned to a new judge. Doc. 128; Doc. 133 at 5–10. That motion, which effectively sought reconsideration of the prior judge's holding, was denied. *See* Docs. 160 & 162 (acknowledging that it is debatable whether the loss of the time value of money is a sufficient injury to establish standing, but accepting the prior analysis of the issue at the Rule 12 stage based on Ensminger's pleadings); *see also United States ex rel. Smith v. The Boeing Co.*, No. 05-1073, 2014 WL 5025782, at *36 (D. Kan. Oct. 8, 2014) (noting motions to reconsider are not generally encouraged).

Ensminger then moved for class certification. Doc. 144. In response, Defendants again raised standing, asserting that Ensminger suffered no concrete injury because he received services before the retainer was paid. Doc. 171 at 6–10, 16–19 (characterizing their challenge as a factual attack on standing). Once again, the procedural posture counseled against engaging with that factual argument. In particular, it was accepted as true for purposes of class certification that the CROA precluded CLC from accepting any funds before April 10, 2015. And the decision expressly rejected Defendants' argument that CLC's acceptance of the retainer did not violate the CROA because that was a disputed merits question inappropriate for consideration at the class certification stage. Doc. 192 at 6–8; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (recognizing Rule 23 grants no license to consider merits at certification stage); Doc. 178 at 17–18 (urging avoidance of making a merits decision at the class certification stage). Accepting Ensminger's position, the class was certified. *See* Doc. 192; *see also* Doc. 190 at 52 (urging certification of a class even though Ensminger and those in his situation may not have standing).

After the class was certified, a pretrial order was entered that contained the parties' stipulated facts, the single claim remaining against

Defendants, and set dispositive motion deadlines. *See* Doc. 207. CLC and Addleman then filed their motions for summary judgment. Docs. 208 & 210. Ensminger also filed his motion for summary judgment, Doc. 213, as well as his motion to exclude CLC and Addleman's expert. Doc. 212. The four motions are now ripe for review.

## II

Defendants assert that Ensminger lacks standing and, even if he has standing, that the uncontroverted facts fail to establish a violation of the CROA. Considering all the facts, it is now clear that Ensminger has failed to establish that he suffered a concrete injury as required by Article III. As a result, Defendants' motions for summary judgment are granted, and the remaining motions are denied as moot.

## A

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const. art. III, § 2, cl. 1.); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "For there to be a case or controversy under Article III, the plaintiff must have . . . standing." *TransUnion*, 594 U.S. at 423. "Regardless of the stage of litigation at which [federal courts] evaluate[ ] standing, the standing inquiry remains focused on whether the party invoking jurisdiction had a sufficient stake in the outcome when the suit was filed." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1162 (10th Cir. 2023). Plaintiff's "must demonstrate standing separately for each form of relief sought." *WildEarth Guardians v. Pub/Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 185 (2000)) (internal quotation marks omitted).

Standing requires a plaintiff to have "suffered an injury in fact" that is "fairly traceable to the challenged action of the defendant" and is likely to be "redressed by a favorable decision." *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "These requirements ensure that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his [or her] invocation of federal-court jurisdiction.'" *Looper*, 22 F.4th at 876 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

The injury in fact must be "an invasion of a legally protected inter-est which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). For an injury to be concrete, it must be "real" rather than "abstract," but is not necessarily synonymous with "tangible." *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190–91 (10th Cir. 2021). In other words, "it must actually exist." *Spokeo*, 578 U.S. at 340. And "[a] statutory violation does not necessarily establish an injury in fact," either. *Looper*, 22 F.4th at 876 (explaining that *Spokeo* and *TransUnion* recently clarified that fact). "For an injury to be particularized, it must 'affect the plaintiff in a personal and individual way.'" *Id.* at 876 (quoting *Lujan*, 504 U.S. at 560 n.1); *see also Spokeo*, 578 U.S. at 339. "[A]ctual or imminent . . . mean[s] that the injury must have already occurred or be likely to occur soon." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). And "[a]n alleged future injury is sufficiently imminent 'if the threatened injury is certainly impending, or there is a substantial risk that harm will occur.'" *Looper*, 22 F.4th at 876 (quoting *Susan B. Anthony List v. Driehaus*, 572 U.S. 149, 158 (2014)).

The type of injury being asserted affects the analysis. For example, an injury in fact "can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples." *Food & Drug Admin.*, 602 U.S. at 381. It is frequently easier to identify when those types of tangible injuries are concrete. Yet intangible injuries, such as violations of federal stat-utes, can be concrete, too. *See generally Spokeo*, 578 U.S. at 340–41 (rec-ognizing that bare procedural violations without any concrete harm is insufficient to establish standing). To determine whether an intangible harm is sufficiently concrete to constitute an injury in fact, the Supreme Court has instructed lower courts to evaluate both history—*e.g.*, whether plaintiff has identified a close historical or common law ana-logue for their asserted injury—and to the judgment of Congress. *Lu-pia*, 8 F.4th at 1191 (applying *Spokeo* to determine whether plaintiff's identified statutory violations were sufficiently concrete to establish standing); *accord Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 827–30 (10th Cir. 2022) (same).

As to causation, the plaintiff must show that "its injury is 'fairly traceable to the challenged action'" of the defendant. *Rocky Mountain Peace & Just. Ctr. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 1133, 1152 (10th Cir. 2022) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 180). For Article III purposes, that means "proof of a substantial likelihood that the

defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). And to make that showing, "plaintiffs bear the burden of pleading and proving concrete facts showing that the defendant's *actual action* has caused the [harm or a] substantial risk of harm." *Rocky Mountain Peace & Just. Ctr.*, 40 F.4th at 1152 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)) (internal quotation marks omitted).

Regarding redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1325 (10th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted). In other words, "a party must show that a favorable court judgment is likely to relieve the party's injury." *WildEarth*, 690 F.3d at 1182 (quoting *City of Hugo v. Nichols (Two Cases)*, 656 F.3d 1251, 1264 (10th Cir. 2011)). "The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *WildEarth*, 690 F.3d at 1182 (quoting *Nova Health Sys.*, 416 F.3d at 1158).

The plaintiff bears the burden to establish that they have standing. *See Spokeo*, 578 U.S. at 338. While the proper inquiry is whether the plaintiff had standing as of the time the case is filed, "the proof required to establish standing increases as the suit proceeds." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1161-62 (10th Cir. 2023). So, "since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561. That means that, "on summary judgment, the plaintiff 'must set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken to be true.'" *Rio Grande*, 57 F.4th at 1162 (quoting *Lujan*, 504 U.S. at 561); *accord M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1261 (10th Cir. 2024).

And finally, when assessing standing, federal courts are not to "open the door to merits considerations at the jurisdictional stage." *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1378 (10th Cir. 2024) (internal quotation marks omitted). That means that, "[f]or purposes of standing, [federal courts] must assume the [p]laintiff's claim has legal validity." *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1220 (10th Cir. 2016) (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092–93 (10th Cir. 2006) (en banc)). In other

words, "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

## B

Ensminger claims that Defendants violated the CROA by charging him a $300 retainer on March 6, 2015. More specifically, Ensminger contends that the CROA precluded Defendants from collecting the $300 retainer until April 10, 2015, at the earliest. Defendants contend that, even assuming the CROA was violated on March 6, 2015, Ensminger lacks standing to bring the claim because the alleged injury did not constitute a concrete injury. Even assuming Ensminger has alleged a violation of the CROA and that the loss of the time value of his $300 can be construed as a tangible injury, the uncontroverted facts establish that on the date suit was filed Ensminger had not been tangibly harmed. As a result, he lacks Article III standing.

## 1

Two arguments that Ensminger relies upon to resist Defendants' argument help frame this dispute. One is that the Defendants have repeatedly contested standing and each time Defendants' standing arguments have been rejected. The other is that Defendants are impermissibly contesting the merits (*e.g.*, whether there has been a violation of the CROA) when, for purposes of standing, the merits must be ignored.

Neither argument precludes consideration of standing at the summary judgment phase. As to the prior decisions rejecting Defendants' argument, those decisions were made during a procedural phase that precluded a meaningful and searching consideration of the factual and legal arguments being made by Defendants, and circuit precedent permits—if not requires—reevaluation throughout the litigation. And as to the assumed statutory violation, Supreme Court precedent confirms that it alone is insufficient to establish standing without tangible harm which the facts confirm do not exist.

**a.** Take the multiple prior orders rejecting Defendants' standing contention first. Defendants' motion to dismiss for lack of standing was denied because Ensminger alleged a tangible financial injury in "that he lost the time value of money that he paid *before the services were rendered*." Doc. 44 at 4 (emphasis added); *see also* Doc. 160 (orally

denying similar motion after case was reassigned). Ensminger's factual allegation—that money preceded the services—could not be questioned. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009) ("[A] facial attack on the complaint's allegations regarding subject matter jurisdiction questions the complaint's sufficiency and requires the court to accept the allegations as true."); *see also* Doc. 162 at 2–5 (observing that the new facts could have been resolved in a Rule 56 motion but did not warrant a reexamination of standing based on the prior allegations that were accepted as true). In other words, when Defendants filed their motions to dismiss for lack of standing, it was accepted as factually true that Ensminger lost the time value of his money because Ensminger paid money to Defendants before the services had been rendered on or about April 10, 2015.

Defendants' challenge to Ensminger's standing at the class certification stage was also denied. Two inter-related procedural rules supported the conclusion drawn at that time. The first concerned how searching of an inquiry into the factual contentions was appropriate at the Rule 23 stage. *See generally DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (quoting *Shook v. El Paso Cnty.*, 386 F.3d 963, 967 (10th Cir. 2004)) (recognizing that, at the class certification stage, federal courts "'must accept the substantive allegations of the complaint as true,' though [they] 'need not blindly rely on conclusory allegations of the complaint . . . and 'may consider the legal and factual issues presented by plaintiff's complaint'"). And second, federal courts are prohibited from exploring the merits of the dispute at the class certification stage. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). As a result, it was accepted at the class certification stage that Ensminger's allegations stated a violation of the CROA and that the resulting loss of the time value of money between March 6, 2015, and April 10, 2015, was a tangible and concrete injury for purposes of standing. Doc. 192 at 6–8.

All of these prior challenges expressly or implicitly declined to address the crux of Defendants' argument. In particular, Defendants have repeatedly asserted that Ensminger has failed to identify a concrete monetary injury because on March 4, 2015, they provided

Ensminger with services valued at more than $300.[2] These arguments are akin to the notion of quantum meruit. And at each prior stage, Defendants' arguments—because they contradicted facts that were alleged or tread uncomfortably close to forbidden merits questions—were largely ignored. But now, at the summary judgment phase, there is no factual or procedural impediment to fully considering Defendants' fact-based arguments. To the contrary, the Tenth Circuit has repeatedly and recently held "where the case proceeds to summary judgment . . . standing is not evaluated on the pleadings alone but on the basis of all the evidence in the record. At this stage, the plaintiff must do more than plead standing; he must prove it." *Glover River Org. v. U.S. Dep't of Interior*, 675 F.2d 251, 254 n.3 (10th Cir. 1982); *accord M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1261 (10th Cir. 2024).

**b.** Next consider the rule that merits questions cannot be evaluated while considering standing. While there are serious questions as to whether the facts adduced establish a violation of the CROA, that remains an inquiry that cannot and will not be explored for purposes of the standing inquiry. In particular, it is assumed for purposes of the standing inquiry that Defendants' acceptance of money on March 6, 2015, constitutes a violation of Section 1679b(b).

Although it is assumed Ensminger has a identified an injury in law, that does not equate to a finding that Ensminger suffered an injury in fact. The Tenth Circuit, recounting the teachings of *Spokeo* and *TransUnion*, succinctly described the line between statutory violations from harms that were sufficient to satisfy Article III:

> The Court, building on its *Spokeo* analysis, emphasized that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." [*TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021)]. "For standing purposes, therefore, an

---

[2] Previously, Ensminger also asserted "that he suffered an intangible injury because he did not receive the benefits of the statutory provisions that defendants violated." Doc. 44 at 4. As noted below, he no longer appears to be making that claim. *See infra Part* II.B.3.; *see also* Doc. 44 at 11–14 (rejecting the intangible injury argument for other counts that were dismissed for lack of standing).

> important difference exists between (i) a plaintiff's stat-
> utory cause of action to sue a defendant over the de-
> fendant's violation of federal law, and (ii) a plaintiff's
> suffering concrete harm because of the defendant's vi-
> olation of federal law." *Id.* [at 426–27]. In other words,
> "under Article III, an injury in law is not an injury in
> fact." *Id.* [at 427]. "Article III grants federal courts the
> power to redress harms that defendants cause plain-
> tiffs, not a freewheeling power to hold defendants ac-
> countable for legal infractions." *Id.* (quotations omit-
> ted). Thus, "[o]nly those plaintiffs who have been con-
> cretely harmed by a defendant's statutory violation may
> sue that private defendant over that violation in federal
> court." *Id.*

*Laufer v. Looper*, 22 F.4th 871, 877 (10th Cir. 2022). So, even assuming
for purposes of argument that Defendants violated the CROA,
Ensminger must still establish that the statutory violation caused him
concrete harm. *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602
U.S. 367, 382 (2024).

## 2

There is a meaningful dispute about the injury being asserted—the
loss of the time value of money. In particular, there is no controlling
precedent concerning whether such a theory is a cognizable Article III
injury or even that it is distinct from an intangible statutory injury.

**a.** The basis of Ensminger's claim is that for 36 days—between
March 6, 2015, and April 10, 2015,—he lost the time value of his $300.
Doc. 207 at 9. Ensminger contends that if he was not required to pay
that $300 to Defendants on March 6, 2015, he would have "earned
interest on those funds" or "used the funds to pay down additional
principal on his car loan." Doc. 226 at 22. Neither party has quantified
the amount of pecuniary harm, but it seems likely that, even assuming
a healthy rate of return over those 36 days, the total damages is less
than a dollar or two.

There appears to be no Tenth Circuit or Supreme Court opinion
that has considered whether such a limited financial injury is sufficient
to establish a concrete harm for purposes of Article III standing.
Lower courts in other jurisdictions suggest that such de minimis claims
are (or might be) insufficient. *See, e.g.*, *Taylor v. Fed. Aviation Admin.*, 351

F. Supp. 3d 97, 103 n.4 (D.D.C. 2018) (questioning whether $0.23 in lost interest is enough to confer standing); *Friedman v. Dollar Thrifty Auto Grp., Inc.*, 227 F. Supp. 3d 1192, 1203 (D. Colo. 2017) (concluding that a plaintiff who was denied prejudgment interest on $215 payment refunded after 90 days lacked standing based on other cases involving de minimis injuries). Other courts, however, disagree and have relied on a few non-binding circuit court judgments. *See, e.g.*, *Caul v. Petco Animal Supplies, Inc.*, No. 20-3534, 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 9, 2021) (Kovner, J.) (concluding that the payment of wages every two weeks instead of weekly constituted a sufficiently concrete harm because plaintiff was entitled to that money); Doc. 44 at 4–6 (collecting cases considering similar issue in other contexts).

Whether this type of injury is sufficient to establish standing is an "interesting, complex, and difficult legal question" that admits no easy answer. Doc. 174 at 4. The Tenth Circuit may ultimately disagree, but the better reasoned course of action seems to suggest that the "lost time value of money, no matter how miniscule, constitutes a concrete [injury in fact]" for purposes of Article III standing. Doc. 192 at 6.

**b.** While it seems likely that the Supreme Court or Tenth Circuit would recognize that the time value of money can constitute a tangible harm that gives rise to an Article III injury, it is not clear that Ensminger would or could benefit from that conclusion. Ensminger has received (and continues to receive) the benefit of the doubt that he suffered what can be categorized as a tangible monetary injury and is not simply renaming an intangible statutory injury. But it is not clear that charity is justified. Instead, it appears that his injury is simply a creation of Congress's say-so, something the Supreme Court in *Spokeo* and *TransUnion* have held do not create a sufficient injury for purposes of Article III. *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192–93 (10th Cir. 2021) (recognizing Congress cannot enact an injury into existence to transform something not remotely harmful into something that is). Ensminger seeks to avoid that by marrying the statutory violation with the commercial transaction he engaged in where money changed hands pursuant to a written agreement and then labels that violation something that sounds as if it is a tangible injury—loss of the time value of money.

Calling an intangible statutory violation a tangible monetary injury does not make it so. Consider the nature of the relationship. Ensminger, like countless others seeking professional help dealing with finances, entered into a written engagement agreement with a service

provider, agreed to pay a retainer, and then, that retainer was applied to his final bill. *See, e.g.*, Kan. R. Prof'l Conduct 1.5(b) (explaining that a lawyer's fee "shall be communicated to the client, preferably in writing . . . ."); *see also United States v. Morgan*, 635 F. App'x 423, 432 & n.15 (10th Cir. 2015) (noting that the absence of an engagement letter concerning the acceptance of retainer payments could be considered by a jury as culpable conduct in a bribery prosecution). The entire basis of Ensminger's claim is that this agreed-upon course of conduct violates the CROA.[3] In other words, he lost the use of his money for a period of 36 days because, according to him, Congress forbade that agreement.

It is conceptually difficult to see how Ensminger's framing can substantively transform an intangible injury into a tangible monetary injury that would avoid the *Spokeo* and *TransUnion* bar. And to be clear, Ensminger does not argue that he can establish a viable intangible injury. But, in order to honor the prohibition on considering the merits of the dispute during an inquiry into standing, there has not been a searching examination of that concept. And fortunately, one is not necessary to resolve this case.

**3**

Even accepting that Defendants' conduct violates the CROA and that Ensminger's loss of the time value of money from March 6, 2015, through April 10, 2015, could constitute a tangible monetary injury that is not dependent on Congress's say-so, Ensminger still lacks standing. The reason simple: the facts conclusively establish that he was not denied the time value of money because Ensminger paid $300 on March 6, 2015, for work that was performed on March 4, 2015. As a result, he suffered no pecuniary harm by paying for the services that had already been rendered. *See Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 320 (5th Cir. 2002) (concluding the plaintiff lacked a concrete injury where she received the benefit of the bargain, *i.e.*, she sought and received an effective pain killer).

---

[3] Ensminger alleges that this constitutes a violation of the CROA. Because wading into the merits of whether the facts support a violation is not proper when considering standing, that issue cannot being substantively considered. But it is telling that there appears to be no decisions from any court construing this provision of the CROA as Ensminger has done.

The stipulations and largely uncontroverted facts establish that Ensminger received the benefit of the bargain he struck. In February 2015, CLC personnel spoke with Ensminger about his credit situation at an initial consultation. Doc. 209 at 12, ¶ 18.[4] In doing so, it collected and reviewed information concerning his credit practices, goals and history, and assessed the ways in which his credit rating could be improved and repaired. *Id.* at ¶ 19. Based on Defendants' analysis of Ensminger's credit history, they were able to identify specific items that were either false or susceptible to challenge and were adversely affecting Ensminger's credit rating. Doc. 207 at ¶ 2.a.ix.

Following the initial meeting, the parties formalized their relationship when Ensminger signed the Engagement Agreement on February 27, 2015. *Id.* at ¶ 2.a.vi. Then, on March 4, 2015, Defendants prepared and sent letters challenging several specific items to three credit reporting bureaus. Doc. 209 at 13, ¶ 22; Doc. 207 at ¶ 2.a.x. Ultimately, six false debts were removed from Ensminger's credit report, increasing his credit score from 68 to 79 points depending on the agency. Doc. 209 at 13, ¶¶ 23, 24; Doc. 207 at ¶ 2.a.xii. In the Engagement Agreement, the parties agreed that the value of each deletion was $65 per deletion, resulting in a value of $390 based on the March 4, 2015, conduct. Doc. 209 at ¶ 25. Two days after the letters were sent, Defendants charged and Ensminger paid $300. Doc. 207 at ¶ 2.a.xi. That retained amount was ultimately applied to Ensminger's bill on April 10, 2015, after Ensminger's updated credit report was pulled. Doc. 226 at 22, ¶ 22.

In light of these largely uncontroverted facts, Ensminger suffered no financial harm—de minimis or otherwise—by paying $300 on March 6, 2015. Ensminger voluntarily entered into a written

---

[4] Ensminger's objection to most of these facts are evidentiary in the sense that the evidence cited in Defendants' summary judgment papers are not in a form that would be admissible at trial. Doc. 226 at 14, ¶¶ 18–25. Those objections lack merit. For one thing, most of the facts to which the objections are lodged are contained in the parties' stipulations. *Compare e.g.,* Doc. 207 at ¶ 2.a.vi., *with* Doc. 226 at 15, ¶ 21. For another, the evidence supporting the moving party's statement of facts need not be submitted in an admissible form so long as its contents would be admissible. *See, e.g., Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1199 (10th Cir. 2006). Ensminger offers no colorable argument that the contents would not be admissible at trial.

Engagement Agreement with Defendants for specified services and, after consultation, agreed to a particular price for those services. Defendants, based on that agreement, undertook those activities on March 4, 2015, that, as confirmed by Ensminger, delivered $390 in value to Ensminger. Doc. 226 at 22, ¶ 22 (acknowledging trade lines were deleted by April 10, 2015). Then, after those services were performed, Ensminger paid Defendants $300. As such, Ensminger did not lose the time value of his money; he "received the full benefit of the bargain." Doc. 209 at 19. As a result, Ensminger has failed to establish that he suffered a tangible, monetary injury concerning the March 6, 2015, payment. *See Rio Grande Found. v. Oliver*, 57 F.4th 1148, 1161 (10th Cir. 2023) ("It is axiomatic that standing is evaluated as of the time a case is filed.").

In similar circumstances, courts have concluded that the plaintiff lacks standing. For example, the Tenth Circuit, in *M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1263 (10th Cir. 2024), recently concluded that even assuming the plaintiffs established that the defendant violated ERISA's notice obligations, the plaintiffs lacked standing because they identified no specific prejudice or harm flowing from that violation. So too in *Laufer v. Looper*, 22 F.4th 871, 878 (10th Cir. 2022), where the Tenth Circuit held that the plaintiff lacked standing where she adequately identified a statutory violation but failed to establish how that violation affected her in a personal and individual way. Like the plaintiffs in *M.S.* and *Laufer*, Ensminger has identified no prejudice or harm from the March 4, 2015, payment that is, for purposes of standing, assumed to be in violation of the CROA.

It is true that statutory violations can constitute an intangible injury that is sufficient for purposes of standing. In *Lupia v. Medicredit, Inc.*, for example, the Tenth Circuit applied *Spokeo* and *TransUnion* to an alleged statutory violation and held that the plaintiff had alleged a sufficiently concrete injury for purposes of Article III standing. 8 F.4th 1184, 1192 (10th Cir. 2021). While the simple statutory violation was not sufficient to establish standing alone, the plaintiff demonstrated that she suffered an injury from the violation akin to the common law tort of intrusion upon seclusion and that Congress enacted the statutory scheme to preclude abusive debt collection practices. *Id.* at 1192–93.

Unlike the plaintiff in *Lupia*, Ensminger makes no argument that he suffered an intangible harm from the statutory violation. Nor could he. Doc. 44 at 10–14 (dismissing Count II and Count III of

Ensminger's Amended Complaint for lack of standing on the basis that the intangible harms he alleged did not confer it). In fact, the closest historical analog would be akin to quantum meruit or breach of contract; each would fail because Ensminger has not identified facts suggesting that his rights under the contract or principles of equity were violated. Instead, he only identifies the statutory violation as the basis for his alleged injury. That will not do. *See Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 828–30 (10th Cir. 2022) (finding no concrete harm from statutory violation where plaintiff failed to establish elements of analogous common law claims).

Ensminger's standing has, to this point, relied on the false premise that he lost the time value of money between March 6, 2015, and April 10, 2015. At each step of the litigation, that factual contention has been accepted based on explicit standards governing the particular dispute or discretionary caution given the procedural posture. But that deference to Ensminger's claims need not and may not be accepted at the summary judgment phase. *Rio Grande Found.*, 57 F.4th at 1161 (recognizing that prior conclusions about standing should be reevaluated because the proof required to establish standing increases as the case proceeds to summary judgment). Ensminger had an obligation to identify facts confirming that he suffered a concrete injury and he failed to do so. As a result, he lacks Article III standing.

### 4

Ensminger offers several arguments to the contrary. Doc. 226 at 33–40. Most of them have been addressed at least indirectly, *supra*, in one form or another. At the risk of being repetitive, this section is designed to directly confront the two categories of Ensminger's arguments. Neither helps Ensminger carry his burden of establishing Article III standing.

The first category is that Defendants' standing arguments are an impermissible attack on the merits of the statutory violation. Doc. 226 at 33–35. Not so. As noted repeatedly, it is accepted as true that Defendants violated the CROA when they took Ensminger's $300 payment on March 6, 2015. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (recognizing that it is essentially assumed that a particular plaintiff would be successful in their claim or claims when a standing challenge arises). But, to paraphrase Justice Scalia, "so what?" *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quoting A. Scalia, The Doctrine of Standing as an Essential

Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). Ensminger lacks standing because he has failed to identify any harm or prejudice flowing from that assumed statutory violation. *See M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1263 (10th Cir. 2024).

The second category can broadly be described as invoking the doctrines of law of the case and/or stare decisis. Doc. 226 at 35–38. These arguments effectively posit that the prior decisions have reached a final determination that Ensminger has standing such that no reexamination is permissible. But Circuit precedent forecloses that line of attack: At every stage of the proceeding, federal courts must consider—and sometimes reconsider—whether the plaintiff had standing to pursue the claim at the time he or she filed her complaint based on the facts in the record. *Rio Grande Found.*, 57 F.4th at 1161–62; *see also Harris v. City Cycle Sales, Inc.*, 112 F.4th 1272, 1280 (10th Cir. 2024) ("[A] court has inherent authority to reconsider its rulings until judgment has been entered.").

## C

Concluding that Ensminger lacks standing answers only one of the many legal issues identified in the parties' briefs. For example, the parties have divergent views as to whether Defendants' conduct violates Section 1679b(b). *Compare* Doc. 215 at 28–33 (arguing it does), *with* Doc. 209 at 22–27 (arguing it does not). And Ensminger claims that the expert that Defendants identify should not be permitted to testify at trial. *See generally* Doc. 212.

None of these remaining issues, regardless of how interesting or hotly contested, can be considered. Over 150 years ago, the Supreme Court recognized that "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514 (1868). And the absence of Article III standing implicates the jurisdiction—or judicial power—of federal courts to declare the law in ways that threaten the fundamental principles of separation of powers. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Rocky Mountain Peace & Just. Ctr. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 1133, 1152–56 (10th Cir. 2022) (declining to consider the merits of a claim where the second element of standing was not established, but considering the merits of another claim where standing was present).

### III

For the foregoing reasons, CLC and Addleman's motion for summary judgment is GRANTED, Docs. 208 & 210, and the remaining motions, Docs. 212 and 213, are DENIED as moot.

It is so ordered.


Date: December 23, 2024          ‎ s/ Toby Crouse ‎
                                 Toby Crouse
                                 United States District Judge